Joanna A. Diakos (JD 7269)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (tel)
(212) 536-3901 (fax)
E-mail: joanna.diakos@klgates.com

*Attorneys for Defendants John Cannon, Faith Colish,*
*C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf,*
*Edward I. O'Brien, William E. Rulon, Cornelius T. Ryan,*
*Tom D. Seip, Candace L. Straight, Peter P. Trapp and*
*Nominal Defendant Neuberger Berman Equity Funds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN M. GAMORAN, derivatively on behalf of the nominal defendant with respect to its series mutual fund, the Neuberger Berman International Fund,<br><br>              Plaintiff,<br><br>   - against -<br><br>NEUBERGER BERMAN LLC, et al.,<br><br>              Defendants,<br><br>   - and -<br><br>NEUBERGER BERMAN EQUITY FUNDS d/b/a/ NEUBERGER BERMAN INTERNATIONAL FUND,<br><br>              Nominal<br>              Defendant. | 11 Civ. 7957 (TPG) (KNF)<br><br>ECF Case |

## INDEPENDENT TRUSTEES' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT

Table of Contents

Page

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 4

ARGUMENT ....................................................................................................... 8

I.    PLAINTIFF LACKS STANDING TO PURSUE DERIVATIVE CLAIMS AND
      THE FUND'S BOARD IS ENTITLED TO CONCLUDE ITS INVESTIGATION
      OF PLAINTIFF'S DEMAND ...................................................................... 8

A.    Plaintiff Admits That Demand Has Not Been Refused ...................................... 9

B.    Plaintiff Has Failed To Rebut the Presumption That the Board is Responding
      To Plaintiff's Demand in Good Faith ............................................................... 9

      1.    A Shareholder Cannot Dictate the Time Frame of the Board's
            Response to a Demand ....................................................................... 11

      2.    Plaintiff's Allegations Regarding the Board's Responsiveness
            Are Meritless ...................................................................................... 13

      3.    Statutes of Limitations Are Not a Valid Excuse for Plaintiff
            To Usurp the Board's Authority ........................................................... 14

II.   PLAINTIFF'S PURPORTED DIRECT CLASS CLAIMS ARE ACTUALLY
      SHAREHOLDER DERIVATIVE CLAIMS SUBJECT TO THE BOARD'S
      AUTHORITY .......................................................................................... 15

CONCLUSION................................................................................................... 18

Table of Authorities

Page

Allison v. Gen. Motors Corp.,
  604 F. Supp. 1106 (D. Del. 1985), aff'd 782 F.2d 1026 (3d Cir. 1985) ..................... 10, 11, 12

Aronson v. Lewis,
  473 A.2d 805 (Del. 1984) ................................................................................................ 10

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007) ................................................................................................ 4

Boeing Co. v. Shrontz,
  Civ. A. No. 11273, 1994 WL 30542 (Del. Ch. Jan. 19, 1994) ................................................. 11

Bixler v. Foster,
  596 F.3d 751 (10th Cir. 2010) ........................................................................................... 17

Brehm v. Eisner,
  746 A.2d 244 (Del. 2000) ............................................................................................... 8, 10

Charal Inv. Co. v. Rockefeller,
  No. 14397, 1995 WL 684869 (Del. Ch. Nov. 7, 1995) ..................................................... passim

Daily Income Fund, Inc. v. Fox,
  464 U.S. 523 (1984) .......................................................................................................... 1

Drummond v. Tobin,
  No. 10CV1069, 2010 WL 5891674 (Mass. Super. Dec. 16, 2010) ........................................ 13

FLI Deep Marine LLC v. McKim,
  No. 4138-VCN, 2009 WL 1204363 (Del. Ch. Apr. 21, 2009) ........................................... passim

Gamoran v. Neuberger Berman Mgmt. LLC,
  No. 08 Civ. 10807 (DLC) (S.D.N.Y.) ............................................................................... passim

Gamoran v. Neuberger Berman Mgmt. LLC,
  No. 10 Civ. 6234 (LBS) (S.D.N.Y.) ................................................................................. passim

Grimes v. Donald,
  673 A.2d 1207 (Del. 1996) ............................................................................................... 10

Hartsel v. Vanguard Group Inc.,
  No. 5394-VCP, 2011 WL 2421003 (Del. Ch. June 15, 2011) ........................................... 3, 16

In re Mut. Funds Inv. Litig.,
    519 F. Supp. 2d 580 (D. Md. 2007)........................................................................4

In re Regions Morgan Keegan Sec., Deriv., & ERISA Litig.,
    No. 10-2188, 2011 WL 4025642 (W.D. Tenn. Sept. 9, 2011) ................................13

In re Smith & Wesson Holding Corp. Deriv. Litig.,
    743 F. Supp. 2d 14 (D. Mass. 2010)....................................................................11

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991)..........................................................................................1, 17

Kauffman v. Dreyfus Fund, Inc.,
    434 F.2d 727 (3d Cir. 1970) ..............................................................................15

Kramer v. W. Pac. Indus., Inc.,
    546 A.2d 348 (Del. 1988) ..................................................................................15

Lapidus v. Hecht,
    232 F.3d 679 (9th Cir. 2000) ..............................................................................15

Levine v. Smith,
    591 A.2d 194 (Del. 1991) .............................................................................8, 9, 14

MacCoumber v. Austin,
    No. 03 C 9405, 2004 WL 1745751 (N.D. Ill. Aug. 2, 2004)..................................12

McBrearty v. Vanguard Group, Inc.,
    No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009) ......................4

Mozes v. Welch,
    638 F. Supp. 215 (D. Conn. 1986)......................................................................13

Piven v. Ryan,
    No. 05 CV 4619, 2006 WL 756043 (N.D. Ill. Mar. 23, 2006) ..............................12

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ...............................................................................8, 10

Rand v. Anaconda-Ericsson, Inc.,
    794 F.2d 843 (2d Cir. 1986) ..............................................................................16

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000) ..................................................................................4

Seidl v. Am. Century Cos.,
   713 F. Supp. 2d 249 (S.D.N.Y. 2010) ........................................................3, 14, 16

Sparling v. Hoffman Constr. Co.,
   864 F.2d 635 (9th Cir. 1988) ...........................................................................16

Spiegel v. Buntrock,
   571 A.2d 767 (Del. 1990) ...........................................................................2, 8, 9

Strougo v. Bassini,
   112 F. Supp. 2d 355 (S.D.N.Y. 2000) ..................................................................12

Strougo v. Bassini,
   282 F.3d 162 (2d Cir. 2002) .............................................................................15

Stone v. Ritter,
   911 A.2d 362 (Del. 2006) ..................................................................................8

Stotland v. GAF Corp.,
   469 A.2d 421 (Del. 1983) ...............................................................................3, 9

Tooley v. Donaldson, Lufkin, & Jenrette, Inc.,
   845 A.2d 1031 (Del. 2004) ..............................................................................15

White v. Panic,
   783 A.2d 543 (Del. 2001) ..................................................................................2

This Memorandum of Law is submitted by Nominal Defendant Neuberger Berman Equity Funds (the "Trust"), one of its series, the Neuberger Berman International Fund (the "Fund"), one of the Fund's former independent trustees, William E. Rulon, and the following current independent trustees of the Fund: John Cannon, Faith Colish, C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf, Edward I. O'Brien, Cornelius T. Ryan, Tom D. Seip, Candace L. Straight, and Peter P. Trapp (all individual current or former independent trustee defendants are collectively referred to hereinafter as the "Independent Trustee Defendants").[1] The remaining defendants are referred to as the "Neuberger Defendants."

## PRELIMINARY STATEMENT

For mutual funds as with ordinary corporations, "[a] shareholder derivative action is an exception to the normal rule that the proper party to bring a suit on behalf of the corporation is the corporation itself, acting through its directors or a majority of its shareholders." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 542 (1984).

Accordingly, "to protect the directors' prerogative to take over the litigation or to oppose it[,] … [a]ll States require that a shareholder make a precomplaint demand on the directors." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101-02 & n.7 (1991). The demand requirement "afford[s] the directors an opportunity to exercise their reasonable business judgment." Id. at 96 (citation and internal quotation marks omitted).

Plaintiff has persistently refused to recognize these precepts. This is his third attempt to bring essentially the same shareholder derivative suit on behalf of the Fund. All three of plaintiff's shareholder complaints have been predicated on the same theory: that the Fund was

---

[1]     Current independent trustee Martha C. Goss, who was originally named as a defendant in this action but who was not a trustee at the time of the events alleged in the Complaint, was voluntarily dismissed from the case on September 1, 2011. See Notice of Voluntary Dismissal, ECF No. 3.

injured because it invested in London Stock Exchange-traded shares of two companies that offered or facilitated online gambling to U.S. players. These investments are said to be illegal under federal and state law and hence *ultra vires*.

Plaintiff's first attempt to bring suit on this theory, which asserted both purported derivative and class claims, was voluntarily dismissed in May 2009. See Gamoran v. Neuberger Berman Mgmt. LLC, No. 08 Civ. 10807 (DLC) (S.D.N.Y.) (Gamoran I).

Plaintiff's second complaint, see Gamoran v. Neuberger Berman Mgmt. LLC, No. 10 Civ. 6234 (LBS) (S.D.N.Y.) (Gamoran II), which asserted only derivative claims, alleged that demand on the Fund's board of trustees was excused under the narrow demand futility exception recognized under controlling Delaware law. See White v. Panic, 783 A.2d 543, 551 (Del. 2001). After putting the Trust through the effort and expense of preparing a brief demonstrating plaintiff's obvious failure to allege that the board of trustees lacked independence, plaintiff made a mid-suit demand on the board. He thus mooted his own case. "By making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility." Spiegel v. Buntrock, 571 A.2d 767, 775 (Del. 1990) (citation omitted). "Thus, when a demand is made, the question of whether demand was excused is moot" and "[t]he effect of [the] demand is to place control of the derivative litigation in the hands of the board of directors." Id. (citations omitted). Over plaintiff's objection, Judge Sand accordingly dismissed plaintiff's second complaint. See Gamoran II.

Nonetheless, a mere 10 weeks after the expiration of the time for appeal in Gamoran II, plaintiff filed the instant Complaint again asserting the same derivative and class claims from Gamoran I.

Plaintiff's latest derivative claims are premature and must be dismissed. "[O]nce a demand has been made, absent a wrongful refusal, *the stockholder's ability to initiate a derivative suit is terminated.*" Stotland v. GAF Corp., 469 A.2d 421, 422 (Del. 1983) (emphasis added) (citation omitted). Here, the board has not yet refused or otherwise made a final decision with respect to plaintiff's demand – it is carefully investigating. And "[t]o allow plaintiffs the ability to dictate the manner in which the Board, or its special committee, investigates their allegations would be an unwarranted intrusion upon the authority [Delaware] law confers on a board of directors." FLI Deep Marine LLC v. McKim, No. 4138-VCN, 2009 WL 1204363, at *4 (Del. Ch. Apr. 21, 2009) (internal quotation omitted).

Accordingly, the Independent Trustee Defendants are entitled to dismissal of the shareholder derivative claims under Fed. R. Civ. P. 23.1 and Delaware substantive law to enable the board to complete its investigation of plaintiff's demand and exercise its authority to decide whether to pursue the claims. See, e.g., Charal Inv. Co. v. Rockefeller, No. 14397, 1995 WL 684869, at *3-4 (Del. Ch. Nov. 7, 1995).[2]

Plaintiff's purported direct claims are simply improperly re-labeled shareholder derivative claims. Other courts have already rejected similar claims filed by plaintiff's counsel on this ground. See Hartsel v. Vanguard Group, Inc., No. 5394-VCP, 2011 WL 2421003, at *16-20 (Del. Ch. June 15, 2011); Seidl v. Am. Century Cos., 713 F. Supp. 2d 249, 255-57 (S.D.N.Y. 2010). Plaintiff's purported direct claims therefore should be dismissed with prejudice.

---

[2]    In their motion to dismiss, the Neuberger Defendants have argued that the Court should dismiss the Complaint because it fails to state a legally viable claim. The Trust and the Independent Trustee Defendants take no position at this time regarding the merits of plaintiff's substantive legal theories. Dismissal of the entire Complaint is required based on the grounds set forth herein, and the Court need not reach any additional issues. However, any pronouncements by the Court on the substance of the novel issues presented by the Neuberger Defendants' motion would of course inform the board's response to plaintiff's demand.

## BACKGROUND[3]

The Trust is a statutory trust organized under Delaware law and is a registered investment company under the Investment Company Act of 1940. Compl. ¶ 12. The Fund is one of several funds or "series" offered by the Trust. Compl. ¶ 14. See generally In re Mut. Funds Inv. Litig., 519 F. Supp. 2d 580, 588-89 & n.11 (D. Md. 2007) (describing multi-series investment company structure).

This case arises out of alleged investments made by the Fund in 2005 and 2006 in what plaintiff describes as "illegal gambling businesses." Compl. ¶ 1. Plaintiff claims that investments in these entities were illegal under federal and state law and caused "significant investment losses." Compl. ¶¶ 5, 9.

### Gamoran I

Plaintiff's first suit alleging the same claims at issue here, Gamoran I, was filed in this Court (Judge Cote) on December 12, 2008. On April 2, 2009, Judge Cote decided McBrearty v. Vanguard Group, Inc., No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009), a case with similar allegations brought by the same plaintiff's attorney against another fund complex. Judge Cote held that the allegations did not support a RICO violation and dismissed the remaining state law claims. Id. In light of this decision, plaintiff voluntarily dismissed Gamoran I on May 19, 2009, with the stipulation that he could refile within six months of the

---

[3]     In addition to complaints, courts addressing Rule 12(b)(6) motions examine other sources, such as "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); see also Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (courts may take judicial notice of court filings and decisions). Accordingly, this memorandum refers to materials appended to the Declaration of Nicholas Terris ("Terris Decl."), filed herewith.

Second Circuit's decision on the McBrearty appeal.  The Second Circuit affirmed Judge Cote's McBrearty decision on November 23, 2009, 353 Fed. Appx. 640, and a mandate issued on January 20, 2010.

**Gamoran II and Plaintiff's Demand**

Nearly six months later, on July 16, 2010, plaintiff brought his second suit, Gamoran II, this time in New York State court.  Compl. ¶ 116.  The Gamoran II complaint was substantially similar to Gamoran I, except that it only contained derivative claims and omitted the RICO claim rejected in McBrearty.  Defendants removed the case to this Court, where it was assigned to Judge Sand, who denied plaintiff's motion to remand.  See Gamoran II, 2010 WL 4537056.  The Gamoran II complaint alleged that a majority of the board lacked independence and, thus, that demand was excused as futile.  See Complaint at ¶¶ 93-121, Gamoran II, ECF No. 1.  On February 18, 2011, one business day before defendants' motions to dismiss in Gamoran II were due, plaintiff transmitted a demand letter to defendants' counsel addressed to the Trust's board.  Compl. ¶ 117, Terris Decl. Ex. A.  Defendants thereafter moved to dismiss for failure to make demand.  See Mot. to Dismiss, Gamoran II, ECF No. 27.  Plaintiff nonetheless continued to insist that the demand requirement was excused and that his lawsuit should not be dismissed.  See Mem. of Law in Opp'n to Mot. to Dismiss, Gamoran II, ECF No. 33.  Recognizing that a mid-suit demand concedes the issue of demand futility under Delaware law, the Court granted the motion and dismissed Gamoran II on May 11, 2011.  See Order, Gamoran II, ECF No. 41.  The time for plaintiff to appeal the order of dismissal expired on June 10, 2011.  See Fed. R. App. P. 4(a).

Meanwhile, on March 24, 2011, as briefing on the motions to dismiss was underway, counsel for the Independent Trustee Defendants sent a letter to plaintiff's counsel on behalf of

the board of trustees, notifying plaintiff's counsel that the demand had been referred to the board

for its consideration and requesting information on Mr. Gamoran's stock ownership for purposes

of confirming that he had the requisite standing.  See Terris Decl. Ex. B.  In addition, the March

24 letter requested that plaintiff "submit any additional details, analysis, or documentation

regarding the subject matter . . . that would assist the Board in reviewing the Demand."  Compl.

¶ 118; Terris Decl. Ex. B.  Plaintiff replied approximately a month later by letter dated April 22,

2011.  See Compl. ¶ 119; Terris Decl. Ex. C.  Plaintiff's letter attached copies of Mr. Gamoran's

stock account information and it referred the board to plaintiff's prior pleadings for additional

information as to plaintiff's claims.  Terris Decl. Ex. C.  Plaintiff's declaration additionally

requested that plaintiff be informed who would be conducting the investigation.  Compl. ¶ 119;

Terris Decl. Ex. C.  Plaintiff's counsel made no further relevant communication with the board

prior to filing the present lawsuit on August 24, 2011.

**Gamoran III and the Board's Deliberate Efforts to Respond to Plaintiff's Demand**

The latest lawsuit was filed in the United States District Court for the District of

Delaware, but was subsequently transferred to this Court pursuant to defendants' motion.  See

Order, Nov. 4, 2011, ECF No. 20.  In the current Complaint, plaintiff makes essentially the same

allegations as in Gamoran I, reasserting the RICO and class action claims that he previously

dropped in Gamoran II.  The Complaint's first five counts allege shareholder derivative claims

for breach of fiduciary duty, negligence, waste, and two RICO violations, respectively.  Compl.

pp. 31-34, ¶¶ 148-76.  The remaining four counts assert purported individual and class claims

under all of the same theories except waste.  See Compl. pp. 35-38, ¶¶ 177-204.  Like its

predecessors, the current Complaint names as defendants the Fund's investment advisor

(Neuberger Berman Management LLC), the Fund's subadvisor (Neuberger Berman LLC),

certain persons affiliated with these entities, and the Independent Trustee Defendants.  <u>See</u>
Compl. ¶¶ 16-23.

Although he concededly made demand, Compl. ¶ 117, plaintiff alleges that he is entitled
to proceed with this action because, prior to the time the Complaint was filed, the board's only
response to plaintiff's demand was the March 24, 2011 letter from defendants' counsel.  Compl.
¶ 118.  Plaintiff also alleges that "Plaintiff's claims face statute of limitations concerns" and
"there was therefore a need to preserve them from forfeiture."  Compl. ¶ 121.

The board's process of carefully reviewing plaintiff's demand began well before the
filing of the instant lawsuit.  As communicated to plaintiff's counsel in letters dated August 30
and September 9, 2011, Terris Decl. Exs. D and E, the board of directors appointed a Special
Demand Committee to evaluate plaintiff's demand.  That committee began its work in July after
careful efforts at selecting separate independent counsel.  Terris Decl. Ex. E.  In an effort to
preserve the Trust's ability to investigate plaintiff's claims, the board had earlier directed that
tolling agreements be executed.  <u>See</u> Terris Decl. at ¶ 3 and Ex. E.  Such agreements were
executed well before the filing of the present lawsuit and are currently effective.  <u>See</u> Terris
Decl. at ¶ 3 & Ex. E.

The September 9 letter, which responded to a letter from plaintiff's counsel dated
September 2, 2011, Terris Decl. Ex. F, notified plaintiff that "the Board and/or its Committee
will communicate with [plaintiff] as appropriate and will notify [plaintiff] of the outcome of the
Board's processes once they have concluded."  Terris Decl. Ex. E.  The letter further requested
that Gamoran withdraw his lawsuit pending the conclusion of the board's review of his demand.

Gamoran declined to do so by reply letter dated September 19.  <u>See</u> Terris Decl. Ex. G.

## ARGUMENT

### I.   PLAINTIFF LACKS STANDING TO PURSUE DERIVATIVE CLAIMS AND THE FUND'S BOARD IS ENTITLED TO CONCLUDE ITS INVESTIGATION OF PLAINTIFF'S DEMAND

"A basic principle of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." Spiegel v. Buntrock, 571 A.2d 767, 772-73 (Del. 1990). "The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation" is "part of the responsibility of the board of directors." Id. at 773. Thus, a shareholder may compel the corporation to pursue legal claims if and only if (1) demand would be futile because the directors are incapable of making an impartial decision regarding the litigation or (2) demand has been wrongfully refused by the directors. Stone v. Ritter, 911 A.2d 362, 366-67 (Del. 2006).

Notwithstanding plaintiff's meritless allegations attempting to impugn the independence of the board of trustees, see Compl. ¶¶ 124-29, plaintiff's decision to make demand legally forecloses him from arguing demand futility. "Where a demand has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond." Rales v. Blasband, 634 A.2d 927, 935 n.12 (Del. 1993); see also FLI Deep Marine LLC, 2009 WL 1204363, at *3; Charal Inv. Co., 1995 WL 684869, at *2. Judge Sand so held, and the matter is res judicata. See Order, Gamoran II, ECF No. 41.

Plaintiff also cannot maintain a shareholder derivative action on the basis that demand has been wrongfully refused because (a) he admits that demand has not been refused, and (b) he makes no particularized factual allegations that the board has acted in anything but good faith in responding to his demand. Levine v. Smith, 591 A.2d 194, 213 (Del. 1991), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000).

### A.      Plaintiff Admits That Demand Has Not Been Refused

"[O]nce a demand has been made, *absent a wrongful refusal*, the stockholder's ability to initiate a derivative suit is terminated." Stotland, 469 A.2d at 422 (emphasis added) (citation omitted).  Plaintiff cannot allege that his demand has been wrongfully refused because, according to his own allegations, it has not been refused at all.

Instead, the Special Demand Committee appointed by the board of trustees is conducting an investigation.  See Terris Decl. Exs. D and E (August 30 and September 9, 2011 letters). Plaintiff admits that the board has not yet responded to his demand.  Compl. ¶¶ 117-23. Plaintiff's derivative claims must therefore be dismissed.  See Charal Inv. Co., 1995 WL 684869, at *2 ("Until the board has responded, the shareholder generally may not move forward with the derivative action. . . .  [I]f the purpose is to determine the right of the plaintiff to maintain the suit, then it would seem that the right of the independent committee to investigate and report its findings must take priority over any entitlement of the plaintiff to go forward with the pending action.") (citation and quotation marks omitted).

### B.      Plaintiff Has Failed to Rebut the Presumption That the Board Is Responding to Plaintiff's Demand in Good Faith

Plaintiff also does not (and cannot) allege that the board has acted in bad faith in responding to his demand such that the board's actions or inaction can been deemed to be tantamount to a wrongful refusal.  Indeed, the Complaint pleads essentially no facts at all regarding the board's investigation – much less facts from which to infer that the investigation is being conducted in bad faith or unreasonably.

A board's decision-making process in response to a demand is presumptively protected by the business judgment rule.  See Levine, 591 A.2d at 212-13 (reasonableness of board's investigation is reviewed "under the traditional business judgment rule"); Spiegel, 571 A.2d at

777. Thus, "the directors must determine the best method to inform themselves of the facts related to the alleged wrongdoing." Rales, 634 A.2d at 935. And courts will not allow shareholders to second-guess the process selected by the board. "To allow Plaintiffs the ability to dictate the manner in which the Board, or its special committee, investigates their allegations would be an unwarranted intrusion upon the authority our law confers on a board of directors to manage the business and affairs of the corporation." FLI Deep Marine LLC, 2009 WL 1204363, at *4 (citation and internal quotation marks omitted).

The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (citations omitted). Thus, plaintiff must "allege and prove facts rebutting the longstanding presumption under Delaware law of the validity of an exercise of business judgment." Allison v. Gen. Motors Corp., 604 F. Supp. 1106, 1122 (D. Del. 1985), aff'd, 782 F.2d 1026 (3d Cir. 1985); see also Grimes v. Donald, 673 A.2d 1207, 1220 (Del. 1996). Plaintiff's allegations must satisfy the heightened pleading requirements of Rule 23.1. See, e.g., Allison, 604 F. Supp. at 1122; Brehm v. Eisner, 746 A.2d at 254.

Plaintiff cannot possibly meet these standards. As noted above, the board promptly informed plaintiff that his demand had been referred to the board for its consideration. See Terris Decl. Ex. B (March 24, 2011 letter). The board then proceeded to appoint a Special Demand Committee, select separate and independent counsel, and even instructed that a tolling agreement designed to preserve the Trust's ability to investigate plaintiff's claims be prepared and executed. See Terris Decl. at ¶ 3 & Ex. E (September 9, 2011 letter).

Plaintiff's only attempts to overcome the presumption of the business judgment rule consist of allegations that (1) the board "abdicated any responsibility for determining Plaintiff's demand" because it did not make a final decision on plaintiff's demand quickly enough, Compl. ¶ 123, (2) the board did not respond to plaintiff's correspondence quickly enough or accept his offer of assistance, Compl. ¶¶ 118-20, and (3) plaintiff believed that his claims "face statute of limitations concerns" and was uncertain about whether defendants had entered into tolling agreements.  Compl. ¶ 121.  Each of these allegations is clearly insufficient.

### 1.    A Shareholder Cannot Dictate the Time Frame of the Board's Response to a Demand

Plaintiff cannot allege wrongful demand refusal in this case by the expedient of alleging that the board is taking too long to consider his demand.

"Premature filing of suit after demand has been made in a demand-required case frustrates the policy of Rule 23.1 that an individual shareholder ordinarily should not usurp the responsibility of corporate management to determine whether and how to pursue a corporate claim." Allison, 604 F. Supp. at 1118 (citation and internal quotation marks omitted). Therefore, "[a]fter a shareholder makes demand on the board, the shareholder must allow the board a reasonable time to investigate and respond to the claim before filing suit or the court will consider that suit premature." Charal, 1995 WL 654869, at *3.

More complex issues naturally require more time.  Allison, 604 F. Supp. at 1117-18; In re Smith & Wesson Holding Corp. Deriv. Litig., 743 F. Supp. 2d 14, 20 (D. Mass. 2010).  In this case, plaintiff alleges a conspiracy lasting several months, involving knowing or reckless conduct by over a dozen individuals and several corporate entities, concerning a novel legal issue that a court has never decided on the merits.  It is unsurprising that the board has decided to devote significant time and effort to assessing plaintiff's demand. See, e.g., Boeing Co. v. Shrontz, Civ.

- 11 -

A. No. 11273, 1994 WL 30542, at *4 (Del. Ch. Jan. 19, 1994) (explaining that there "appears to be nothing unusual about the special committee's investigation" of more than twenty months).

Indeed, had the board acted more quickly on plaintiff's demand, and decided not to pursue the litigation, plaintiff undoubtedly would have complained that the investigation was insufficient. See Allison, 604 F. Supp. at 1118 ("Indeed, if the directors made a hasty judgment without making careful inquiry into the demand, their judgment could be attacked as not satisfying the business judgment rule."); Strougo v. Bassini, 112 F. Supp. 2d 355, 365 (S.D.N.Y. 2000) (shareholder complained that board's investigation was insufficient because it was conducted too quickly and "reached its conclusions 'precipitously,' after less than two months of investigation").

Plaintiff nonetheless filed this suit on August 24, 2011.  This was a mere ten weeks after the expiration of the time for appeal in Gamoran II on June 10, 2011 and less than four months after the district court's May 11, 2011 order of dismissal in Gamoran II.  Plaintiff cannot seriously contend that the board was required to rush to conclude a demand investigation immediately upon receipt of his demand letter at the same time plaintiff was still pursuing a shareholder derivative lawsuit and arguing that demand was excused.  See MacCoumber v. Austin, No. 03 C 9405, 2004 WL 1745751 (N.D. Ill. Aug. 2, 2004) (Illinois corporation, but citing Delaware law) ("[G]iven that the resolution of the demand futility issue in the [other litigation] could resolve this action, it would be unreasonable to require the Board to expend [the company's] resources unnecessarily.  Accordingly, this Court finds that the postponement of an investigation until the [other litigation] is resolved is not an unreasonable or untimely delay."); Piven v. Ryan, No. 05 CV 4619, 2006 WL 756043, at *3 (N.D. Ill. Mar. 23, 2006) (applying Delaware law) ("A board's decision to delay responding to a demand in order to focus on related

litigation is reasonable."); Mozes v. Welch, 638 F. Supp. 215, 221 (D. Conn. 1986) (reasonable for the board to await completion of a grand jury investigation).

Even setting aside the pendency of Gamoran II, plaintiff filed the instant lawsuit only about four months after he submitted his April 22, 2011 letter to the board substantiating his standing, see Terris Decl. Ex. C, and only approximately six months after his February 17, 2011 demand letter. See Compl. ¶ 117, Terris Decl. Ex. A (Feb. 17, 2011 letter).

The current lawsuit is premature by any plausible measure. See, e.g., Drummond v. Tobin, No. 10CV1069, 2010 WL 5891674, at *4 (Mass. Super. Dec. 16, 2010) (applying Delaware law) (plaintiffs prematurely filed suit seven months after demand and while the board was still investigating the claims); Charal Inv. Co., 1995 WL 684869, at *3 (dismissing plaintiff's complaint, holding that five-month period was insufficient given complicated corporate waste scheme); Mozes, 638 F. Supp. at 221-22 (eight-month period between demand and filing of action was insufficient given complexity of legal issues, ongoing internal investigation, and parallel criminal investigation); In re Regions Morgan Keegan Sec., Deriv., & ERISA Litig., No. 10-2188, 2011 WL 4025642 (W.D. Tenn. Sept. 9, 2011) (applying Maryland law, holding that plaintiff improperly filed suit four months after making demand and two months after board sent letter acknowledging demand).

### 2.    Plaintiff's Allegations Regarding the Board's Responsiveness Are Meritless

Plaintiff's suggestion that the board was insufficiently responsive to his correspondence and offers of assistance is meritless.

No court has held that a board must continually update a demanding shareholder regarding the status of the investigation or immediately respond to every inquiry – especially absent any indication that the matter is urgent. To the contrary, as already noted, plaintiffs may

not "dictate the manner in which the Board, or its special committee, investigates their allegations." FLI Deep Marine LLC, 2009 WL 1204363, at *4.

The board of trustees specifically asked Mr. Gamoran for "any additional details, analysis, or documentation regarding the subject matter of the Gamoran Action that would assist the Board in reviewing the Demand." Terris Decl. Ex. B (March 24, 2011 letter). Mr. Gamoran responded by referring the board to his prior pleadings and complaint. Terris Decl. Ex. C (April 22, 2011 letter).

With respect to plaintiff's offer of further assistance, Compl. ¶ 119; Terris Decl. Ex. B (March 24, 2011 letter), "a determination of what matters will (and will not) be considered must necessarily fall within the board's discretion." Levine, 591 A.2d at 214 ("A board of directors is not legally obligated to permit a demanding shareholder to make an oral presentation at a meeting.").

### 3.    Statutes of Limitations Are Not a Valid Excuse for Plaintiff to Usurp the Board's Authority

Plaintiff's contention that potential statute of limitations issues somehow endow him with standing to pursue the Trust's claims is plainly incorrect.

Courts will not excuse compliance with the demand requirement when a shareholder's dilatory conduct has created a statute of limitations issue. See, e.g., Seidl v. Am Century Cos., 713 F. Supp. 2d 249, 259 n.14 (S.D.N.Y. 2010) (rejecting similar argument by plaintiff's counsel). That is manifestly the case here. Rather than pursuing two lawsuits with baseless demand futility allegations, plaintiff should have simply made demand in December 2008 when he filed Gamoran I.

Plaintiff's conceded lack of knowledge about whether defendants had executed tolling agreements, Compl. ¶ 122, hardly bolsters his case. It clearly would have been appropriate for

plaintiff to contact the board with his specific concern about the statute of limitations before filing another unnecessary lawsuit.

Instead, plaintiff made his inquiry about the status of the tolling agreement after filing Gamoran III. See Terris Decl. Ex. F (September 2, 2011 letter).  A week later, counsel for the Independent Trustee Defendants informed plaintiff that tolling agreements have been executed and are effective.  See Terris Decl. Ex. E (September 9, 2011 letter).

## II.   PLAINTIFF'S PURPORTED DIRECT CLASS CLAIMS ARE ACTUALLY SHAREHOLDER DERIVATIVE CLAIMS SUBJECT TO THE BOARD'S AUTHORITY

Plaintiff attempts to bypass the board's authority over his claims by casting them as both direct and derivative.  See Compl. pp. 35-38, ¶¶ 177-204 (alleging individual and putative class claims for breach of fiduciary duty, negligence, and civil RICO).  This effort fails because all of the claims asserted in the Complaint are exclusively derivative.

The law of the state of incorporation – in this case, Delaware – determines whether a claim asserted by a mutual fund shareholder is direct or derivative.  See, e.g., Strougo v. Bassini, 282 F.3d 162, 167-69 (2d Cir. 2002); Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000); Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3d Cir. 1970).

Under Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004), "a stockholder's claimed direct injury must be independent of any alleged injury to the corporation."  "Delaware courts have long recognized that actions charging 'mismanagement which depress[] the value of stock [allege] a wrong to the corporation; i.e., the stockholders collectively, to be enforced by a derivative action.'"  Kramer v. W. Pac. Indus., Inc., 546 A.2d 348, 353 (Del. 1988) (citation omitted).

As plaintiff acknowledges, see Compl. ¶ 3, the Delaware Court of Chancery has already ruled that mutual fund investors cannot proceed directly for substantially the same claims alleged here. See Hartsel v. Vanguard Group Inc., No. 5394-VCP, 2011 WL 2421003, at *16-*20 (Del. Ch. June 15, 2011). In that case, brought by the same plaintiff's attorney alleging the same theory (i.e., allegedly illegal investments in gambling companies by a mutual fund), the court held that the claims were exclusively derivative and that plaintiffs "failed to allege an injury separate and distinct from an injury alleged to have been suffered by the [Fund.]" Id. at *17. The court explained:

> The unlawful conduct asserted by Plaintiffs in relation to the Trustee Defendants essentially involves Trustee mismanagement in purchasing and then holding the Challenged Securities. Under Delaware law, allegations of trustee or director mismanagement regarding securities portfolio investments generally are considered derivative in nature.

Id. (citations omitted). The court proceeded to reject substantially the same additional arguments for treating the claims as direct that plaintiff advances here. See id. at *16-*20.

Judge Cote reached the same result in another substantially similar case brought by plaintiff's counsel. See Seidl, 713 F. Supp. 2d at 255-57 (plaintiff's claims of injury by allegedly illegal mutual fund investment in gambling companies derivative rather than direct under Maryland law).

While Harstel and Seidl involved only state law claims, the same analysis clearly applies to plaintiff's purported direct RICO claims. See, e.g., Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir. 1986) ("The shareholder's rights are merely derivative and can be asserted only through the corporation. Diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.") (citation and internal quotation and other marks omitted); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 640 (9th Cir. 1988)

(shareholder lacked standing to pursue RICO case alleging corporate injuries); <u>Bixler v. Foster</u>, 596 F.3d 751, 756-59 (10th Cir. 2010) (similar) (collecting cases).  <u>See generally</u> <u>Kamen</u>, 500 U.S. at 108-09.

   In short, plaintiff's purported direct claims plainly are not cognizable under existing authority.  Indeed, it appears that plaintiff has asserted such claims solely to "preserve them" pending the Delaware Supreme Court's decision in one of plaintiff's counsel's similar cases. <u>See</u> Compl. ¶ 3.

## CONCLUSION

For the foregoing reasons, the Independent Trustee Defendants and Nominal Defendant respectfully request that the Court dismiss the purported shareholder derivative claims – counts one through five of the Complaint – to enable the board of trustees to complete its review of plaintiff's demand.  They further request that the purported direct class claims – counts six through nine of the Complaint – be dismissed with prejudice.


Dated:  December 8, 2011
        New York, New York

Respectfully submitted,

K&L GATES LLP


By:   s/ Joanna A. Diakos
Joanna A. Diakos (JD-7269)
599 Lexington Avenue
New York, NY 10022-6030
E-mail: joanna.diakos@klgates.com
Phone: (212) 536-3900
Fax:     (212) 536-3901

Jeffrey B. Maletta (*pro hac vice* motion forthcoming)
Nicholas G. Terris (*pro hac vice* motion forthcoming)
Theodore L. Kornobis (*pro hac vice* motion forthcoming)
1601 K Street, NW
Washington, DC 20006-1600
E-mail:  jeffrey.maletta@klgates.com
         nicholas.terris@klgates.com
         ted.kornobis@klgates.com
Phone: (202) 778-9000
Fax:     (202) 778-9100

*Attorneys for Defendants John Cannon, Faith Colish,
C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf,
Edward L. O'Brien, William E. Rulon, Cornelius T.
Ryan, Tom D. Seip, Candace L. Straight, Peter P. Trapp
and Nominal Defendant Neuberger Berman Equity
Funds*