Joanna A. Diakos (JD 7269)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (tel)
(212) 536-3901 (fax)
E-mail: joanna.diakos@klgates.com

*Attorneys for Defendants John Cannon, Faith Colish,
C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf,
Edward I. O'Brien, William E. Rulon, Cornelius T. Ryan,
Tom D. Seip, Candace L. Straight, Peter P. Trapp and
Nominal Defendant Neuberger Berman Equity Funds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN M. GAMORAN, derivatively on behalf of the nominal defendant with respect to its series mutual fund, the Neuberger Berman International Fund,<br><br>                      Plaintiff,<br><br>- against -<br><br>NEUBERGER BERMAN LLC, et al.,<br><br>                      Defendants,<br><br>- and -<br><br>NEUBERGER BERMAN EQUITY FUNDS d/b/a/ NEUBERGER BERMAN INTERNATIONAL FUND,<br><br>                      Nominal Defendant. | 11 Civ. 7957 (TPG)<br><br>ECF Case |

**INDEPENDENT TRUSTEES' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
<u>VERIFIED DERIVATIVE AND CLASS ACTION COMPLAINT</u>**

DC-9599379 v5

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I. PLAINTIFF LACKS STANDING TO PURSUE DERIVATIVE CLAIMS AND THE FUND'S BOARD IS ENTITLED TO CONCLUDE ITS INVESTIGATION OF PLAINTIFF'S DEMAND .......................................................................................2

    A. Plaintiff's Demand Has Not Been Refused and His Abdication Argument Is Baseless ............................................................................................5

    B. Plaintiff Has Failed to Rebut the Presumption That the Board is Responding to Plaintiff's Demand in Good Faith ........................................7

        1. A Shareholder Cannot Dictate the Time Frame of the Board's Response to a Demand..........................................................................7

        2. Plaintiff's Allegations Regarding the Board's Responsiveness Are Meritless .........................................................................................8

        3. Statutes of Limitation Are Not a Valid Excuse for Plaintiff to Usurp the Board's Authority ..........................................................8

II. PLAINTIFF'S PURPORTED DIRECT CLAIMS ARE ACTUALLY DERIVATIVE CLAIMS SUBJECT TO THE BOARD'S AUTHORITY ........................9

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

Page

Allison v. Gen. Motors Corp.,
 604 F. Supp. 1106 (D. Del. 1985) ................................................................................................ 3

Bellikoff v. Eaton Vance Corp.,
 481 F.3d 110 (2d Cir. 2007) ........................................................................................................ 4

Bellikoff v. PricewaterhouseCoopers, LLP,
 300 Fed. Appx. 41 (2d Cir. 2008) ............................................................................................... 6

Brehm v. Eisner,
 746 A.2d 244 (Del. 2000) ........................................................................................................... 9

Burks v. Lasker,
 441 U.S. 471 (1979) ............................................................................................................... 2, 4

Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.,
 No. Civ. A. 13950, 1997 WL 305829 (Del. Ch. May 30, 1997) ................................................ 6

Daily Income Fund, Inc. v. Fox,
 464 U.S. 523 (1984) .................................................................................................................... 4

Everett v. Bozic,
 No. 05 Civ. 296, 2006 WL 2291083 (S.D.N.Y. Aug. 3, 2006) .................................................. 4

FLI Deep Marine LLC v. McKim,
 No. 4138-VCN, 2009 WL 1204363 (Del. Ch. Apr. 21, 2009) .................................................... 8

Hartsel v. Vanguard Group, Inc.,
 No. 5394-VCP, 2011 WL 2421003 (Del. Ch. June 15, 2011) .................................................... 9

In re Am. Int'l Group, Inc.,
 965 A.2d 763 (Del. Ch. 2009) ................................................................................................ 5, 6

In re Eaton Vance Mut. Funds Fee Litig.,
 403 F. Supp. 2d 310 (S.D.N.Y. 2005) ........................................................................................ 4

In re Sunrise Sec. Litig.,
 916 F.2d 874 (3d Cir. 1990) ....................................................................................................... 3

Kamen v. Kemper Fin. Servs. Inc.,
 500 U.S. 90 (1991) ............................................................................................................ 2, 3, 4

Kaplan v. Peat, Marwick, Mitchell & Co.,
    540 A.2d 726 (Del. 1988) ............................................................................................. 5, 6

Litton Indus., Inc. by Wildflower P'ship v. Hoch,
    996 F.2d 1225, 1993 WL 241549 (9th Cir. 1993) ............................................................ 3

Nordberg v. Lord, Day & Lord,
    107 F.R.D. 692 (S.D.N.Y. 1985) ..................................................................................... 3

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ................................................................................................ 7

Rand v. Anaconda-Ericsson, Inc.,
    794 F.2d 843 (2d Cir. 1986) ............................................................................................ 3

RCM Sec. Fund, Inc. v. Stanton,
    928 F.2d 1318 (2d Cir. 1991) .......................................................................................... 3

Scattered Corp. v. Chi. Stock Exch., Inc.,
    701 A.2d 70 (Del. 1997) .................................................................................................. 9

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985) ........................................................................................................ 3

Seidl v. Am Century Cos.,
    713 F. Supp. 2d 249 (S.D.N.Y. 2010) ............................................................................. 8

Spiegel v. Buntrock,
    571 A.2d 767 (Del. 1990) ................................................................................................ 4

Stoner v. Walsh,
    772 F. Supp. 790 (S.D.N.Y. 1991) .................................................................................. 9

Stotland v. GAF Corp.,
    469 A.2d 421 (Del. 1983) ................................................................................................ 5

Zapata Corp. v. Maldonado,
    430 A.2d 779 (Del. 1981) ................................................................................................ 6

Nominal Defendant Neuberger Berman Equity Funds (the "Trust"), the Neuberger Berman International Fund (the "Fund"), and the Independent Trustee Defendants respectfully submit this Reply to Plaintiff's Brief in Opposition to Defendants' Motions to Dismiss (filed January 27, 2012, ECF No. 42) (hereinafter the "Opposition" or "Opp.").[1]

## PRELIMINARY STATEMENT

Contrary to plaintiff's baseless contention, the demand requirement is fully applicable to federal RICO claims, and the board of trustees (rather than a single shareholder) has the authority to decide whether to bring such claims on behalf of a corporation or statutory trust. Further, as previously recognized in Gamoran II, a board manifestly does not waive the demand requirement by moving to dismiss a shareholder derivative lawsuit while acknowledging that it would give due consideration to a court's pronouncements regarding applicable legal principles.

Plaintiff makes little effort to rebut the Independent Trustee Defendants' showing that his third lawsuit is premature given that plaintiff made demand but failed to await the board's response. He merely repeats the Complaint's defective allegations that the board did not respond quickly enough, did not communicate with him often enough or provide him with information he requested, and that the suit was supposedly justified by concerns regarding the statute of limitations. As demonstrated in the Memorandum, and as further discussed below, courts have repeatedly rejected similar boilerplate allegations, which are inconsistent with the principle that the manner in which a board responds to a demand is entrusted to its business judgment. Here,

---

[1] The opening Independent Trustees' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Verified Derivative and Class Action Complaint (filed December 8, ECF No. 32) will be referred to as the "Memorandum" or "Mem." This Reply uses the same structure as the Memorandum. It will also refer to certain materials attached to the Declaration of Nicholas G. Terris (the "Declaration"), filed therewith. Capitalized terms and abbreviations not defined herein have the meanings ascribed to them in the Memorandum.

the board has been carefully and conscientiously performing its duties, including by addressing any potential statute of limitation issues.

Finally, plaintiff has abandoned his purported "direct" claims in light of a recent Delaware Supreme Court ruling.

Accordingly, the Complaint should be dismissed.

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO PURSUE DERIVATIVE CLAIMS AND THE FUND'S BOARD IS ENTITLED TO CONCLUDE ITS INVESTIGATION OF PLAINTIFF'S DEMAND

As discussed in the Memorandum, Delaware (like all states) recognizes that the decision whether to bring legal claims on behalf of a corporation or statutory trust is the responsibility of the board of directors or trustees – and may not be usurped by a single shareholder purporting to bring a derivative claim. See Mem. 1, 8. Therefore, a shareholder may not sue based on a corporate claim, but must instead make demand on the board. See Mem. 1, 8.

Plaintiff argues for a broad, categorical RICO exception to these principles. He contends that the board cannot terminate a derivative suit involving federal RICO claims because doing so would be inconsistent with federal law. Opp. 23-26.

This is utterly meritless. In Burks v. Lasker, 441 U.S. 471 (1979), the Supreme Court recognized the authority of investment company independent directors to terminate a non-frivolous federal derivative cause of action in accordance with state law. As the Court explained, "Congress has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute." Id. at 478. The Supreme Court in Kamen v. Kemper Financial Services Inc., 500 U.S. 90 (1991), reiterated that courts ordinarily must apply state law demand requirements to federal derivative causes and

therefore may not apply a federally created universal demand rule.[2] Thus, "[j]udicial review of a corporate decision to bring, not to bring, or to terminate a lawsuit is . . . governed by the business judgment rule, as determined by the law of the state of incorporation." RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1326 (2d Cir. 1991). Absent some direct conflict between state law and the pertinent federal statute, which plaintiff comes nowhere close to alleging, "[t]he law of that state applies even where federal claims are involved." Id.

Courts have applied this principle to RICO, holding that state law demand requirements are *not* inconsistent with that statute. See Nordberg v. Lord, Day & Lord, 107 F.R.D. 692, 700 (S.D.N.Y. 1985) (holding that "RICO must be interpreted . . . with reference to state common law" and shareholders therefore must make demand on a board); Allison v. Gen. Motors Corp., 604 F. Supp. 1106, 1120 (D. Del. 1985) ("[P]laintiff has not pointed out nor has the Court been able to discover anything in the RICO statute or its legislative history indicating that the policy underlying RICO is inconsistent with director termination of derivative litigation."), aff'd, 782 F.2d 1026 (3d Cir. 1985); In re Sunrise Sec. Litig., 916 F.2d 874, 889 (3d Cir. 1990) (holding that investors' claims under RICO were derivative and could only proceed after an unsuccessful demand); Litton Indus., Inc. by Wildflower P'ship v. Hoch, 996 F.2d 1225, 1993 WL 241549 (9th Cir. 1993) (unpublished table opinion) (same). Indeed, a court in this district has specifically held that notwithstanding the fact (as plaintiff pointed out) that RICO has broad "remedial purposes," Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98 (1985), a state law's "[d]erivative action requirements, however, are not inconsistent with the policies underlying RICO." Nordberg, 107 F.R.D. at 700; cf. Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849

---

[2] See, e.g., Kamen, 500 U.S. at 98 ("The presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards. Corporation law is one such area." (citations omitted)).

(2d Cir. 1986) (upholding dismissal of RICO claim because it was a derivative claim that the shareholders could not bring directly).

Plaintiff's citations to Daily Income Fund, Inc. v. Fox, 464 U.S. 523 (1984), and the "unique structure of mutual funds," Opp. 23, do not bolster his argument. Daily Income Fund involved a specific provision in the Investment Company Act of 1940 ("ICA"), Section 36(b), that specifically authorizes a shareholder action for breach of fiduciary duty suits involving adviser fees. Id. at 539-42. Indeed, as Burks recognized, the fact that Section 36(b) is the *only* provision for which Congress chose to eliminate the demand requirement underscores that the board retains control of other lawsuits asserting claims on behalf of the investment company. Burks, 441 U.S. at 484 ("[W]hen Congress did intend to prevent the board action from cutting off derivative suits, it said so expressly.");[3] see also In re Eaton Vance Mut. Funds Fee Litig., 403 F. Supp. 2d 310, 316 (S.D.N.Y. 2005) (rejecting similar argument that the "unique structure of a mutual fund" affects whether legal claims belong to the corporation or the shareholder), aff'd sub nom. Bellikoff v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007); Everett v. Bozic, No. 05 Civ. 296, 2006 WL 2291083, at *4 (S.D.N.Y. Aug. 3, 2006) (same).

Therefore, Delaware law governs who controls a litigation brought on behalf of the Fund and, under governing principles, "[t]he decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation" is "part of the responsibility of the board of directors." Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990); see also Mem. 1, 8.

---

[3] In a similar vein, plaintiff misleadingly quotes Kamen in asserting that the ICA "'clearly envisions' the critical role that aggrieved shareholders would fulfill in 'protecting investment companies from conflicts of interest' and from breaches of the investment adviser's fiduciary duties." Opp. 25, quoting Kamen, 500 U.S. at 108. But the quoted passage of Kamen relates specifically and exclusively to the right of action in Section 36(b) and actually underscores that, for other causes of action, the demand requirement is fully applicable. Kamen, 500 U.S. at 108.

### A. Plaintiff's Demand Has Not Been Refused and His Abdication Argument Is Baseless

Plaintiff cannot dispute that his demand had not been refused at the time he commenced this action. Therefore, unless and until the board refuses demand, plaintiff's ability to proceed with derivative litigation "is terminated." Stotland v. GAF Corp., 469 A.2d 421, 422 (Del. 1983); see also Mem. 9.

In a puzzling argument, plaintiff nonetheless asserts that the Independent Trustee Defendants have somehow waived their right to seek dismissal of this premature litigation by noting (at Mem. 3 n.2) that a pronouncement by the Court on the viability of plaintiff's legal claims would have informed the board's response to plaintiff's demand. Opp. 19-21.

Plaintiff unsuccessfully advanced the same argument in Gamoran II. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, Gamoran II (filed Mar. 25, 2011), ECF No. 33; Order Dismissing Action Without Prejudice, Gamoran II (entered May 11, 2011), ECF No. 41. Accordingly, the issue is res judicata.

In any event, plaintiff's abdication argument is groundless. Plaintiff relies on Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726 (Del. 1988), and In re American International Group, Inc., 965 A.2d 763 (Del. Ch. 2009), aff'd, 11 A.3d 228 (2011). See Opp. 19-21. But these cases do not support plaintiff's position.

Kaplan held that a corporation in a derivative action "cannot effectively stand neutral" regarding "the shareholders' capacity to sue derivatively," and instead "must affirmatively object to or support the continuation of the litigation" by the shareholder plaintiff. 540 A.2d at 731. The company in Kaplan submitted an affidavit to the court expressly stating that the company "neither objects to nor supports this action" and took "a neutral position" on a motion seeking dismissal based on lack of demand. Id. at 729. Under these "unique facts," where the company

had "acquiesced" to the derivative action, the court found that "the policy underlying Chancery Court Rule 23.1 of safeguarding the directors' power to manage the affairs of the corporation is not implicated." Id. at 731. Similarly, the special litigation committee in In re American International Group, Inc. made a deliberate decision to take a neutral position as to certain claims and thus allow the stockholder plaintiffs to go forward. 965 A.2d at 809. The court there made clear that it was "**not** the typical situation" – exemplified here – "where a corporation is objecting to litigation brought in its name." Id. at 808 (emphasis added). In addition, the court emphasized that the committee there "had a full and fair opportunity to decide whether to prosecute the claims." Id. at 809.

This case is the polar opposite of Kaplan and American International Group. The Independent Trustee Defendants have "affirmatively object[ed] to . . . the continuation of the litigation," Kaplan, 540 A.2d at 731, by the most formal and unambiguous means available: they filed a motion to dismiss unequivocally objecting to plaintiff's efforts to exercise control of the litigation and demonstrating that plaintiff has no ability to pursue this action in the Trust's name. See Bellikoff v. PricewaterhouseCoopers, LLP, 300 Fed. Appx. 41 (2d Cir. 2008) (rejecting argument similar to plaintiff's).

Far from surrendering any authority, the Independent Trustee Defendants' recognition that an opinion of this Court would assist the Trust simply reflects the effort of the Trust's board to fulfill its duties.[4]

---

[4] While the issue is not presently before the Court, plaintiff is incorrect that a decision by the Court upholding the validity of plaintiff's legal claims necessarily would be dispositive of the merits of his demand. See Opp. 20 n.19. Merely because a claim is viable does not mean that the board must bring suit on behalf of the Fund. See Zapata Corp. v. Maldonado, 430 A.2d 779, 788 (Del. 1981) ("[T]he final substantive judgment whether a particular lawsuit should be maintained requires a balance of many factors ethical, commercial, promotional, public relations, employee relations, fiscal as well as legal." (internal citations omitted)); Carlton Invs. v. TLC

- 6 -

### B. Plaintiff Has Failed to Rebut the Presumption That the Board Is Responding to Plaintiff's Demand in Good Faith

Under Delaware law, "*the directors* must determine the best method to inform themselves of the facts relating to the alleged wrongdoing." Rales v. Blasband, 634 A.2d 927, 935 (Del. 1993) (emphasis added). Plaintiff's quibbles about the board's processes fly in the face of the business judgment rule and come nowhere close to showing that the board has acted in bad faith in responding to plaintiff's demand.

#### 1. A Shareholder Cannot Dictate the Time Frame of the Board's Response to a Demand

Plaintiff's footnote argument that the board delayed the commencement of its investigation by five months, Opp. 20 n.20, is a distortion of the record. Plaintiff fails to acknowledge that during the first three of those months plaintiff's prior suit (Gamoran II) was still ongoing, and an additional month covered the time period during which plaintiff could have appealed Judge Sand's decision dismissing that case. See Mem. 12. As explained in the opening Memorandum, the case law recognizes that a board can reasonably decide not to needlessly expend resources on an investigation while another lawsuit involving overlapping issues is pending. See Mem. 12-13. Plaintiff made no attempt to distinguish these authorities, and it is indisputable that he filed this lawsuit a mere 10 weeks after the time for appeal expired in his last lawsuit.

Even setting that aside, the investigation began two months after the board received a letter from plaintiff's counsel substantiating that he had standing to pursue his claims. See Terris Decl. Ex. C. The board then began a careful search to select appropriate outside counsel to conduct the investigation.

---

Beatrice Int'l Holdings, Inc., No. Civ. A. 13950, 1997 WL 305829, at *11 (Del. Ch. May 30, 1997).

In any event, as the numerous cases the Independent Trustee Defendants cited in the opening Memorandum illustrate, the current lawsuit is premature even by plaintiff's erroneous five month measure. See Mem. 13 (collecting cases).

### 2. Plaintiff's Allegations Regarding the Board's Responsiveness Are Meritless

Plaintiff does not (and cannot) dispute that he received notice that his demand had been referred to the board for its consideration. See Mem. 5-6 & Terris Decl. Ex. B.

Particularly in view of plaintiff's failure to communicate his supposed belief that a response was urgent, his complaint that the board did not correspond with him more frequently, see Opp. 20, is simply an impermissible effort to "dictate the manner in which the board, or its special committee, investigates [plaintiff's] allegations." FLI Deep Marine LLC v. McKim, No. 4138-VCN, 2009 WL 1204363, at *4 (Del. Ch. Apr. 21, 2009) (internal quotation omitted).

### 3. Statutes of Limitation Are Not a Valid Excuse for Plaintiff to Usurp the Board's Authority

Plaintiff offers no rebuttal to the case law demonstrating that plaintiff's action must be dismissed in light of the fact that plaintiff's failure to timely make demand created any statute of limitations issues that he believes may exist. See Mem. 14 (discussing Seidl v. Am Century Cos., 713 F. Supp. 2d 249, 259 n.14 (S.D.N.Y. 2010)), aff'd, 427 Fed. Appx. 35 (2d Cir. 2011).

In any event, the Trust's board has the authority to take into account the possible effect of statutes of limitations on the Fund's claims and act accordingly, including by seeking tolling agreements. As plaintiff was promptly informed when he belatedly contacted the board *after* he filed his third lawsuit, tolling agreements have been executed that will enable the board to complete its review of plaintiff's demand. See Mem. 14-15; Terris Decl. Ex. E.

Plaintiff is incorrect to suggest that defendants were obliged to provide him a copy of the tolling agreement. See Opp. 20-21. As a matter of law, a shareholder is not entitled to discovery

unless and until the court finds that he may proceed on his claims. See, e.g., Scattered Corp. v. Chi. Stock Exch., Inc., 701 A.2d 70, 77 (Del. 1997) ("[P]laintiffs in a derivative suit are not entitled to discovery to assist their compliance with the particularized pleading requirement of Rule 23.1."), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000); Stoner v. Walsh, 772 F. Supp. 790, 800 (S.D.N.Y. 1991) (rejecting requested discovery into board's decision rejecting demand, noting that "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists").[5]

## II. PLAINTIFF'S PURPORTED DIRECT CLAIMS ARE ACTUALLY DERIVATIVE CLAIMS SUBJECT TO THE BOARD'S AUTHORITY

Plaintiff has abandoned all of his individual and putative class claims in light of the Delaware Supreme Court's order affirming the Chancery Court's "well-reasoned" decision in Hartsel v. Vanguard Group, Inc., No. 5394-VCP, 2011 WL 2421003 (Del. Ch. June 15, 2011), aff'd, 2012 WL 171881 (Del. Jan. 19, 2012). See Opp. at 2 n.1. See also Mem. 15-17.

---

[5] Plaintiff errs in asserting that "Defendants' counsel promised to Judge Sand" that they would inform plaintiff that tolling agreements were executed. Opp. 20-21. Plaintiff does not cite any instance when Defendants' counsel made this "promise," nor could he, as no such promise was ever made.

## CONCLUSION

The Complaint should be dismissed.

Dated: February 17, 2012
New York, NY

Respectfully submitted,

K&L GATES LLP

By:   s/ Joanna A. Diakos
Joanna A. Diakos (JD-7269)
599 Lexington Avenue
New York, NY 10022-6030
E-mail: joanna.diakos@klgates.com
Phone: (212) 536-3900
Fax:    (212) 536-3901

Jeffrey B. Maletta (*pro hac vice*)
Nicholas G. Terris (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice* to be submitted)
1601 K Street, NW
Washington, DC 20006-1600
E-mail: jeffrey.maletta@klgates.com
         nicholas.terris@klgates.com
         ted.kornobis@klgates.com
Phone: (202) 778-9000
Fax:    (202) 778-9100

*Attorneys for Defendants John Cannon, Faith Colish, C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf, Edward L. O'Brien, William E. Rulon, Cornelius T. Ryan, Tom D. Seip, Candace L. Straight, Peter P. Trapp and Nominal Defendant Neuberger Berman Equity Funds*