UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BENJAMIN M. GAMORAN, derivatively on behalf of the nominal defendant with respect to its series mutual fund, the Neuberger Berman International Fund,

          Plaintiff,

-against-

NEUBERGER BERMAN MANAGEMENT LLC, *et al.*,

          Defendants,

-and-

NEUBERGER BERMAN EQUITY FUNDS d/b/a NEUBERGER BERMAN INTERNATIONAL FUND,

          Nominal Defendant.

11 Civ. 7957 (TPG) (KNF)

ECF Case

**ORAL ARGUMENT REQUESTED**

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
INVESTMENT ADVISOR DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

          James N. Benedict
          Alan J. Stone
          Douglas W. Henkin
          Mia C. Korot
          MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
          1 Chase Manhattan Plaza
          New York, NY  10005-1413
          (212) 530-5000

*Attorneys for Defendants Neuberger Berman Management LLC, Neuberger Berman, LLC, Benjamin Segal, Peter E. Sundman, and Jack L. Rivkin.*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ..............................................................................................1
ARGUMENT ............................................................................................................................1
I. THE COMPLAINT DOES NOT ALLEGE THAT ANY DEFENDANT VIOLATED 18 U.S.C. § 1955 ...........................................................................................1
   A. Section 1955 Does Not Criminalize Ownership Of Publicly Traded Stock ...................... 1
   B. Section 1955 Cannot Be Applied Extraterritorially ............................................... 4
   C. Plaintiff's Own Example Undermines His Entire Argument ............................................ 5
   D. The Fund's Investments In 888 And NETeller Did Not Violate State Law ...................... 6
II. THE COMPLAINT FAILS TO ALLEGE RICO CLAIMS ......................................................7
   A. There Are No Predicate Acts .................................................................................. 7
   B. There Is No Proximate Causation .......................................................................... 7
   C. Plaintiff Concedes That His RICO Claims Fail For Other Reasons As Well .................... 8
III. PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED ..........................................9
IV. CONCLUSION ...................................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .................................................................................................................8

*Cedeno v. Intech Group, Inc.*,
  733 F. Supp. 2d 471 (S.D.N.Y. 2010) ......................................................................................4

*Clackamas Gastroenterology Assocs., P.C. v. Wells*,
  538 U.S. 440 (2003) .................................................................................................................2

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) .................................................................................................................2

*Dorchster Investors v. Peak Trends Trust*,
  No. 99 Civ. 4696 (LMM), 2003 WL 223466 (S.D.N.Y. Feb. 3, 2003) ....................................6

*Dowling v. United States*,
  473 U.S. 207 (1985) .................................................................................................................3

*Dubai Islamic Bank v. Citibank, N.A.*,
  126 F. Supp. 2d 659 (S.D.N.Y. 2000) ......................................................................................6

*GICC Capital Corp. v. Tech. Fin. Group*,
  67 F.3d 463 (2d Cir. 1995) .......................................................................................................9

*Hartsel v. The Vanguard Group, Inc.*,
  2011 WL 2421003 (Del. Ch. June 15, 2011), *aff'd*, 2012 WL 171881 (Jan. 19. 2012) ............9

*Ideal Steel Supply Corp. v. Anza*,
  652 F.3d 310 (2d Cir. 2011) .....................................................................................................8

*Johnson v. United States,*
  130 S. Ct. 1265 (2010) .............................................................................................................3

*McBrearty v. The Vanguard Group, Inc.*,
  No. 08 civ. 7650 (DLL), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009), *aff'd,* 353 Fed.
  App'x 640 (2d Cir. 2009) .....................................................................................................7, 8

*Morrison v. Nat'l Austl. Bank Ltd.*,
  130 S. Ct. 2869 (2010) ..........................................................................................................4, 5

*Norex Petroleum Ltd. v. Access Indus.*,
  631 F.3d 29 (2d Cir. 2010) .......................................................................................................4

*Perrin v. United States*,
    444 U.S. 37 (1979) ................................................................................................................ 2

*Sanabria v. United States*,
    437 U.S. 54 (1978) ................................................................................................................ 3

*Segal v. Bitar*,
    No. 11 Civ. 4521, Slip Op. (S.D.N.Y. Jan. 30, 2012) ........................................................... 8

*Seidl v. Am. Century Cos., Inc.*,
    713 F. Supp. 2d 249 (S.D.N.Y. 2010), *aff'd,* 427 Fed. App'x 35 (2d Cir. 2011) ............... 7, 8

*United States v. Dauray*,
    215 F.3d 257 (2d Cir. 2000) .............................................................................................. 2, 3

*United States v. Philip Morris USA, Inc.*,
    No. Civ. A 99-2496 (GK), 2011 U.S. Dist. LEXIS 32053 (D.D.C. Mar. 28, 2011) ............ 4

*United States v. Santos*,
    553 U.S. 507 (2008) .............................................................................................................. 3

*United States v. Wallach,*
    935 F.2d 445 (2d Cir. 1991) .................................................................................................. 2

*Weems v. United States*,
    217 U.S. 349 (1910) .............................................................................................................. 3

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) .............................................................................................................. 1

**STATUTES**

15 U.S.C. § 78t(a) ........................................................................................................................ 2

18 U.S.C. §1084 ........................................................................................................................... 4

18 U.S.C. § 1955 ................................................................................................................. passim

18 U.S.C. §1955(b) ...................................................................................................................... 5

18 U.S.C. § 1962(a) .................................................................................................................. 6, 8

18 U.S.C. § 1962(c) ..................................................................................................................... 8

18 U.S.C. § 1962(d) ..................................................................................................................... 8

N.Y. Penal Law §100.00 .............................................................................................................. 7

N.Y. Penal Law § 110.00 ............................................................................................................. 7

N.Y. Penal Law § 225.00 ........................................................................................................... 6

N.Y. Penal Law § 225.05 ........................................................................................................... 7

N.Y. Penal Law § 460.25 ........................................................................................................... 6

**OTHER AUTHORITIES**

18 C.J.S. Corporations § 9 (2011) ............................................................................................. 3

Black's Law Dictionary (9th ed. 2009) ..................................................................................... 3

H.R. Rep. No. 91-1549, § 802 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007 ....................... 3

S. Rep. No. 617, 91st Cong. (1969) ........................................................................................... 2

**PRELIMINARY STATEMENT**[1]

Plaintiff concedes that (i) the primary issue in this case is whether a federal criminal statute enacted to prevent organized crime from infiltrating legitimate businesses also made it a felony to do something expressly permitted by another sovereign's laws (buy and own publicly-traded stock listed on a non-U.S. exchange) and (ii) no one has been held criminally liable (or even charged) under *any* statute for buying shares of companies like 888 and NETeller in a regulated secondary market.[2] It is a core principle of U.S. law that buying and owning stock is not illegal; had Congress intended to change that in enacting 18 U.S.C. § 1955, it would have had to tell the world it was doing so: Congress does not "hide elephants in mouseholes,"[3] and Plaintiff's arguments come down to the assertion that Congress actually hid a lot of elephants in a very small mousehole. Plaintiff's Opposition confirms that his Complaint fails to state any claim and must be dismissed.

**ARGUMENT**

I. **THE COMPLAINT DOES NOT ALLEGE THAT ANY DEFENDANT VIOLATED 18 U.S.C. § 1955**

   A. **Section 1955 Does Not Criminalize Ownership Of Publicly Traded Stock**

   Plaintiff argues that purchasing even a single share of publicly traded stock on a non-U.S. secondary market means that the purchaser "owns all or part of [the] ... business" in

---

[1] Capitalized terms not defined herein have the meanings ascribed to them as set forth in the Memorandum of Law in Support of the Investment Advisor Defendants' Motion to Dismiss the Complaint, dated December 8, 2011 (the "IA Def. Br."). References to Plaintiff's Opposition Brief are in the form "Opposition" or "Opp. Br."

[2] That NETeller's founders were prosecuted after the Fund sold its NETeller stock (Opp. Br. at 5) is irrelevant, because Plaintiff concedes that no one has ever been criminally prosecuted for being a secondary market purchaser of stock of a company like 888 or NETeller.

[3] *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

violation of Section 1955.  That argument is contrary to common sense and fundamental principles of statutory construction.[4]

When a word in a criminal statute is not defined, courts use the word's ordinary, contemporary, common meaning.[5]  Under the common usage of "owns, " a minority stockholder does not "own" the corporation in which he holds stock.  The structure of Section 1955 depends on responsible ownership, which requires significant influence over or responsibility for that which is owned in order to create liability.  This is consistent with (i) the background principle that an individual shareholder does not own a corporation's assets merely because he or she owns stock,[6] (ii) the general structure of the U.S. securities laws (which only make individuals responsible for a corporation's actions if they are "control persons"),[7] and (iii) what a reader using "everyday speech" would take from the text and legislative history to be the intended targets of the statute — owner-operators and organized crime figures (S. Rep. No. 617, 91st Cong., at 86, 88 (1969)), not passive investors who purchase listed stock in a public market.[8]

Basic principles of statutory construction also confirm that Plaintiff's interpretation of "own" must be rejected.

---

[4] Plaintiff also fundamentally misstates the Defendants' arguments.  Contrary to Plaintiff's assertions (Opp. Br. at 18-19), the issue is not whether the Fund's investors could be found in violation of Section 1955, it is whether any investor who owned a single share of stock of a company like 888 or NETeller could.  Plaintiff's argument that there is no risk of Fund investors (like Plaintiff) becoming liable under Plaintiff's theories has nothing to do with the Defendants' actual arguments.

[5] *See Perrin v. United States*, 444 U.S. 37, 42 (1979); *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000).

[6] *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

[7] *See, e.g.,* 15 U.S.C. § 78t(a).  Minority shareholders generally have no control or influence over the day-to-day management and operation of corporations in which they own stock.  *See United States v. Wallach,* 935 F.2d 445, 462 (2d Cir. 1991).

[8] Plaintiff cites *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003) in support of his argument that a shareholder "owns" a company.  (Opp. Br. at 9.)  Plaintiff's argument based on *Clackamas* is without merit.  *Clackamas* decided whether four physician shareholders who owned their medical practice through a closely-held professional corporation were employees for purposes of the Americans with Disabilities Act.  It did not consider (or even mention) whether a shareholder of a publicly-traded corporation "owns" that corporation for the purposes of Section 1955.

2

- Context determines meaning for statutes. *See Johnson v. United States,* 130 S. Ct. 1265, 1271 (2010). The terms that precede "owns" in Section 1955 ― conduct, finance, manage, supervise, and direct ― connote influence over, responsibility for, or participation in the gambling operation itself, and "owns" should be read in the same context. Plaintiff's arguments that financing does not involve participation in a gambling enterprise and Defendants' argument would make surplusage of the word "owns" (Opp. Br. at 12) are flawed. To "finance" means to "provide funds or capital,"[9] which involves a direct transaction with the gambling company. Secondary market purchases of publicly traded stock, in contrast, involve no direct transactions with the company whose stock is traded in the secondary market.[10]

- When "assessing the reach of a federal criminal statute, [courts] must pay close heed to language, legislative history, and purpose ... ." *Dowling v. United States*, 473 U.S. 207, 213 (1985). The fact that the text and legislative history of Section 1955 do not specifically address whether owning publicly-traded stock would violate the statute, *see* H.R. Rep. No. 91-1549, § 802 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4029, strongly suggests that Plaintiff's interpretation of "own" is inconsistent with Congress' intent in enacting the statute. Notably, Plaintiff's Opposition does not address the legislative history of Section 1955 at all, likely because Plaintiff knows it says nothing that helps him.

- "A statute should be interpreted in a way that avoids absurd results." *Dauray*, 215 F.3d at 264. Under Plaintiff's theory, owning one share of a publicly-traded stock for one day could be a felony. If Congress "intended an absolute prohibition" of ownership of publicly-traded stock as Plaintiff claims (Opp. Br. at 9-10), it would have said so in very clear terms.[11]

- Finally, ambiguous criminal statutes are *never* interpreted expansively because the rule of lenity always requires ambiguities in a criminal statute to be resolved in a defendant's favor.[12] Contrary to Plaintiff's contention, it is not clear that "own all or part of" includes the ownership of publicly-traded

---

[9] *See*, *e.g.*, Black's Law Dictionary (9th ed. 2009) ("finance: to raise or provide funds.").

[10] Plaintiff's argument that Section 1955 should not be read to create an implied exception for passive ownership (Opp. Br. at 11) ignores the significant difference between minority shareholders of a publicly-traded company and shareholders of a closely held corporation. Publicly-held corporations typically have thousands of shareholders who have no control over the day-to-day management and operation of the company (*see supra* n. 7) whereas "[a] 'close corporation' is one in which management and ownership are substantially identical." 18 C.J.S. Corporations § 9 (2011). No case Plaintiff cites in which Section 1955 was applied involved prosecuting public shareholders of a publicly-traded corporation.

[11] Plaintiff's reliance on *Weems v. United States*, 217 U.S. 349 (1910) (Opp. Br. at 14) is entirely misplaced. *Weems* was not about determining the scope of a federal criminal statute — it was about whether a Philippine statute violated the prohibition on cruel and unusual punishment.

[12] *See generally United States v. Santos*, 553 U.S. 507, 514 (2008) ("Under a long line of our decisions, the tie must go to the defendant."). *Sanabria v. United States*, 437 U.S. 54 (1978) (Opp. Br. at 9) does not help Plaintiff because neither it nor the cases it cited addressed the meaning of "owns" under § 1955 with respect to secondary market purchases of stock of a publicly-traded company.

3

shares of corporations listed on non-U.S. markets.[13]  Because of that ambiguity, the rule of lenity would preclude Plaintiff's interpretation of Section 1955 even if it were plausible.

### B. Section 1955 Cannot Be Applied Extraterritorially

Plaintiff does not dispute that the Fund's purchases of 888 and NETeller were made on the LSE, but argues there is no extraterritorial application of U.S. law here because the ownership of illegal gambling businesses "does not focus on the place where the illegal gambling stock is *purchased* but rather on the place where the *ownership* takes place." (Opp. Br. at 15.) Plaintiff cites no authority to support that argument and ignores decisions confirming that isolated domestic contacts (such as the location of the purchaser of stock) do not permit statutes to apply to what is otherwise foreign conduct.[14]  Moreover, Plaintiff's argument that Section 1955 should not be read to create an implied exception for foreign illegal gambling businesses contradicts the established presumption that U.S. statutes have <u>no</u> extraterritorial application unless Congress says so specifically.  In *Morrison*, the Solicitor General argued that extraterritorial application of the securities laws was necessary to prevent the U.S. from becoming a Barbary Coast for wrongdoers perpetrating frauds in other markets, and the Supreme Court rejected that argument because it had no textual basis.[15]  Plaintiff's argument here is

---

[13]  A recent opinion by the Department of Justice regarding the Wire Act (18 U.S.C. §1084) confirms that Plaintiff's interpretation of Section 1955 is at best suspect.  The Wire Act prohibits "betting or wagering" through the use of "wire communication facility" for placing "bets or wagers … on any sporting event or contest" and was the basis for many of the cases Plaintiff claims were "red flags" that should have given notice that the operations of companies like 888 and NETeller were illegal.  The DOJ recently examined the text and legislative history of the Wire Act and opined that the Wire Act prohibits only sports-related gambling activities, *see* Henkin Reply Decl. Exh. A, which neither 888 nor NETeller engaged in with U.S. customers.  The DOJ's analysis of the Wire Act confirms that Section 1955 is at the very least ambiguous with respect to the purchase and ownership of publicly-traded stock listed on a non-U.S. exchange.

[14]  *Norex Petroleum Ltd. v. Access Indus.*, 631 F.3d 29, 33 (2d Cir. 2010); *United States v. Philip Morris USA, Inc.*, No. Civ. A 99-2496 (GK), 2011 U.S. Dist. LEXIS 32053, at *28-29 (D.D.C. Mar. 28, 2011); *Cedeno v. Intech Group, Inc.*, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010); *see generally Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2885 (2010) (rejecting the sort of disdain for foreign regulatory authorities Plaintiff's arguments reflect, the Supreme Court held that a securities transaction that took place in Australia should be regulated by Australia under Australian law).

[15]  *See* 130 S. Ct. 2869 at 2886.  Plaintiff's assertion that "no foreign stock exchange, can provide a safe haven

substantively identical to the Solicitor General's argument that was rejected in *Morrison*. Section 1955 contains no indication that it was intended to apply extraterritorially.[16] Thus, Section 1955 is inapplicable to the Fund's purchase and ownership of shares of 888 and NETeller on the LSE.

### C. Plaintiff's Own Example Undermines His Entire Argument

Plaintiff argues that Section 1955 has no "exception for criminal enterprises traded on foreign stock exchanges" and that Defendants are essentially advocating a judicial exception to the statute. (Opp. Br at 10.) The first problem with Plaintiff's argument is that it assumes that Section 1955 applies to secondary market purchases; as shown above, that is wrong. Moreover, to illustrate why Plaintiff thinks it should be considered a federal crime to engage in transactions in publicly-traded stock on the LSE despite the fact that such transactions are expressly legal in the LSE's home jurisdiction, Plaintiff relies on the U.S. government's placement of Tidewater Company on the Special Designated Nationals list (which is maintained by the Office of Foreign Assets Control ("OFAC")) as an illegal organization that the United States and its citizens are prohibited from doing any business with. (Opp. Br. at 10-11.) Plaintiff argues that if Tidewater Company were a public company (it is not, which is just one of the problems with the argument), then U.S. investors could not purchase its shares because "no foreign stock exchange, can provide a safe haven for U.S. investors to fund violations of U.S. law." (Opp. Br. at 11.) But this argument simply confirms why Section 1955 does not apply here: The normal rule is that U.S. citizens and entities are allowed to choose whether or not to

---

for U.S. investors to fund violations of U.S. law" (Opp. Br. at 11) confirms that Plaintiff is relying on the same "Barbary Coast" argument *Morrison* rejected.

16    Section 1955 applies only to businesses that are in violation "of the law of a State or political subdivision in which it is conducted," and "State" is defined as "any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States." 18 U.S.C. §1955(b).

do business with or invest in non-U.S. entities, and when the U.S. Government intends to prohibit that choice it does so in a transparent and explicit manner pursuant to a specific grant of legislative or treaty-based power.  OFAC's Special Designated Nationals list is published on OFAC's website, is accessible to everyone, and explains why it is illegal to do business with the entities on the list (largely for national security reasons having nothing to do with companies like 888 and NETeller).  If Congress intended Section 1955 to criminalize the purchase of publicly-traded stock on a non-U.S. exchange, it would have said so, clearly and explicitly, as it did with the Special Designated Nationals list.  Put differently, there is a list of companies with which U.S. citizens are not permitted to do business (by investment or otherwise) — the list Plaintiff himself cites — and it never included 888 and NETeller.  And the structure of the OCCA — through which Section 1955 was enacted —confirms that Congress' failure to say that investing in publicly-traded stock was illegal under Section 1955 means it did not intend that result:  When Congress wanted to make the purchase of publicly-traded stock illegal, it did so through 18 U.S.C. § 1962(a) (which prohibits using the proceeds of racketeering activity to purchase publicly-traded stock in certain circumstances), but Plaintiff has not even tried to allege that any Defendants violated that statute.[17]

### D. The Fund's Investments In 888 And NETeller Did Not Violate State Law

Plaintiff's Opposition does not address Delaware law and thus concedes the Defendants' arguments that the Fund's investments did not violate Delaware law.[18]  And Plaintiff flatly admits that the Defendants did not violate N.Y. Penal Law § 225.00 and § 460.25.

---

[17] Similarly, Plaintiff's discussion of N.Y. Penal Law § 460.25 (Opp. Br. at 17) proves the Defendants' point: Legislatures know how to tell the world when they intend to prohibit secondary market transactions, and Congress did not do that with respect to Section 1955.

[18] *See Dorchster Investors v. Peak Trends Trust*, No. 99 Civ. 4696 (LMM), 2003 WL 223466, at *2 (S.D.N.Y. Feb. 3, 2003); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 670 (S.D.N.Y. 2000).

(Opp. Br. at 16-17.)[19]  Instead, Plaintiff now alleges, <u>for the very first time</u>, that Defendants (i) violated N.Y. Penal Law § 110.00 by attempting to violate § 225.05 and (ii) violated N.Y. Penal Law §100.00 by conspiring to violate §225.05.  (Opp. Br. at 16.)  Beyond the fact that it is far too late to come up with yet another set of statutes Plaintiff claims was violated, these new allegations fail on the merits.  Although Plaintiff tries to dress it up, the Complaint alleges nothing other than hindsight criticism of ordinary investment activity.  Thus, the Fund's purchases of shares of stock listed on the LSE cannot conceivably qualify as "materially aiding" a gambling company because they were not transactions with either 888 or NETeller, nor could the transactions qualify as "solicit[ing], request[ing], command[ing], importune[ing] or otherwise attempt [ing]to cause" another person to engage in illegal conduct because Plaintiff does not allege that any Defendant participated in the operations of 888 or NETeller.  And just as with his main argument based on Section 1955, Plaintiff does not cite to any decisions that have applied New York law in the way Plaintiff now claims it should be applied.

## II.     THE COMPLAINT FAILS TO ALLEGE RICO CLAIMS

### A.     **There Are No Predicate Acts**

Plaintiff concedes that the only predicate act alleged is a violation of Section 1955.[20]  Because owning 888 and NETeller stock was not illegal, the RICO claims fail.

### B.     **There Is No Proximate Causation**

Plaintiff admits that *McBrearty v. The Vanguard Group, Inc.,* No. 08 civ. 7650 (DLL), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009), *aff'd,* 353 Fed. App'x 640 (2d Cir. 2009) and *Seidl v. Am. Century Cos., Inc.,* 713 F. Supp. 2d 249 (S.D.N.Y. 2010), *aff'd,* 427 Fed. App'x 35

---

[19]     Plaintiff's attempt to get around the Dormant Commerce Cause (Opp. Br. at 17 n.18) fails.  The Dormant Commerce Clause prohibits states from attempting to regulate conduct outside their borders, precisely what Plaintiff claims state law should be read to do.

[20]     Opp. Br. at 21.  Plaintiff does not purport to allege any state law predicate acts (nor could he).  *See* IA Defs. Br. at 21-22.

7

(2d Cir. 2011) are "similar cases" which were dismissed for lack of RICO proximate causation. (Opp. Br. at 22.) Plaintiff argues that the Court should ignore *McBrearty* and *Seidl* because *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011) supposedly "undercuts the reasoning" of those cases. (Opp. Br. at 22.) That argument is wrong.

*McBrearty* and *Seidl* arose under § 1962(c) and (d), whereas *Ideal Steel* arose under § 1962(a). On remand from the Supreme Court, the district court had dismissed Ideal Steel's § 1962(a) claim (that Ideal Steel had lost business as a result of the defendant's investment of funds derived from a pattern of racketeering activity in the establishment and operation of a commercial enterprise in competition with Ideal Steel's business) for lack of proximate causation. *See* 652 F.3d at 314-15. The Second Circuit reversed, concluding that the proximate causation standards under § 1962(a) and § 1962(c) are different and that the act constituting the alleged violation in *Ideal Steel* — the use or investment of the proceeds of racketeering activity to open a competing store — was the act that caused Ideal Steel's alleged injury. That is different from § 1962(c), which requires the racketeering injury to flow directly from the alleged predicate acts themselves. The Second Circuit confirmed this in the very decision Plaintiff relies on (*see id*. at 326-27), the Supreme Court confirmed it in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006), and Judge Sand recently noted the continuing vitality of *McBrearty* (*see Segal v. Bitar*, No. 11 Civ. 4521, 2012 WL 273609, at *12 (S.D.N.Y. Jan. 30, 2012)). *McBrearty* and *Seidl* thus require that the RICO claims be dismissed.

C. **Plaintiff Concedes That His RICO Claims Fail For Other Reasons As Well**

Plaintiff does not address Defendants' additional arguments for why his RICO claims fail and thus concedes those arguments. Plaintiff's conclusory assertion that he has "allege[d] the factual elements needed to establish a RICO violation" (Opp. Br. at 21) is insufficient because, *inter alia*, Plaintiff concedes that the RICO claims are time-barred, the

8

Complaint fails to plead a proper RICO enterprise or establish that Plaintiff was the target or intended victim of the alleged enterprise, the Complaint fails to adequately plead pattern and continuity, and RICO cannot be applied extraterritorially.  *See* IA Defs. Br at 21-23; *see also GICC Capital Corp. v. Tech. Fin. Group*, 67 F.3d 463, 469 (2d Cir. 1995) (acts occurring over 11 month period are not a RICO pattern).  Any one of these would be sufficient to require dismissal of the RICO claims, and Plaintiff concedes them all.

III.     **PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED**

Plaintiff directly concedes that *Hartsel v. The Vanguard Group, Inc.*, 2011 WL 2421003 (Del. Ch. June 15, 2011), *aff'd*, 2012 WL 171881 (Jan. 19. 2012), holds that he lacks standing to assert Claims Six through Nine. (Opp. Br. at 2 n. 1.)  And by not responding to any of Defendants' other arguments, Plaintiff also concedes that his derivative claims for breach of fiduciary duty, negligence, and waste are substantively defective and must be dismissed.  Plaintiff asserts that "[i]f this Court concludes that the plain language of [Section 1955] applies to defendants' investments in illegal gambling organizations, then the remainder of Defendants' arguments should be rejected too." (Opp. Br. at 19.)  That conclusory assertion does not mitigate Plaintiff's failure to respond to the Defendants' arguments:  Despite not using almost half of the pages he requested to oppose the Defendants' motions, Plaintiff does not address the Defendants' substantive arguments in the argument section of his brief.[21]  Given that the Fund contractually waived any possible claims against the Investment Advisor Defendants for "any error of judgment or mistake of law or for any loss suffered by [the Fund] in connection with any matter to which" the advisory contract between the Advisor and the Fund related except for claims

---

[21]     Plaintiff's conclusory assertion in his "Statement of Facts" that "Defendants failed to act in good faith when they violated the Gambling Act and RICO" and therefore breached their fiduciary duties (Opp. Br. at 8) is not a response to the Defendants' detailed substantive arguments.  And even viewing it charitably, it does not bother mentioning the waste or negligence claims.

9

against the Advisor for "willful misfeasance, bad faith, or gross negligence" (Henkin Decl. Exh. B § 9), Plaintiff had to make some actual argument about why any claims in the Complaint could be deemed to fit the carve-out to that waiver.[22]  Plaintiff's utter failure to address the Defendants' arguments concedes that the derivative claims all fail.

IV.   **CONCLUSION**

For all the foregoing reasons, as well as the reasons set forth in the Investment Advisors' Opening Brief, the Complaint should be dismissed with prejudice

Dated:  New York, New York
February 17, 2012

Respectfully submitted,

MILBANK, TWEED, HADLEY & McCLOY LLP

By:   /s/ Douglas W. Henkin
James N. Benedict
jbenedict@milbank.com
Alan J. Stone
astone@milbank.com
Douglas W. Henkin
dhenkin@milbank.com
Mia C. Korot
mkorot@milbank.com
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000

*Attorneys for Defendants Neuberger Berman Management LLC, Neuberger Berman, LLC, Benjamin Segal, Peter E. Sundman, and Jack L. Rivkin.*

---

[22]   The advisory contract waives all claims by the Fund against the Investment Advisors' officers and employees and only permits claims against the Investment Advisors themselves in specific circumstances. *See* Henkin Decl. Exh. B § 9.  That means that there are no circumstances that would allow the Fund or its shareholders to pursue claims against Mr. Segal relating to the Fund's investments in 888 and NETeller.