UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
BENJAMIN M. GAMORAN, derivatively :
on behalf of the nominal defendant with :
respect to its series mutual fund, the : 11 Civ. 7957 (TPG)
Neuberger Berman International Fund. :
: **OPINION**
Plaintiff, :
:
– against – :
:
NEUBERGER BERMAN, LLC, ET AL., :
:
Defendants, :
:
-and- :
NEUBERGER BERMAN EQUIY FUNDS :
d/b/a NEUBERGER BERMAN :
INTERNATIONAL FUND, :
:
Nominal Defendant. :
------------------------------------------------x

Plaintiff Benjamin Gamoran brings this derivative action against Neuberger Berman Equity Funds and one of its mutual funds, the Neuberger Berman International Fund; the Fund's investment advisors, Neuberger Berman, LLC, and Neuberger Berman Management, LLC; and several individual defendants, all of whom are or were managers, directors, or officers of these two entities. Plaintiff asserts direct and derivative civil RICO claims; derivative state-law claims for corporate waste, negligence, and breach of fiduciary duty; and direct state-law claims for breach of fiduciary duty and negligence.

The investment advisors and the individual defendants who work for

1

them (the "Advisor defendants") now move to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and the fund entities and the individual defendants who work for them (the "Fund defendants") move to dismiss on the ground that plaintiff has failed to comply with demand requirements of Fed. R. Civ. P. 23.1 and of Delaware law.

The motions to dismiss are granted with leave to amend.

## Background

I) The Complaint

Neuberger Berman Equity Funds is a Delaware statutory trust and a registered investment company under the Investment Company Act of 1940. The Neuberger Berman International Fund is one of the mutual funds the company offers. As noted above, Neuberger Berman, LLC, and Neuberger Berman Management, LLC, advise the Fund defendants and manage the portfolio of the mutual fund at issue. In 2000, plaintiff purchased shares of Neuberger Berman Equity Funds through its International Fund portfolio.

The claims in this case all concern the Fund defendants' purchase of NETeller Plc ("NETeller") and 888 Holdings Plc ("888") stock on the London Stock Exchange in 2005 and 2006.[1] NETeller and 888 are online gambling businesses that, in the period in question, received a substantial share of their revenue from bets placed by United States residents. This business model

---

[1] At the peak of their holdings, the Fund defendants owned $25,422,000 worth of NETeller stock and $18,470,000 worth of 888 stock, but they sold all of their shares in the companies by the end of 2006.

attracted the attention of the federal government and state governments, leading to a string of crackdowns on internet gambling like 888 and NETeller.[2] These enforcement efforts effectively closed off the United States market to these businesses, causing the share price of both NETeller and 888 to plummet through 2006 and 2007.

Plaintiff claims that the Fund defendants' ownership of NETeller and 888 stock violated 18 U.S.C. § 1955(a), which imposes federal felony liability on whoever "conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business." The Fund defendants' allegedly illegal stock ownership constitutes the predicate acts for plaintiff's civil RICO claims under 18 U.S.C. § 1962(c) and (d), as well as the acts underlying plaintiff's state-law claims.

II) Prior Cases Asserting Similar Claims

Plaintiff's counsel has filed several actions in various federal and state courts asserting substantially identical legal claims arising from mutual funds' ownership of the gambling company stock listed on foreign exchanges. Two of these cases are particularly relevant to the current litigation.

A)

On July 16, 2010, Gamoran sued the present defendants in New York State court, alleging derivative state-law claims. The action was removed to this district and assigned to Judge Sand.

The court must mention at this point that to properly plead his derivative

---

[2] In fact, agents of the federal government arrested NETeller's founders in the U.S. Virgin Islands in 2007.

claims under Fed. R. Civ. P. 23.1, plaintiff was required to "state with particularity…any effort by the plaintiff to obtain the desired action from the directors or comparable authority and…the reasons for not obtaining the action or making the effort." This Rule contemplates the traditional state-law requirement that such plaintiffs must, as a "precondition for the [derivative] suit," demonstrate that "the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." Ross v. Bernhard, 396 U.S. 531, 534 (1970).

In the action before Judge Sand, Gamoran had first argued that making a demand would have been futile, but on February 18, 2011, he changed course and sent a demand letter to the Neuberger Berman Equity Funds' board of directors ("the Board"). In recognition of this action, Judge Sand dismissed the case without prejudice on May 11, 2011. See Gamoran v. Neuberger Berman Mgmt., LLC , No. 10 Civ. 6234 (S.D.N.Y. May 11, 2011) (order granting defendants' motion to dismiss). As it turns out, plaintiff's decision to issue a demand on the Board is crucial to the present action and motion.

    B)

Plaintiff's counsel also brought similar claims under the same legal theory in Delaware Chancery Court. Although that action concerned different parties than the present action, it is highly relevant insofar as the Chancery Court held that the plaintiff shareholder could not assert direct claims arising from a personal injury that was indistinguishable from the injury suffered by the corporate defendant. See Hartsel v. Vanguard Group, Inc., Civ. A. No.

4

5394–VCP, 2011 WL 2421003, at *17 (Del. Ch. June 15, 2011), aff'd 2012 WL 171881 (Del. Jan. 19, 2012). Plaintiff now concedes that as a result of Hartsel, his direct claims must be dismissed. Consequently, the present motion now concerns only the derivative claims under RICO and state law.

III) Plaintiff's Demand on the Board

On March 24, 2011, plaintiff's counsel received notice that his demand had been referred to the Board for review. In that notice, the Board also requested additional "details" or "documentation" to assist its investigation. Plaintiff replied on April 22, 2011, referring the Board to the complaints and briefs he had filed. In July 2011, a three-member special demand committee was formed to investigate plaintiff's allegations. Thereafter, there was no communication between plaintiff and the Board until plaintiff filed the present action on August 24, 2011. Then on February 17, 2012, after the present motions were fully briefed, plaintiff's demand was formally refused by the Board, and a letter was issued to him stating the grounds for the Board's decision.

The complaint alleges that it was nonetheless proper to sue prior to the Board's refusal of plaintiff's demand. First, the complaint alleges that plaintiff's claims would have been otherwise time-barred on August 25.[3] Second, the complaint alleges that the Board did not seriously investigate his demand. Third, it alleges that the Board's investigation was not impartial or independent, given that many Board members are potentially subject to serious

---

[3] Although the Board has executed tolling agreements to preserve plaintiff's claims while the internal investigation proceeds, plaintiff has not yet received those agreements.

5

personal liability should plaintiff's legal theory prove correct. Fourth, in his opposition to the Fund defendants' motion to dismiss, plaintiff argues that his derivative RICO claims are not subject to a demand requirement. Lastly, in letters submitted to the court after his demand was refused, plaintiff argues that the board's refusal was wrongful.

IV) The Present Motions

The Fund defendants now move to dismiss pursuant to Rule 23.1, on the ground that plaintiff's has not complied with Delaware's demand requirement. The Advisor defendants, on the other hand, move to dismiss on the merits of plaintiff's claim. They argue that 18 U.S.C. § 1955(a) does not criminalize the mere ownership of stock in a gambling company validly listed on a foreign exchange. Since all of plaintiff's claims are predicated upon the illegality of owning NETeller and 888 stock, the Advisor defendants assert that the complaint must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**Discussion**

As a threshold matter, the court must determine whether it should overlook the issue of demand and proceed straight to the merits. The Advisor defendants, wearied by procedural skirmishes, urge the court to simply address the merits of the case.

The doctrine of demand, however, is central to the present action. The "demand requirement is a recognition of the fundamental precept" that the directors, and not the stockholders, manage affairs of the corporation. <u>Aronson</u>

v. Lewis, 473 A.2d 805, 812 (Del. 1984). Since a derivative claim properly belongs to the corporation, unless demand has been excused or wrongfully refused, a plaintiff shareholder "simply lacks legal managerial power" to bring a derivative claim. See Zapata Corp. v. Maldonado, 430 A.2d 779, 784 (Del. 1981). Thus, the demand requirement goes to plaintiff's power to bring this action, and the court cannot neglect it.

But before addressing whether plaintiff has complied with the demand requirement, the court must determine whether plaintiff's derivative civil RICO claims are even subject to it.

I) Whether RICO Supersedes Delaware's Demand Requirement

RICO "outlaws the use of income derived from a 'pattern of racketeering activity' to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; the acquisition or maintenance of any interest in an enterprise 'through' a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 482-483 (1985) (quoting 18 U.S.C. § 1962). RICO also creates a private cause of action for any "person injured in his business or property by reason of a violation" of the statute. 18 U.S.C. § 1964(c). When a corporation is so injured, its civil RICO action is "a corporate asset...." Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843, 849 (2d Cir. 1986). Thus shareholders asserting such claims must do so derivatively.

7

Because RICO is a federal statute, the requirements governing a derivative RICO suit are matters of federal law. See Burks v. Lasker, 441 U.S. 471, 476-477 (1979). Fed. R. Civ. P. 23.1 is, of course, federal in nature and presumably applicable to a derivative RICO claim. However, while Rule 23.1 "clearly contemplates…the demand requirement…it does not create a demand requirement of any particular dimension." Kamen v. Kemper Fin. Servs., 500 U.S. 90, 96 (1991). Thus the substance of the demand requirement for derivative RICO claims is a matter of federal common law. See Kamen, 500 U.S. at 97. Nonetheless, it is appropriate to look to state law for the content of that demand requirement unless "application of state law would frustrate specific objectives" of RICO. United States v. Kimbell Foods, Inc., 440 U.S. 715, 728 (1979).

Plaintiff argues that due to the "remedial" nature of RICO and the conflicts that the boards of mutual-fund companies potentially face, the court should, as a matter of federal common law, exempt derivative RICO claims from the demand requirements of Rule 23.1 and state law.

But courts in this district have held that, as a general matter, "[d]erivative action requirements…are not inconsistent with the policies underlying RICO." See Nordberg v. Lord, Day & Lord, 107 F.R.D. 692, 700 (S.D.N.Y. 1985). Plaintiff offers no persuasive argument for an exception to this general rule when a civil RICO claim is filed against a mutual fund. It is true that mutual fund companies potentially face conflicts due to their close relationships with their investment advisors. But these potential conflicts do

8

not appear to create a heightened risk of RICO liability, or to magnify the risk that a corporation would pursue a RICO claim in bad faith. The corruption targeted by RICO transcends such structural subtleties. Thus if derivative RICO claims are generally subject to state-law demand requirements, derivative RICO claims against mutual funds should be as well. After all, RICO "may still be used by shareholders as an effective tool against racketeers. The only qualification is that the corporation must decide in the first instance whether to employ that tool." Norberg, 107 F.R.D. at 700. Thus the court holds that plaintiff's allegations are all subject to Delaware's demand requirement.

II) Whether Plaintiff has Fulfilled the Demand Requirement

As noted above, plaintiff's complaint is addressed to outdated circumstances. The complaint alleges that by delaying a decision on plaintiff's demand, defendants tacitly and wrongfully denied that demand. The Board, however, has recently decided to refuse plaintiff's claim outright. Plaintiff has submitted letters regarding the propriety of the Board's refusal, but his arguments all necessarily fall outside the scope of his complaint. Furthermore, plaintiff, for reasons unknown to the court, has resisted the suggestion, made by defendants in letters to the court, that he move to amend his complaint.

The best course of action in this unusual situation is to determine whether plaintiff's original complaint was sufficient to overcome Delaware's demand requirement. If so, the Board's recent actions do not affect this suit. If not, the impact of Board's actions can be the subject of a properly briefed

9

motion. Accordingly, the court turns to plaintiff's original complaint and its sufficiency in light of Fed. R. Civ. P. 23.1 and Delaware's demand requirement.

Under Delaware law,[4] a plaintiff shareholder may not bring a derivative suit on behalf of a corporation unless demand is excused as futile or plaintiff's demand has been wrongfully refused. See Zapata, 430 A.2d at 784. Plaintiff has made a demand on the Board. By doing so, he conceded the independence of the board and cannot later argue that his demand was, in fact, futile due to conflicts in the board. See Stone v. Ritter, 911 A.2d 362, 366–67 (Del. 2006); FLI Deep Marine LLC v. McKim, Civ. A. No. 4138-VCN, 2009 WL 1204363, at *3 (Del. Ch. April 21, 2009). Hence, dismissal is warranted unless plaintiff pleaded "particularized facts showing that there is a reasonable doubt" regarding the propriety of the Board's actions as of the date the complaint was filed. Grimes v. Donald, 673 A.2d 1207, 1217 (Del. 1996).

On this question, the court's "only inquiry is into the board's good faith and the reasonableness of the investigation." Levine v. Smith, 591 A.2d 194, 212 (Del. 1991). Here, the inquiry concerns whether the board conducted its investigation in good faith. In conducting its investigation, the corporate board is entitled to a reasonable amount of time to investigate the demand. See Abbey v. Computer & Communication Technology Corp., 457 A.2d 368, 375 (Del. Ch. 1983). "Whether the board has taken a reasonable amount of time in its investigation is essentially a question of fact." Charal Inv. Co., Inc. v. Rockefeller, Civ. A. No. 14397, 1995 WL 684869, at *3 (Del. Ch. Nov. 7, 1995).

---

[4] The parties agree that Delaware law applies pursuant to New York's choice of law rules and the "internal affairs" doctrine.

The "amount of time needed for a response will vary in direct proportion to the complexity of the technological, quantitative, and legal issues raised by the demand." Allison v. General Motors Corp. 604 F.Supp. 1106, 1117-8 (D.Del. 1985). Moreover, it is reasonable to defer a response to a demand to focus on pending litigation related to the demand. See Piven v. Ryan, No. 05 CV 4619, 2006 WL 756043, a *3 (N.D. Ill. Mar. 23, 2006).

Plaintiff sent his demand to the board on February 18, 2011, while his prior derivative litigation was pending before Judge Sand. That litigation was not dismissed until May 11, 2011. In the meantime, plaintiff was notified that the board had received its complaint, and shortly thereafter the board formed a special demand committee to investigate the plaintiff's allegations. The board was not required to continuously inform plaintiff of developments in the investigation during that period. See Boeing Co. v. Shrontz, Civ. A. No. 11273, 1994 WL 30542, at *2 (Del.Ch. 1994) (upholding a board's decision to refrain from meeting with a shareholder plaintiff concerning a demand).

Plaintiff then filed the present action on August 24, 2011, a mere three-and-a-half months after his prior suit was dismissed. Given the novelty and complexity of the issues in this case, the committee would have struggled to conclude its investigation before that date. In these circumstances, the mere fact that the board had not taken action on plaintiff's demand before the filing of the complaint in the instant action does not give rise to a reasonable doubt as to the good faith of the board's investigation.

Plaintiff also alleges that he filed this action so that his claims would not be time-barred. However, the court cannot dispense with the demand requirement because plaintiff chose a perilously late date to make a demand on the board. Moreover, any insinuation that the board delayed in order to extinguish plaintiff's claims is undercut by the tolling agreements the board has executed.[5]

The complaint must be judged on the basis of the allegations therein, not on the basis of circumstances that occurred thereafter. The court holds that plaintiff did not comply with Delaware's demand requirement and Fed. R. Civ. P. 23.1. In these circumstances, "the proper procedure is to dismiss the derivative complaint without prejudice...." FLI Deep Marine, 2009 WL 1204363, at *4. However, plaintiff is given leave to file an amended complaint taking into account the subsequent action of the Board and asserting, if he can, a cause of action based on the full set of circumstances. The court is compelled to note that the present motion might have been rendered unnecessary if plaintiff has accepted defendants' suggestion that he move to amend the complaint.

In summary, the motion to dismiss plaintiff's direct claims is granted, as plaintiff has conceded should be done. The motion to dismiss his derivative claims is granted with leave to replead.

## Conclusion

For the foregoing reasons, the complaint should be dismissed. This opinion resolves motions number 30 and 33 on the docket.

---

[5] Although plaintiff has not seen these agreements and has questions as to their scope, he does not dispute their existence.

12

Dated: New York, New York
       June 12, 2012

/s/ Thomas P. Griesa
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/12/12

13