Joanna A. Diakos (JD 7269)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (tel)
(212) 536-3901 (fax)
E-mail: joanna.diakos@klgates.com

*Attorneys for Defendants John Cannon, Faith Colish,*
*C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf,*
*Edward I. O'Brien, William E. Rulon, Cornelius T. Ryan,*
*Tom D. Seip, Candace L. Straight, Peter P. Trapp and*
*Nominal Defendant Neuberger Berman Equity Funds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BENJAMIN M. GAMORAN, derivatively on behalf
of the nominal defendant with respect to its
series mutual fund, the Neuberger Berman
International Fund,

                Plaintiff,

    - against -

NEUBERGER BERMAN LLC, et al.,

                Defendants,

    - and -

NEUBERGER BERMAN EQUITY FUNDS d/b/a/
NEUBERGER BERMAN INTERNATIONAL FUND,

                Nominal
                Defendant.

---

11 Civ. 7957 (TPG) (KNF)

ECF Case

**INDEPENDENT TRUSTEES' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
AMENDED VERIFIED DERIVATIVE COMPLAINT**

**Table of Contents**

Table of Contents ..................................................................................................... i

Glossary of Defined Terms ...................................................................................... iii

Table of Authorities ................................................................................................. v

PRELIMINARY STATEMENT .............................................................................. 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ............................................................................................................ 9

I.      PLAINTIFF HAS NOT OVERCOME THE PRESUMPTIONS OF THE
        BUSINESS JUDGMENT RULE .................................................................. 9

        A.      Plaintiff's Allegations Regarding the Board's Supposed Conflicts Are
                Irrelevant ......................................................................................... 10

        B.      Plaintiff's Allegations Regarding the Process by Which the Board
                Conducted its Review of Plaintiff's Demand Do Not Overcome the
                Presumption of the Business Judgment Rule ................................... 11

                1.      The Board's Decision to Delegate Certain Tasks is Protected by the
                        Business Judgment Rule ....................................................... 11

                2.      The Board Was Not Obligated to Communicate with Plaintiff
                        More Frequently or to Allow Him to Control the Investigation ......... 13

                3.      The Board Was Not Obligated to Furnish Plaintiff Copies of the
                        Tolling Agreements ............................................................... 14

        C.      Plaintiff's Challenges to the Substance of the Board's Conclusion Do
                Not Overcome the Presumption of the Business Judgment Rule ......... 15

II.     PLAINTIFF HAS FAILED TO ALLEGE THAT THE BOARD LACKS
        INDEPENDENCE ...................................................................................... 17

        A.      Plaintiff Has Not Alleged Particularized Facts Showing that the
                Independent Trustees and SDC Members Were Interested ................... 17

        B.      Plaintiffs Has Not Alleged Particularized Facts Showing A Substantial
                Likelihood of Liability ........................................................................ 20

III.   PLAINTIFF'S NEW CLAIM SHOULD BE DISMISSED FOR FAILURE TO
       MAKE PRE-SUIT DEMAND.................................................................................20

IV.    THE CLAIMS AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS
       ALSO FAIL TO STATE A CLAIM.......................................................................20

V.     PLAINTIFF'S CONDUCT OF THE LITIGATION SHOWS HE CANNOT
       FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE
       FUND'S SHAREHOLDERS.................................................................................23

CONCLUSION....................................................................................................................25

**Glossary of Defined Terms**

| | |
|---|---|
| 888 | 888 Holdings PLC |
| Complaint or Compl. | Amended Verified Derivative Complaint, <u>Gamoran v. Neuberger Berman Management LLC</u>, No. 11 Civ. 7957 (TPG) (S.D.N.Y. filed July 16, 2012), ECF No. 50 |
| Demand Refused Letter | Letter from Daniel Bookin to Benjamin M. Gamoran, dated March 16, 2012 (Exhibit A to Kornobis Declaration) |
| Fund | Nominal defendant Neuberger Berman Equity Funds d/b/a Neuberger Berman International Fund |
| <u>Gamoran I</u> | <u>Gamoran v. Neuberger Berman Management LLC</u>, No. 08 Civ. 10807 (DLC) (S.D.N.Y.) |
| <u>Gamoran II</u> | <u>Gamoran v. Neuberger Berman Management LLC</u>, No. 10 Civ. 6234 (LBS) (S.D.N.Y.) |
| <u>Gamoran III</u> | Proceeding involving the Verified Derivative and Class Action Complaint in <u>Gamoran v. Neuberger Berman LLC</u>, No. 11 Civ. 7957 (TPG) (S.D.N.Y.) |
| <u>Gamoran IV</u> | Current proceeding involving the Amended Verified Derivative Complaint, <u>Gamoran v. Neuberger Berman LLC</u>, No. 11 Civ. 7957 (TPG) (S.D.N.Y.) |
| ICA | Investment Company Act of 1940, 15 U.S.C. §§80a-1 et seq. |
| Independent Trustee Defendants | Former independent trustee of the Fund William E. Rulon, and current independent trustees of the Fund John Cannon, Faith Colish, C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf, Edward I. O'Brien, Cornelius T. Ryan, Tom D. Seip, Candace L. Straight, and Peter P. Trapp |

| Kornobis Declaration or Kornobis Decl. | Declaration of Theodore L. Kornobis in Support of Independent Trustees' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Verified Derivative Complaint, dated August 24, 2012 and filed herewith |
|---|---|
| Management Agreement | Management Agreement, dated November 3, 2003 between the Fund and Neuberger Berman Management LLC (Exhibit E to Kornobis Declaration) |
| NETeller | NETeller Plc |
| Neuberger Defendants | Defendants Neuberger Berman, LLC, Neuberger Berman Management LLC, Benjamin Segal, Peter E. Sundman, and Jack L. Rivkin |
| RICO | Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. |
| SDC | The Special Demand Committee of the Fund's Board of Trustees |
| SDC Members | Martha Clark Goss, George Morriss, and Michael Knetter |
| Terris Declaration or Terris Decl. | Declaration of Nicholas G. Terris in Support of Independent Trustees' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Verified Derivative and Class Action Complaint, Dec. 8, 2012, ECF No. 31 |
| Trust | Nominal Defendant Neuberger Berman Equity Funds |
| Trust Instrument | Amended and Restated Trust Instrument, dated June 24, 2009 (Exhibit B to Kornobis Declaration) |

**Table of Authorities**

Page

Abbey v. Computer & Commc'n Tech. Corp.,
457 A.2d 368 (Del. Ch. 1983)..........................................................12

Amron v. Morgan Stanley Inv. Advisors, Inc.,
464 F.3d 338 (2d Cir. 2006).............................................................19

Aronson v. Lewis,
473 A.2d 805 (Del. 1984) ...............................................1, 9, 17, 19

Ashcroft v. Iqbal,
556 U.S. 662 (2009).........................................................................2, 21

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.
493 F.3d 87 (2d Cir. 2007)................................................................2

Boeing Co. v. Shrontz,
Civ. A. No. 11273, 1994 WL 30542 (Del. Ch. 1994)...........................13, 14, 15

In re Boston Scientific Corp. S'holders Litig.,
No. 02 Civ. 247, 2007 WL 1696995 (S.D.N.Y. June 13, 2007)................13, 15

Boyce v. AIM Mgmt. Grp., Inc.,
No. H-04-2587, 2006 WL 4671324 (S.D. Tex. Sept. 29, 2006)…...………….. ...............18

Braddock v. Zimmerman,
906 A.2d 776 (Del. 2006)………...............................................................12

Brehm v. Eisner,
746 A.2d 244 (Del. 2000)...……………………………………………...1, 17

Brickman v. Tyco Toys, Inc.,
722 F. Supp. 1054 (S.D.N.Y. 1989)....................................................22

Burks v. Lasker,
441 U.S. 471 (1979).........................................................................16

In re Caremark Int'l, Inc. Deriv. Litig.,
698 A.2d 959 (Del. Ch. 1996).........................................................21

Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.,
Civ A. No. 13950, 1997 WL 305829 (Del. Ch. May 30, 1997) ......................16

Chambers v. Time Warner Inc.,
282 F.3d 147 (2d Cir. 2002)............................................................4

In re Citigroup Inc. S'holder Deriv. Litig.,
    964 A.2d 106 (Del. Ch. 2009) ........................................................................21

Desimone v. Barrows,
    924 A.2d 908 (Del. Ch. 2007) ..................................................................21, 22

FLI Deep Marine LLC v. McKim,
    Civ. A. No. 4138-VCN, 2009 WL 1204363 (Del. Ch. Apr. 21, 2009) ................11

Gagliardi v. Trifoods Int'l, Inc.,
    683 A.2d 1049 (Del. Ch. 1996) ......................................................................22

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996) ................................................................1, 9, 20, 24

Halebian v. Berv,
    644 F.3d 122 (2d Cir. 2011) ............................................................................4

Halpert Enters. Inc. v. Harrison,
    No. 06 Civ 2331, 2007 WL 486561 (S.D.N.Y. Feb. 14, 2007),
    aff'd, 2008 WL 4585466 ............................................................................13, 14

Halpert Enters. Inc. v. Harrison,
    No. 07-1144-cv, 2008 WL 4585466 (2d Cir. Oct. 15, 2008) ............................9, 14

Hartsel v. Vanguard Grp.,
    Civ. A. No. 5394, 2011 WL 2421003 (Del. Ch. June 15, 2011),
    aff'd, 38 A.3d 1254 (Del. 2012) ........................................................9, 17, 18, 19

Jones v. Harris,
    --- U.S. ---, 130 S. Ct. 1418 (2010) ..............................................................18, 21

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991) ........................................................................................11

Krantz v. Prudential Inv. Fund Mgmt. LLC,
    305 F.3d 140 (3d Cir. 2002) ..........................................................................18

In re Kauffman Mut. Fund Actions,
    479 F.2d 257 (1st Cir. 1973) ............................................................................9

La. Mun. Police Emps.' Ret. Sys. v. Pyott,
    45 A.3d 313 (Del. Ch. 2012) ..........................................................................24

Levine v. Smith,
    591 A.2d 194 (Del. 1991) ........................................................................9, 10, 14

Levner v. Saud,
    903 F. Supp. 452 (S.D.N.Y. 1994), aff'd, 61 F.3d 8 (2d Cir. 1995) ....................................10

Litt v. Wycoff,
    Civ. A. No. 19083-NC, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003) ..............................22

In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.,
    773 F. Supp. 2d 330 (S.D.N.Y. 2011).............................................................................16, 20

Migdal v. Rowe Price-Fleming Int'l, Inc.,
    248 F.3d 321 (4th Cir. 2001) ..............................................................................................19

Mt. Moriah Cemetery v. Mortiz,
    No. 11431, 1991 WL 50149 (Del. 1990) ......................................................................12, 13

In re Mut. Funds Inv. Litig.,
    519 F. Supp. 2d 580 (D. Md. 2007) .....................................................................................2

Panter v. Marshall Field & Co.,
    646 F.2d 271 (7th Cir. 1981) ..............................................................................................17

Protas v. Cavanaugh,
    Civ. A. No. 6555-VCG, 2012 WL 1580969 (Del. Ch. May 4, 2012)....................................9

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ...................................................................................................11

RCM Sec. Fund, Inc. v. Stanton,
    928 F.2d 1318 (2d Cir. 1991) ..............................................................................................9

Rosengarten v. Int'l Telephone & Telegraph Corp.,
    466 F. Supp. 817 (S.D.N.Y. 1979)......................................................................................17

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000)...................................................................................................2

Seidl v. Am. Century Cos.,
    713 F. Supp. 2d 249 (S.D.N.Y. 2010),
    aff'd, 427 Fed. Appx. 35 (2d Cir. June 17, 2011).........................................................19, 20

Seminaris v. Landa,
    662 A.2d 1350 (Del. Ch. 1995)...........................................................................................12

Scattered Corp. v. Chi. Stock Exch.,
    701 A.2d 70 (Del. 1997) ...................................................................................4, 11, 13, 15

Smith v. Ayers,
    977 F.2d 946 (5th Cir. 1992) ..............................................................................................23

Spiegel v. Buntrock,
    571 A.2d 767 (Del. 1990) ...................................................................9, 11, 12, 13

Spirt v. Bechtel,
    232 F.2d 241 (2d Cir. 1956) .............................................................................21

Stone v. Ritter,
    911 A.2d 362 (Del. 2006) .................................................................................21

Stoner v. Walsh,
    772 F. Supp. 790 (S.D.N.Y. 1991)...................................................................15

Stotland v. GAF Corp.,
    469 A.2d 421 (Del. 1983) .................................................................................11

Wood v. Baum,
    953 A.2d 136 (Del. 2008) .................................................................................22

Zapata Corp. v. Maldonado,
    430 A.2d 779 (Del. 1981) ........................................................................1, 12, 16

This Memorandum of Law is submitted by Nominal Defendant Neuberger Berman Equity Funds, one of its series, the Neuberger Berman International Fund, and by the Independent Trustee Defendants.

## PRELIMINARY STATEMENT

After three years and multiple rounds of unnecessary, expensive, and time-consuming litigation, the Trust's board of directors has considered plaintiff's demand. Based on careful consideration, the board concluded that it was in the Fund's best interests to refuse the demand. This decision is fully protected by the business judgment rule.[1] Unless plaintiff meets the extraordinary pleading burden imposed by Delaware substantive law and Fed. R. Civ. P. 23.1, he "lacks the managerial power to continue the derivative action, since that power is terminated by the refusal."[2] But the current complaint's allegations as to the board's independence are irrelevant in a demand refused case (which this is) and have in any event been rejected by numerous courts. Further, plaintiff's conclusory assertions relating to the procedure and substance of the board's investigation come nowhere close to overcoming the business judgment rule.

Plaintiff's new complaint inexplicably adds a previously unasserted breach of contract claim (Count IV) against the Neuberger Defendants. Plaintiff's failure to make demand with respect to this claim compels its dismissal. Grimes v. Donald, 673 A.2d 1207, 1219 (Del. 1996), overruled on other grounds by Brehm, 746 A.2d at 253.

---

[1]     Aronson v. Lewis, 473 A.2d 805, 813 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000).

[2]     Id. (citing Zapata Corp. v. Maldonado, 430 A.2d 779, 784 & n.10 (Del. 1981)).

Although the Court need not reach the issue, plaintiff's conclusory allegations against the Independent Trustee Defendants also fail to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Finally, plaintiff's utter disregard for the burden and expense he causes the Fund and its other shareholders with baseless and unnecessary litigation demonstrates that he will not fairly and adequately represent shareholders within the meaning of Rule 23.1.  Therefore, neither plaintiff nor his counsel should be permitted to further pursue any related claim.

For these reasons, the Complaint should be dismissed in its entirety with prejudice.

## BACKGROUND[3]

The Trust is a statutory trust organized under Delaware law and a registered investment company under the Investment Company Act of 1940.  Compl. ¶ 13.  The Fund is one of several funds or "series" offered by the Trust.  Id. at ¶ 14.  See generally In re Mut. Funds Inv. Litig., 519 F. Supp. 2d 580, 588-89 & n.11 (D. Md. 2007) (describing multi-series investment company structure).

This is plaintiff's fourth complaint predicated on the same theory: that the Fund was injured because, in 2005 and 2006, it invested in London Stock Exchange-traded shares of two companies – 888 and NETeller – that offered or facilitated online gambling to U.S. players. These passive investments are said to be illegal under federal and state law and hence *ultra vires.*

---

[3]     On a Rule 12(b)(6) motion, a court must accept well-pled allegations as true, but ignore conclusory allegations and legal conclusions disguised as facts.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Also, courts may examine "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); see also Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000). Accordingly, this memorandum refers to materials appended to the December 8, 2011 Declaration of Nicholas Terris filed with the Independent Trustee Defendants Motion to Dismiss the Original Complaint, ECF No. 31 (hereinafter "Terris Decl."), and the Declaration of Theodore L. Kornobis, filed herewith (hereinafter "Kornobis Decl.").

**<u>Gamoran I</u>**

Plaintiff's first attempt to bring suit on this theory, which asserted both purported derivative and class claims, was voluntarily dismissed in May 2009.  <u>See</u> <u>Gamoran v. Neuberger Berman Mgmt. LLC</u>, No. 08 Civ. 10807 (DLC) (S.D.N.Y.).

**<u>Gamoran II</u> and Plaintiff's Demand**

On July 16, 2010, plaintiff brought his second suit, <u>Gamoran II</u>, this time in New York State court.  Compl. ¶ 116.  Defendants removed the case to this Court, and Judge Sand denied plaintiff's motion to remand.  <u>See</u> <u>Gamoran II</u>, 2010 WL 4537056 (S.D.N.Y. Nov. 8, 2010).  Gamoran pleaded that making demand would have been futile, <u>see</u> Complaint at ¶¶ 93-121, <u>Gamoran II</u>, ECF No. 1.  But on February 18, 2011, he changed course and sent a demand letter to the Trust's board.  Compl. ¶ 117; Terris Decl. Ex. A.  The letter demanded that the Fund pursue "the claims alleged in the [<u>Gamoran II</u>] Complaint."  <u>Id.</u>  Recognizing that a mid-suit demand concedes that demand was not futile under Delaware law, on May 11, 2011, the Court dismissed <u>Gamoran II</u> over plaintiff's objection.  <u>See</u> Order, <u>Gamoran II</u>, ECF No. 41.

Meanwhile, on March 24, 2011, as briefing on the motions to dismiss was underway, counsel for the Independent Trustee Defendants notified plaintiff's counsel that the demand had been referred to the board for its consideration and requested that plaintiff "submit any additional details, analysis, or documentation regarding the subject matter . . . that would assist the Board in reviewing the Demand."  Compl. ¶ 118; Terris Decl. Ex. B.  Approximately one month later, on April 22, 2011, plaintiff's counsel sent a letter attaching copies of Mr. Gamoran's stock account information, referring the board to plaintiff's prior pleadings for additional information as to his demand, and requesting that plaintiff be informed who would conduct the investigation.  Compl.

¶ 119; Terris Decl. Ex. C.  Plaintiff's counsel made no further relevant communication prior to filing his first complaint in the present lawsuit.

**<u>Gamoran III</u> and Plaintiff's Premature Lawsuit**

On August 24, 2011, plaintiff filed his first complaint in the present case in the United States District Court for the District of Delaware.  It was subsequently transferred to this Court pursuant to defendants' motion.  <u>See</u> Order, Nov. 4, 2011, ECF No. 20.

Defendants responded that the suit was premature because the board was reviewing plaintiff's demand, as communicated to plaintiff's counsel in letters dated August 30 and September 9, 2011.  Terris Decl. Exs. D and E.  The board had appointed a Special Demand Committee, which began investigating plaintiff's demand in July 2011 after careful efforts were made at selecting independent counsel.  Order at 5, July 12, 2012, ECF No. 49; Terris Decl. Ex. E.  The board had also earlier directed that tolling agreements be executed.  <u>See</u> Terris Decl. at ¶ 3 and Ex. E.  In light of these facts, the board requested that Gamoran withdraw his lawsuit pending the conclusion of the board's review of his demand.  Gamoran refused to do so on September 19, 2011.  <u>See</u> Terris Decl. Ex. G.  Defendants therefore moved to dismiss.

**The Special Demand Committee's Investigation and Recommendation**

The SDC consisted of Martha Clark Goss, George Morriss, and Michael Knetter. Kornobis Decl. Ex. A (Mar. 16, 2012 Letter to Gamoran);[4] Compl. ¶ 130.  All three SDC Members joined the board *after* the Fund had sold all of the 888 and NETeller holdings. Kornobis Decl. Ex. A at 2.

---

[4]     Plaintiff relies on the Demand Refused Letter.  <u>See</u> Compl. ¶¶ 129-30, 136.  As such, it is deemed incorporated by reference into the Complaint.  <u>See</u> <u>Halebian v. Berv</u>, 644 F.3d 122, 132 n.10 (2d Cir. 2011); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>see also</u> <u>Scattered Corp. v. Chi. Stock Exch.</u>, 701 A.2d 70, 75 n.24 (Del. 1997) (stating that court "must presume [statement in demand refused letter] to be true absent a particularized allegation rebutting [the] statement"), <u>overruled on other grounds by</u> <u>Brehm</u>, 746 A.2d at 253.

The SDC was charged with investigating, reviewing, and analyzing the facts, allegations, and circumstances that were the subject of the plaintiff's demand, as well as any related facts, allegations, and circumstances.  Id. at 1; Compl. ¶ 127.  The SDC retained Daniel Bookin of O'Melveny & Myers ("O'Melveny") to serve as independent counsel for the committee. Kornobis Decl. Ex. A at 2.  Neither Mr. Bookin nor O'Melveny had any pre-existing relationship with any of the defendants in any of Gamoran's lawsuits, the Trust, the Fund, or Neuberger Berman Management LLC.  Id.

Between July 2011 and February 2012, the SDC, with assistance from O'Melveny, conducted a thorough investigation of the claims asserted in plaintiff's demand.  Id.  Among other things, at the SDC's direction, O'Melveny collected and processed approximately 2.4 million pages of electronic data, searched and reviewed over 112,000 documents, conducted 15 substantive interviews, and performed extensive legal research.  Id.  O'Melveny also reviewed the pleadings and other filings made in Gamoran I-III, and related lawsuits filed by counsel for plaintiff.  Id.  The SDC also extended the tolling agreement that was in place with the named defendants.  Id. at 2-3.

The SDC held seven meetings with O'Melveny in which the attendees discussed the results of the legal research, document review, and witness interviews.  Id. at 3.  Ms. Goss, the SDC chair, also communicated frequently with O'Melveny attorneys.  Id.

After thorough consideration and discussion, on February 20, 2012, the SDC determined that the prosecution of neither the claims asserted in plaintiff's demand letter nor other related claims that Plaintiff had asserted in the prematurely filed Gamoran III complaint would be in the interests of the Fund or the shareholders.  Id.  In making this decision, the SDC considered, among other things, the merits of the claims, the likely disruption to the Fund and Trust that

would result from such a suit going forward, and such a suit's net financial impact on the Fund.

Id.  The SDC determined, among other things:

- the evidence does not support that the portfolio manager and analyst responsible for the decisions to invest in 888 and NETeller knew or should have known that those investments violated 18 U.S.C. § 1955, and in fact they believed the companies' business activities were legal under the law as it existed at the time of the subject investments;

- the responsible portfolio manager and analyst engaged in an extensive and well-researched decision-making process before making the investments, including qualitative and quantitative research, company due diligence, and legislative investigation and tracking;

- the 888 and NETeller investments were not unduly risky given the information available at the time, the fact that the investments each amounted to only 1-2% of the Fund's total portfolio, and the fact that large numbers of peer mutual funds were invested in the same or similar companies during the relevant period;

- the Trustees and the investment adviser's executives exercised proper oversight;

- the Trustees were not aware of the specific investments at issue until after they were liquidated, and had in place adequate processes to monitor the Fund's investment performance;

- there was no evidence of self-dealing or bad faith because none of the defendants personally owned stock in either 888 or NETeller and there was no evidence of recklessness or a conscious disregard of the law; and

- the passage of new anti-gambling legislation caused the Fund's losses – not any alleged violation of § 1955.

Id. at 3-5.  In addition to the lack of evidence supporting plaintiff's claims, the SDC also determined that there were other business reasons not to pursue the claims, such as the existence of exculpatory and indemnification provisions in the Trust's Declaration of Trust, coverage issues under D&O insurance policies, and the likelihood that the suit would impinge upon the ability of individuals valuable to the continued management and success of the Fund to carry out their duties effectively.  Id. at 5.

The SDC described its investigation and presented in detail its analysis and reasons for its

recommendation to the board on February 21, 2012.  After deliberation and discussion, the board

(with non-independent members recused) adopted the SDC's recommendation.  On March 16,

2012, the board formally notified plaintiff that it refused his demand, and O'Melveny furnished

plaintiff with the Demand Refused Letter summarizing the investigation and reasons for refusing

demand.  Id. at 5.

**Plaintiff's Current Complaint ("Gamoran IV")**

The Court granted defendants' motion to dismiss on June 12, 2012.  Order at 12, ECF

No. 49.  Plaintiff filed the instant Complaint on July 16, 2012, asserting the five derivative

counts from his Gamoran III complaint – Counts I, II, III, V, and VI for breach of fiduciary duty,

negligence, waste, and two provisions of civil RICO, respectively – and one never-before raised

claim (Count IV) against the Neuberger Defendants for breach of their investment advisory

contract.

The Complaint's allegations regarding the board's refusal of demand fall into three

categories.

First, plaintiff challenges the independence of the board, asserting that it is "interested in

blocking the Fund from vindicating its rights," Compl. ¶ 127, that two-thirds of the board

members are "interested persons antagonistic to the pursuit of the claims" because they are

defendants or officers of defendants, id. at ¶ 128, that the SDC Members were "appointed to his

or her position" by the investment adviser and receive substantial income from their service on

the boards for funds within the Trust, id. at ¶ 131, that the board members "face substantial

conflicts of interest" in that they are exposed to civil and criminal liability for causing or

permitting the investments, id. at ¶¶ 137-38, and that the structure of the Trust creates conflicts

for the board because recovery in this lawsuit could allegedly harm other funds the trustees serve, id. at ¶¶ 137, 139, 145-48.

Second, plaintiff criticizes the procedures by which the board made its decision.  Plaintiff observes that the SDC "was not given final authority to determine [his] demand."  Id. at ¶ 129.  Instead, the SDC made a recommendation to the board, which retained (and exercised) final authority to act on plaintiff's demand.  Id.  Plaintiff further alleges that the SDC's investigation was conducted "in complete secrecy," id. at ¶ 133, that plaintiff and his counsel were barred from participating or otherwise being informed, id. at ¶¶ 133-35, that the defendant denied plaintiff access to the SDC's investigation files, id. at ¶ 134, and that the SDC Members did not participate in witness interviews and instead delegated that task to counsel, id. at ¶ 135.  Plaintiff also repeats assertions from earlier complaints that the board declined to furnish him copies of tolling agreements the board procured in order to facilitate its investigation, id. at ¶¶ 121-125, and allegedly did not communicate frequently enough with plaintiff's counsel.  Id. at ¶¶ 118-120.

Third, the Complaint includes a conclusory paragraph challenging the premises of the board's decision against bringing suit.  Plaintiff asserts that the decision was based "on incorrect legal assumptions and erroneous legal principles contrary to public policy" and that, despite finding that the defendants were aware of issues concerning the legality of the investments and met with executives from those companies, the SDC "whitewashed the incontrovertible facts by making the impermissible legal conclusion that asset managers may weigh the risks associated with seeking to profit from criminal activity."  Id. at ¶ 136.  Further, plaintiff asserts that the SDC based its recommendation in part on two "purely legal conclusions."  Id.

## ARGUMENT

### I.   PLAINTIFF HAS NOT OVERCOME THE PRESUMPTIONS OF THE BUSINESS JUDGMENT RULE

"The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation" and is "part of the responsibility of the board of directors."  Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990).[5] Accordingly, absent extraordinary circumstances, a single shareholder cannot institute an action on behalf of a corporation.  Instead, where, as here a shareholder has made demand, a board's decision to reject demand is entitled to the benefit of the business judgment rule.[6]  The business judgment rule presumes that the board made its decision "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  Spiegel, 571 A.2d at 774.  The business judgment rule shields the board's decision "unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation."  RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991).

"[F]ew, if any, plaintiffs surmount this obstacle."  Id.  And any attempts to do so are subject to the "exceptional" pleading requirements of Fed. R. Civ. P. 23.1.  In re Kauffman Mut.

---

[5]     See also Levine v. Smith, 591 A.2d 194, 200 (Del. 1991), overruled in part on other grounds by Brehm, 746 A.2d at 253; Grimes, 673 A.2d at 1215.  The standards used to determine demand issues "when a plaintiff sues on behalf of a statutory trust are the same as those applied to derivative suits by corporate stockholders."  Protas v. Cavanaugh, Civ. A. No. 6555-VCG, 2012 WL 1580969, at *8 (Del. Ch. May 4, 2012); Hartsel v. Vanguard Grp., Civ. A. No. 5394, 2011 WL 2421003, at *20 (Del. Ch. June 15, 2011) (similar), aff'd, 38 A.3d 1254 (Del. 2012).

[6]     See, e.g., Levine, 591 A.2d at 209; Aronson, 473 A.2d at 813; Halpert Enters., Inc. v. Harrison, No. 07-1144-cv, 2008 WL 4585466, at *1 (2d Cir. Oct. 15, 2008).

- 9 -

Fund Actions, 479 F.2d 257, 263 (1st Cir. 1973) ("[T]he stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case.").[7]

Plaintiff's meager allegations fall far short of meeting these strict standards.

### A.     Plaintiff's Allegations Regarding the Board's Supposed Conflicts Are Irrelevant

Many of the plaintiff's allegations have nothing to do with how the board actually conducted its review of plaintiff's demand, but appear to allege that (due to supposed conflicts of interest) the board was incapable of reviewing plaintiff's demand in the first place.  See Compl. ¶¶ 127-28, 131, 137-39, 145-46, 148.

As demonstrated below in Section II, these allegations are meritless on their own terms. More fundamentally, they are legally irrelevant because the fact that plaintiff made demand precludes him from alleging that the board was too conflicted to consider it.  As the Court already explained in dismissing plaintiff's third complaint:

> Plaintiff has made a demand on the Board.  By doing so, he conceded the independence of the board and cannot later argue that his demand was, in fact, futile, due to conflicts in the board. . . .
>
> [T]he court's "only inquiry is into the board's good faith and the reasonableness of the investigation."  Levine v. Smith, 591 A.2d 194, 212 (Del. 1991).

Order at 10, ECF No. 49 (citations omitted).

The Court's ruling was clearly correct.  For decades, the Delaware courts have consistently warned shareholders that when they make a demand, they have "conclusively conceded the independence of the Board, and are precluded from [] arguing that demand should

---

[7]      See also Levner v. Saud, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), aff'd, 61 F.3d 8 (2d Cir. 1995) ("[A] plaintiff's pleading burden under Rule 23.1 is . . . more onerous" than under ordinary pleading standards).

be excused because the directors are conflicted." FLI Deep Marine LLC v. McKim, Civ. A. No.

4138-VCN, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009).[8]

**B.    Plaintiff's Allegations Regarding the Process by Which the Board Conducted Its Review of Plaintiff's Demand Do Not Overcome the Presumption of the Business Judgment Rule**

Plaintiff's challenges to the process employed by the board are also meritless.  "To allow

Plaintiffs the ability to dictate the manner in which the Board, or its special committee,

investigates their allegations would be an unwarranted intrusion upon the authority [Delaware]

law confers on a board of directors to manage the business and affairs of the corporation." FLI

Deep Marine LLC, 2009 WL 1204363, at *4 (citation and internal quotation marks omitted).

As detailed above in the Background section, the demand review process overseen by the

board was extremely thorough and included: the hiring of entirely separate and independent legal

counsel, 15 substantive interviews, significant legal research, and review of a vast quantity of

relevant documents and other information.  In an effort to challenge that careful process, plaintiff

offers a handful of irrelevant allegations.

**1.    The Board's Decision to Delegate Certain Tasks is Protected by the Business Judgment Rule**

Plaintiff alleges that, while the SDC investigated the facts and made a recommendation to

the board, the SDC did not have final authority to determine plaintiff's demand, which authority

was retained and ultimately exercised after due consideration by the board.  Compl. ¶ 129.

---

[8]      See also Spiegel, 571 A.2d at 775; Rales v. Blasband, 634 A.2d 927, 935 n.12 (Del. 1993) ("[T]he stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond."). Stotland v. GAF Corp., 469 A.2d 421, 422 (Del. 1983); Scattered Corp., 701 A.2d at 75 ("the Court looks only to good faith and the reasonableness of the investigation"); Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90, 105 (1991) ("[R]eceipt of [a] demand makes it crystal clear to the directors of a Delaware corporation that the decision whether to commit the corporation to litigation lies solely in their discretion.").

This argument is irrelevant and seems to be based on plaintiff confusing "demand required" cases with "demand excused" cases.

Even in a case where demand is excused because a majority of the board is interested or otherwise incapable of responding to the demand (a "demand excused" case), the board may appoint an independent special litigation committee with full power to respond to the demand. See Zapata Corp., 430 A.2d at 788.  In such cases only, a board must delegate complete authority to the special committee in order to secure dismissal of a shareholder derivative action. Otherwise, consideration of the plaintiff's demand would be subject to the control of a board that was interested and legally incapable of considering the demand.

But, by making demand, plaintiff conceded as a matter of law that the board is disinterested and capable of responding to the demand – plaintiff conceded that this is not a "demand excused" case and is instead a "demand required" case.  Thus, the board of trustees unquestionably has plenary authority to respond to plaintiff's derivative lawsuit in the manner it deems appropriate.  See Braddock v. Zimmerman, 906 A.2d 776, 785-86 (Del. 2006).  The board therefore was entitled to decide issues relating to the litigation itself or delegate all or some of its responsibility to an independent committee, and the decision regarding the litigation is evaluated under the business judgment rule.[9]

At the same time that he complains that the board did not delegate enough authority, plaintiff also apparently alleges that the board should have been more involved.  Plaintiff seems

---

[9]      See Seminaris v. Landa, 662 A.2d 1350, 1352-53 (Del. Ch. 1995); Spiegel, 571 A.2d at 776-77; Mt. Moriah Cemetery v. Mortiz, No. 11431, 1991 WL 50149, at *2-3 (Del. Ch. Apr. 4, 1991) (business judgment rule applied where special committee investigated demand and board ultimately adopted its recommendation), aff'd 599 A.2d 413.  Plaintiff has previously tried to rely upon Abbey v. Computer & Communications Technology Corp., 457 A.2d 368 (Del. Ch. 1983).  But Abbey was a unique demand excused case and is of no help to plaintiff.  The board in Abbey "conceded its disqualification" and appointed an entirely new director to whom the board delegated complete authority to respond to the demand in that case.  See id.  The court concluded that "the board was satisfied that the situation was one in which it should step aside and avail itself of the procedure authorized under Zapata in cases of board disqualification."  Id.  There are no remotely similar circumstances here.

to suggest that the SDC Members should have participated in witness interviews rather than delegating that responsibility to counsel and exercising oversight.  See Compl. ¶ 135.  This suggestion is baffling, as it is commonplace and manifestly appropriate to delegate such tasks to unquestionably independent and qualified counsel.[10]

**2.      The Board Was Not Obligated to Communicate with Plaintiff More Frequently or to Allow Him to Control or Access the Investigation**

Plaintiff also restates allegations from earlier pleadings that the board and/or the SDC did not communicate with him frequently enough and that he was not sufficiently involved in the SDC investigation.[11]

The Court has already recognized that the board "was not required to continuously inform plaintiff of developments in the investigation," Order at 11, ECF No. 49, and that a board need not meet with a shareholder plaintiff concerning a demand.  Id. (citing Boeing Co. v. Shrontz, Civ. A. No. 11273, 1994 WL 30542, at *2 (Del. Ch. 1994) for this proposition).

The Court's holdings are clearly consistent with Delaware law.  Although a board must act on an informed basis in responding to a demand, "there is obviously no prescribed

---

[10]      See, e.g., In re Boston Scientific Corp. S'holders Litig., No. 02 Civ. 247, 2007 WL 1696995, at *4 (S.D.N.Y. June 13, 2007) (detailing law firm investigation); Halpert Enters., Inc. v. Harrison, No. 06 Civ. 2331, 2007 WL 486561, at *2-3 (S.D.N.Y. Feb. 14, 2007) (same), aff'd, 2008 WL 4585466; Scattered Corp., 701 A.2d at 71 (retention of independent counsel); Mt. Moriah Cemetery, 1991 WL 50149, at *2 (same).  See generally Kornobis Decl. Ex. B (Trust Instrument) at Art. III § 1(i) (Trustees may delegate authority).  In a similar vein, the Complaint notes that the board did not perform its own investigation.  Compl. ¶ 132.  Of course, it is entirely proper (and often advantageous) for a board to delegate an investigation to a committee, which in this case consisted entirely of directors who were unquestionably independent, as they were not even on the board at the time of the investments challenged by plaintiff.  See Spiegel, 571 A.2d at 776 n.18.

[11]      See, e.g., Compl. ¶¶ 118-20, 135 (alleging that Board did not communicate with plaintiff frequently enough or meet with him or his counsel); Compl. ¶ 133 (SDC "barred Plaintiff from participating or otherwise being informed of the investigation"); ¶ 134 (SDC refused plaintiff "access" to the investigation).

- 13 -

procedure" and it is "within the board's discretion" to determine "what matters will (and will not) be considered."[12]

In the present case, the board notified plaintiff in writing that his demand had been received and asked for "any additional details, analysis, or documentation regarding the subject matter of the Gamoran Action that would assist the Board in reviewing the Demand."  Terris Decl. Ex. B.  Mr. Gamoran responded by simply referring the board to his prior pleadings and complaint, Terris Decl. Ex. C, and making an offer of unspecified further assistance.  Compl. ¶ 119.  Moreover, notwithstanding plaintiff's allegation that he lacked the requisite information to contact the Board regarding its investigation, id. at ¶ 120, counsel for the SDC wrote plaintiff on August 30, 2011 and informed him of the board's investigation.  See Terris Decl. Ex. D.  Mr. Gamoran thus had months to provide whatever additional information he wished to the undersigned counsel or to counsel for the SDC.  It thus appears that "the only way the [board] could have avoided [plaintiff's] criticism was if the Plaintiff himself was put in charge of the investigation."  Halpert Enters., 2007 WL 486561, at *6.

### 3.    The Board Was Not Obligated to Furnish Plaintiff Copies of the Tolling Agreements

To ensure that it could investigate in a deliberate and orderly fashion notwithstanding the tardiness of plaintiff's demand, the board instructed that tolling agreements be prepared, executed, and extended.  See Terris Decl. at ¶ 3 & Ex. E; Kornobis Decl. Ex. A at 2-3.  This clearly underscores the board's good faith and diligence.

---

[12]     Levine, 591 A.2d at 214 (holding that "a board of directors is not legally obligated to permit a demanding shareholder to make an oral presentation at a meeting").  See also Halpert Enters., 2008 WL 4585466, *2 ("An investigating board generally is under no obligation to make use of any particular investigative technique" and a board's decision not to interview individual defendants did not indicate wrongful refusal); Boeing, 1994 WL 30542 at *3-4 (declining to provide plaintiff a copy of the committee's work product or other information plaintiff would like insufficient to overcome the protection of the business judgment rule).

Plaintiff nonetheless renews his quibble that he was not furnished copies of the tolling agreements.  See Compl. ¶¶ 121-125.  As the Court has already recognized, plaintiff does not (and cannot) dispute that tolling agreements were executed.  Order at 12 n. 5, ECF No. 49.  And the tolling agreements "undercut . . . any insinuation that the board delayed in order to extinguish plaintiff's claims."  Order at 12 n. 5, ECF No. 49.  Moreover, "plaintiffs in a derivative suit are not entitled to discovery to assist their compliance with the particularized pleading requirement of Rule 23.1 in a case of demand refusal."  Scattered Corp., 701 A.2d at 77.[13]  Plaintiff's insistence that he is entitled to copies of the tolling agreements is a transparent effort to circumvent this well-established rule.  See Boeing Co., 1994 WL 30542, at *4 (rejecting similar request for *de facto* discovery).

### C.   Plaintiff's Challenges to the Substance of the Board's Conclusion Do Not Overcome the Presumption of the Business Judgment Rule

Plaintiff's attacks on the substance of the board's conclusions consist of little more than legally irrelevant distortions of the board's Demand Refused Letter.

Plaintiff erroneously asserts that the board did not base its decision "on any legitimate business judgment, but on incorrect legal assumptions and erroneous legal principles."  Compl. ¶ 136.  While the board and the SDC, of course, considered applicable law, it is clear on the face of the Demand Refused Letter that the board relied substantially on the facts gathered in the SDC investigation and on business considerations.  See Kornobis Decl. Ex. A at 3-4 (summarizing evidence gathered in SDC investigation and evaluating factual findings against elements of the relevant causes of action); id. at 5 (detailing business reasons for declining to pursue the claims).

---

[13]     See also Levine, 591 A.2d at 208-10; Stoner v. Walsh, 772 F. Supp. 790, 800 (S.D.N.Y. 1991); In re Boston Scientific, 2007 WL 1696995, at *5.

Taking such considerations into account was manifestly appropriate.  "[T]he final substantive judgment whether a particular lawsuit should be maintained requires a balance of many factors ethical, commercial, promotional, public relations, employee relations, fiscal as well as legal."  Zapata Corp., 430 A.2d at 788 (citation omitted).[14]  And "Delaware law does not permit a plaintiff to overcome the business judgment rule simply by asserting that the substance of a board of director's decision was wrong."  Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig., 773 F. Supp. 2d 330, 346-47 (S.D.N.Y. 2011) (collecting cases).  That is all plaintiff has ever tried to do, and it fails here as well.

Plaintiff next alleges that the board made "the impermissible legal conclusion that asset managers may weigh the risks associated with seeking to profit from criminal activity as if that were a legitimate business decision."  Compl. ¶ 136.  The board did no such thing.  It instead informed plaintiff that "[t]he SDC found that the evidence does not support the conclusion that those making the decision to invest in 888 and NETeller knew or should have known that such an investment was a violation of 18 U.S.C. § 1955."  Kornobis Decl. Ex. A at 3.

Plaintiff also alleges that the SDC based its recommendation on two "purely legal conclusions": (1) "whether Defendants are required to have subjective knowledge of criminal statutes," and (2) whether a claim of waste is viable if the Fund received "'consideration' for its purchases in the receipt of stock in the illegal gambling businesses."  Compl. ¶ 136.  As further discussed below in Section IV, subjective knowledge is clearly relevant to certain legal claims

---

[14]     See also Burks v. Lasker, 441 U.S. 471, 485 (1979) ("There may well be situations in which the independent directors could reasonably believe that the best interests of the shareholders call for a decision not to sue."); Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc., Civ. A. No. 13950, 1997 WL 305829, at *11 (Del. Ch. May 30, 1997) ("The whole point of recognizing the board's authority and responsibility in this context is to allow the board's judgment concerning what is in the long-run best interest of the corporation to be acted upon.  That may not be the same as maximizing the return from the law suit.").

asserted in the Complaint.  <u>See, e.g.</u>, <u>Hartsel</u>, 2011 WL 2421003, at *24-26.[15]  Similarly, Delaware courts have recognized that "waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."  <u>Brehm</u>, 746 A.2d at 263 (citation omitted).

Plaintiff's apparent disagreement with these well-established legal propositions cannot justify overturning the board's ultimate business judgment.  Indeed, plaintiff cannot possibly overcome the presumption of the business judgment rule in this context given that the board appropriately sought the assistance of independent and highly qualified counsel.[16]

## II.    PLAINTIFF HAS FAILED TO ALLEGE THAT THE BOARD LACKS INDEPENDENCE

Even if (contrary to law) plaintiff could raise purported conflict issues as a basis to challenge the board's reasoned business judgment in deciding not to bring suit, the Complaint fails to allege that the board or SDC lacked independence.

### A.    Plaintiff Has Not Alleged Particularized Facts Showing That the Independent Trustees and SDC Members Were Interested

A director is presumed independent unless the complaint alleges particularized facts showing that the director is unable to base his or her decision on the corporate merits of the issue before the board.  <u>Aronson</u>, 473 A.2d at 816.  Indeed, with specific reference to an entity such as the Fund, Delaware law provides that an "[i]ndependent trustee" who is not an "interested

---

[15]    It bears noting that plaintiff's counsel was the lead counsel for the plaintiffs in <u>Hartsel</u>, which was affirmed by the Delaware Supreme Court and in which certiorari was denied by the United States Supreme Court.  <u>Hartsel</u> is thus a final decision which represents the most current state of Delaware law regarding the issues plaintiff challenges, and it conclusively shows that plaintiff's challenges are wrong.

[16]    <u>See, e.g.</u>, <u>Panter v. Marshall Field & Co.</u>, 646 F.2d 271, 297 (7th Cir. 1981) ("[D]irectors acting on good faith reliance on the advice of experienced and knowledgeable [] counsel . . . in itself satisfies the requirements of the business judgment rule . . . ." (citing <u>Spirt v. Bechtel</u>, 232 F.2d 241, 247 (2d Cir. 1956))); <u>Rosengarten v. Int'l Telephone & Telegraph Corp.</u>, 466 F. Supp. 817, 825 (S.D.N.Y. 1979) ("it was entirely proper, indeed desirable, for the [board committee reviewing the alleged wrongdoing] to rely on counsel for legal advice" as to the legal standards applicable in the circumstances).

person," as defined in the ICA, is "deemed to be independent and disinterested *for all purposes*." Del. Code Ann. tit. 12, § 3801(d) (emphasis added).

Pursuant to Trust policy, a super-majority of over 75 percent of the Trust's board is comprised of independent trustees as defined by the ICA.[17]  Plaintiff obliquely acknowledges that the Independent Trustee Defendants have no affiliation with the Advisor or Subadvisor.  See Compl. ¶¶ 16-22.  There is no question, and plaintiff has not even tried to raise one, that the Independent Trustee Defendants are not "interested persons" within the meaning of the ICA, and thus are "independent" for purposes of evaluating plaintiff's demand.[18]

Even were that not enough, plaintiff's allegations do not suffice to create a reasonable doubt of the board's independence.  First, the Complaint asserts that the Independent Trustee Defendants and SDC Members were appointed by the Advisor, Compl. ¶ 131, and serve on multiple fund boards, id. at ¶¶ 131, 142, 144.  As an initial matter, that is wrong.  Although the Advisor may have appointed the initial board of trustees, a committee of the independent trustees was responsible for subsequent nominations to the board, and all subsequent nominees were elected by the Fund's shareholders.  See 17 C.F.R. § 270.12b-1(c); Kornobis Decl. Ex. C at 53-54 (2007 SAI); Kornobis Decl. Ex. D at 54 (2008 SAI).  Even if plaintiff's allegations had factual merit, they merely restate in pejorative fashion what has been approved as reasonable industry practices.  See, e.g., Jones v. Harris, --- U.S. ---, 130 S. Ct. 1418, 1422 (2010) (it is "typical" for "[t]he adviser [to] select[] the fund's directors"); Krantz v. Prudential Inv. Fund Mgmt. LLC, 305 F.3d 140, 143-44 (3d Cir. 2002) (multi-board membership within mutual fund

---

[17]     See Kornobis Decl. Ex. C at 42-49, 52 (Trust Statement of Additional Information (December 17, 2007)); Kornobis Decl. Ex. D at 42-49, 52 (Trust Statement of Additional Information (December 19, 2008)).

[18]     See Boyce v. AIM Mgmt. Grp., Inc., No. H-04-2587, 2006 WL 4671324 at *4-*6 (S.D. Tex. Sept. 29, 2006) ("The answer to . . . whether there is reasonable doubt as to [a trustee's] independence and disinterest" is supplied by § 3801); Hartsel, 2011 WL 2421003, at *21.

complexes "is the prevailing practice in the industry").  Many courts, including the Delaware

Chancery Court in a case involving essentially the same allegations and the same plaintiff's

attorney, have explained that these boilerplate allegations are insufficient to challenge the

disinterested status of the Independent Trustee Defendants.  See, e.g., Hartsel, 2011 WL

2421003, at *22 (rejecting arguments that service on multiple boards or appointment to board by

adviser created independence issue).[19]

Second, and in a similar vein, plaintiff argues that conflicts arise from the fact that,

because the trustees also serve on the boards of other funds within the Trust, causing the Fund to

sue the adviser would cause harm to the other funds.  According to plaintiff, in the event of a

successful lawsuit, the adviser could no longer cover expenses relating to the operation of such

funds.  Compl. ¶¶ 137, 139, 146-148.  At least two cases have rejected the same allegation made

by the same plaintiff's counsel.  See Seidl v. Am. Century Cos., 713 F. Supp. 2d 249, 261

(S.D.N.Y. 2010) (Maryland law), aff'd, 427 Fed. Appx. 35 (2d Cir. June 17, 2011); Hartsel, 2011

WL 2421003 (Delaware law).  As Seidl recognized, plaintiff's theory "would essentially nullify

the demand requirement in situations where the corporation is an investment firm with multiple

related funds." 713 F Supp. 2d at 261-62.  In any event, plaintiff fails to particularize why other

funds would be harmed.  See id.[20]

---

[19]     See also Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 345 (2d Cir. 2006) (rejecting
argument that service on multiple fund boards or receipt of substantial compensation for board service causes a
director to be "interested"); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 329-31 (4th Cir. 2001) (same).
Plaintiff's further suggestion that the board is incapable of considering demand because most of its members have
been named as defendants, Compl. ¶ 128, is frivolous.  See Aronson, 473 A.2d at 818.

[20]     See also Hartsel, 2011 WL 2421003, at *22 ("I hold that trustees who serve on multiple boards within the
same mutual fund complex are not per se interested persons under the ICA, even though pursuing one fund's
interests within the complex might adversely affect the complex's other funds." (footnote omitted)).

**B.     Plaintiff Has Not Alleged Particularized Facts Showing a Substantial Likelihood of Liability**

As the Delaware Supreme Court recently confirmed by affirming <u>Hartsel</u>, plaintiff's allegations as to potential civil and criminal liability the trustees face, Compl. ¶¶ 137-38, are insufficient to create an independence issue.  <u>See Hartsel</u>, 2011 WL 2421003, at *24-26; <u>accord Seidl</u>, 713 F. Supp. 2d at 260-61 (rejecting similar allegations by plaintiff's counsel as insufficient to show a substantial likelihood of liability) (Delaware and Maryland law); <u>see also</u> Section IV, <u>infra</u>.

**III.    PLAINTIFF'S NEW CLAIM SHOULD BE DISMISSED FOR FAILURE TO MAKE PRE-SUIT DEMAND**

Plaintiff's Complaint adds one new claim.  In Count IV, plaintiff alleges that the Neuberger Defendants breached their contract with the Fund by making the allegedly illegal investments.  <u>See</u> Compl. ¶¶ 74, 165-67.  This claim was not included in plaintiff's pre-suit demand (which simply demanded that the board pursue the claims alleged in <u>Gamoran II</u>).  <u>See</u> Terris Decl. Ex. A; Complaint, <u>Gamoran II</u>, ECF No. 1.  To the extent Count IV differs from plaintiff's other claims and is not specifically addressed in the board's letter to plaintiff, plaintiff has not made a subsequent demand encompassing this new claim.  Further, it is beyond dispute that demand is not excused as to Count IV.  By making demand, a shareholder "concede[s] that demand [is] required for all legal theories arising out of the set of facts described in the demand letter."  <u>Grimes</u>, 673 A.2d at 1219.  <u>See also In re Merrill Lynch</u>, 773 F. Supp. 2d at 350.

**IV.    THE CLAIMS AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS ALSO FAIL TO STATE A CLAIM**

While the Court need not reach the issue, plaintiff's claims also fail to state a cognizable claim as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff does not allege, nor could he, that the Independent Trustee Defendants made the investments at issue.  Mutual fund directors typically do not make or review particular fund investments.  See Jones, 130 S. Ct. at 1422 (typically, "[t]he adviser . . . manages the fund's investments, and provides other services"); see also Stone v. Ritter, 911 A.2d 362, 372 (Del. 2006) (most corporate decisions "are, of course, not the subject of director attention") (citation and internal quotation marks omitted).  The Complaint and the Fund's investment advisory contract confirm that the Independent Trustee Defendants had no such responsibility here.[21]

Moreover, plaintiff has not properly alleged a claim based on an alleged failure of oversight, which "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  Desimone v. Barrows, 924 A.2d 908, 939 (Del. Ch. 2007) (quoting In re Caremark Int'l, Inc. Deriv. Litig., 698 A.2d 959, 967 (Del. Ch. 1996)).  "[T]o establish oversight liability a plaintiff must show that the directors *knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities such as by failing to act in the face of a known duty to act. . . . [A] showing of bad faith is a *necessary condition* to director oversight liability."  In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 123 (Del. Ch. 2009).  The Complaint offers no non-conclusory allegation that meets this standard.[22]  And "Delaware courts routinely reject the

---

[21]     See Compl. ¶ 147 (alleging that the Advisor and Subadvisor "are responsible for providing or arranging for all services necessary for the operation" of the Fund); Kornobis Decl. Ex. B at Art. III, § 1(i) (board of trustees has authority "[t]o delegate such authority as they consider desirable to any officers of the Trust and to any agent, independent contractor, manager, investment adviser, custodian or underwriter"); Kornobis Decl. Ex. E at ¶ 1.1 (Management Agreement as of November 3, 2003) (specifying Advisor's duties to select the Fund's investments in accordance with specified standards; see also 12 Del. Code Ann. tit. 12, § 3806(i) (recognizing propriety of delegation by trustees).

[22]     The bald allegation that the "Trustees participated in the conspiracy by deliberately failing to carry out their fiduciary and other legal responsibilities to halt the illegality at a time when doing so would have prevented the [Fund's] injury," Compl. ¶ 47, does not satisfy the requirement in Iqbal that a plaintiff plead sufficient *facts* to plausibly support such a claim – particularly one that turns on an individual's knowledge or state of mind.  556 U.S. at 680-81.  Moreover, the paragraph purports to be based on information and belief, but plaintiff fails to set out the

conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." Desimone, 924 A.2d at 940.

Further, given the novelty of plaintiff's legal theory, the Independent Trustee Defendants could not be liable even assuming counterfactually that they had approved the particular investments at issue. The Delaware Supreme Court has held that "board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors." Wood v. Baum, 953 A.2d 136, 142 (Del. 2008). Accordingly, although a shareholder derivative complaint "allege[d] many violations of federal securities and tax laws," it was properly dismissed because it did "not plead with particularity the conduct in which each defendant 'knowingly' engaged or that defendants knew that such conduct was illegal." Id.[23]

Applying these principles, the Hartsel court concluded that the same plaintiff's attorney presenting a complaint alleging the same supposed wrongdoing did not plead sufficient facts to permit an inference that the trustees faced a substantial likelihood of liability given that plaintiff's interpretation of § 1955 is "anything but clear and unambiguous." Hartsel, 2011 WL 2421003, at *25. The Hartsel court was "not convinced that purchasing or owning securities in publicly traded gambling enterprises is illegal under § 1955." Id. at *26.

---

basis for his belief as required by heightened pleading standards such as Fed. R. Civ. P. 23.1. See, e.g., Brickman v. Tyco Toys, Inc., 722 F. Supp. 1054, 1060 (S.D.N.Y. 1989). Notably, the Demand Refused Letter informed plaintiff that the Trustees were not aware of the challenged investments at the time they were made or at the time they were liquidated but that the board "had in place adequate processes to monitor investment performance." Kornobis Decl. Ex. A at 4.

[23]     See also Gagliardi v. Trifoods Int'l, Inc., 683 A.2d 1049, 1051 n.2 (Del. Ch. 1996) ("By 'bad faith' is meant a transaction that is . . . known to constitute a violation of applicable positive law."); Litt v. Wycoff, Civ. A. No. 19083-NC, 2003 WL 1794724 at *7 (Del. Ch. Mar. 28, 2003) (no demand excusal based on allegedly illegal conduct where plaintiff failed to point to any precedent interpreting federal statute to prohibit the alleged conduct or to enforcement actions or investigations based on similar conduct).

<u>Hartsel</u> further concluded that, in any event, "even if Trustees' conduct related to purchasing and owning securities in allegedly illegal gambling businesses did violate § 1955, the Complaint fails to allege sufficient facts for the Court to infer that they knew that such ownership was illegal." <u>Id.</u> (footnote omitted).  As the court explained, the reports and prosecution on which plaintiff relies "did not involve owners of securities in illegal gambling enterprises.  As such, they did not make clear that passive stock ownership also was illegal." <u>Id.</u>  <u>Compare</u> Compl. ¶¶ 78-97, 101-05.

For these reasons, and for the additional reasons set forth in the brief filed by the Neuberger Defendants, the claims against the Independent Trustee Defendants fail to state a claim.

## V. PLAINTIFF'S CONDUCT OF THE LITIGATION SHOWS HE CANNOT FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE FUND'S SHAREHOLDERS

Under Fed. R. Civ. P. 23.1, a derivative action cannot "be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."  A plaintiff in a derivative action owes a corporation undivided loyalty, must not have ulterior motives, and may not pursue a personal agenda.  <u>See</u> <u>Smith v. Ayers</u>, 977 F.2d 946, 949 (5th Cir. 1992).

Plaintiff's repeated and inexplicable attempts to avoid the clear requirements of Delaware law over the course of many years have required the Fund to incur significant expense and show that plaintiff has no regard for the Fund's resources.  Plaintiff filed three cases in three different courts before the board had an opportunity to investigate a demand; he made a mid-suit demand that effectively mooted his second action after the Fund had already expended considerable effort to have it dismissed; and he prematurely filed his third case only weeks after his second case was dismissed.  Then, after receiving the Demand Refused Letter, plaintiff resisted the

economical suggestion that he amend his complaint to reflect that event, and instead caused this

Court to issue an order dismissing the case with leave to amend, leading to the current new round

of briefing.  See Order at 9, ECF No. 49; id. at 12 ("The court is compelled to note that the

present motion might have been rendered unnecessary if plaintiff ha[d] accepted defendants'

suggestion that he move to amend the complaint.").  Finally, plaintiff's current complaint asserts

a new claim that was not previously put before the board, conduct suggestive of "harassment."

See Grimes, 673 A.2d at 1220.

   Plaintiff and his counsel therefore cannot be said to "fairly and adequately represent the

interests of shareholders," Fed. R. Civ. P. 23.1, and they should not be permitted to pursue any

other related claim any further.  See La. Mun. Police Emps.' Ret. Sys. v. Pyott, 46 A.3d 313,

349-51 (Del. Ch. 2012) (shareholder whose precipitate filings forced corporation unnecessarily

to bear the expense of briefing multiple motions to dismiss and required multiple courts to

expend judicial resources was not representing the best interests of the corporation, and hence

was an inadequate derivative plaintiff).

## CONCLUSION

The Complaint should be dismissed with prejudice in its entirety.

Dated: August 24, 2012
      New York, New York

Respectfully submitted,

K&L GATES LLP

By:    s/  Nicholas G. Terris
Jeffrey B. Maletta (*pro hac vice*)
Nicholas G. Terris (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice*)
1601 K Street, NW
Washington, DC 20006-1600
E-mail:  jeffrey.maletta@klgates.com
        nicholas.terris@klgates.com
        ted.kornobis@klgates.com
Phone:  (202) 778-9000
Fax:    (202) 778-9100

Joanna A. Diakos (JD-7269)
599 Lexington Avenue
New York, NY 10022-6030
E-mail:  joanna.diakos@klgates.com
Phone:  (212) 536-3900
Fax:    (212) 536-3901

*Attorneys for Defendants John Cannon, Faith Colish,*
*C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf,*
*Edward L. O'Brien, William E. Rulon, Cornelius T. Ryan,*
*Tom D. Seip, Candace L. Straight, Peter P. Trapp and*
*Nominal Defendant Neuberger Berman Equity Funds*