Joanna A. Diakos (JD 7269)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (tel)
(212) 536-3901 (fax)
E-mail: joanna.diakos@klgates.com

*Attorneys for Defendants John Cannon, Faith Colish,*
*C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf,*
*Edward I. O'Brien, William E. Rulon, Cornelius T. Ryan,*
*Tom D. Seip, Candace L. Straight, Peter P. Trapp and*
*Nominal Defendant Neuberger Berman Equity Funds*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BENJAMIN M. GAMORAN, derivatively on behalf
of the nominal defendant with respect to its
series mutual fund, the Neuberger Berman
International Fund,

                        Plaintiff,

            - against -

NEUBERGER BERMAN LLC, et al.,

                        Defendants,

            - and -

NEUBERGER BERMAN EQUITY FUNDS d/b/a/
NEUBERGER BERMAN INTERNATIONAL FUND,

                        Nominal
                        Defendant.

11 Civ. 7957 (TPG) (KNF)

ECF Case

---

## INDEPENDENT TRUSTEES' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED DERIVATIVE COMPLAINT

DC-9656182 v6

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.     PLAINTIFF HAS NOT OVERCOME THE PRESUMPTIONS OF THE
BUSINESS JUDGMENT RULE ....................................................................................... 2

        A.    Plaintiff's Allegations Regarding the Board's Supposed Conflicts
Are Irrelevant ........................................................................................................ 5

        B.    Plaintiff's Allegations Regarding the Process by Which the Board Conducted
Its Review of Plaintiff's Demand Do Not Overcome the Presumption of the
Business Judgment Rule ......................................................................................... 6

                1.    The Board's Decision to Delegate Certain Tasks Is Protected by the
Business Judgment Rule ............................................................................... 7

                2.    The Board Was Not Obligated to Communicate with Plaintiff More
Frequently or to Allow Him to Control Access to the Investigation ........... 9

                3.    The Board Was Not Obligated to Furnish Plaintiff Copies of the
Tolling Agreements ................................................................................... 10

        C.    Plaintiff Does Not Raise Any Reason to Doubt That the Substance of the
Board's Conclusion Meets the Standards of the Business Judgment Rule ........... 11

II.    PLAINTIFF HAS FAILED TO ALLEGE THAT THE BOARD LACKS
INDEPENDENCE ........................................................................................................ 12

        A.    Plaintiff Has Not Alleged Particularized Facts Showing That the Independent
Trustees and SDC Members Were Interested .......................................................... 12

        B.    Plaintiff Has Not Shown a Substantial Likelihood of Trustee Liability ................ 14

III.   PLAINTIFF'S NEW CLAIM SHOULD BE DISMISSED FOR FAILURE TO
MAKE PRESUIT DEMAND .......................................................................................... 15

IV.   PLAINTIFF ALSO FAILS TO STATE A CLAIM AGAINST THE
INDEPENDENT TRUSTEE DEFENDANTS ................................................................... 15

## <u>TABLE OF CONTENTS (cont'd)</u>

V.      PLAINTIFF'S CONDUCT OF THE LITIGATION SHOWS HE CANNOT
        FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE
        FUND'S SHAREHOLDERS ........................................................................................16

CONCLUSION.................................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

Abbey v. Computer & Commc'ns Tech. Corp.,
    457 A.2d 368 (Del. Ch. 1983) ...................................................................................8

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984) ........................................................................................13

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004) .............................................................................4, 5, 9, 14

Boeing Co. v. Shrontz,
    Civ. A. No. 11273, 1994 WL 30542 (Del. Ch. Jan. 19, 1994) ...........................................9

Boland v. Boland,
    31 A.3d 529 (Md. 2011) ...................................................................................3, 4, 14

Braddock v. Zimmerman,
    906 A.2d 776 (Del. 2006) .........................................................................................7

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) ...............................................................................3, 4, 6, 13

Burks v. Lasker,
    441 U.S. 471 (1979).............................................................................................10

Copeland v. Lane,
    No. 5:11-cv-1058, 2012 WL 4845636 (N.D. Cal. Oct. 10, 2012).........................6, 7, 8, 9

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996) ...........................................................................4, 6, 10, 12, 15

Halpert Enters., Inc. v. Harrison,
    No. 07-1144, 2008 WL 4585466 (2d Cir. Oct. 15, 2008) ................................................8

Hartsel v. Vanguard Grp.,
    Civ. A. No. 5394, 2011 WL 2421003 (Del. Ch. June 15, 2011) ....................12, 13, 14, 16

In re Oracle Corp. Deriv. Litig.,
    824 A.2d 917 (Del. Ch. 2003) ...........................................................................4, 8, 9, 14

In re Par Pharm., Inc. Deriv. Litig.,
    750 F. Supp. 641 (S.D.N.Y. 1990) ...............................................................................4

## CASES (cont'd)

In re Walt Disney Co. Deriv. Litig.,
    906 A.2d 27 (Del. 2006) ........................................................................12

Kamen v. Kemper Fin. Servs. Inc.,
    500 U.S. 90 (1991)...................................................................................10

Levine v. Smith,
    591 A.2d 194 (Del. 1991) ..............................................................6, 10, 11

Lewis v. Fuqua,
    502 A.2d 962 (Del. Ch. 1985) ..............................................................4, 8

La. Mun. Police Emps.' Ret. Sys. v. Pyott,
    46 A.3d 313 (Del. Ch. 2012) ....................................................................6

Mt. Moriah Cemetery v. Moritz,
    Civ. A. No. 11431, 1991 WL 50149 (Del. Ch. Apr. 4, 1991) ...............6, 8

RCM Sec. Fund, Inc. v. Stanton,
    928 F.2d 1318 (2d Cir. 1991) ...................................................................3

Scattered Corp. v. Chi. Stock Exch.,
    701 A.2d 70 (Del. 1997) ...............................................................3, 6, 10

Seidl v. Am. Century Cos.,
    713 F. Supp. 2d 249 (S.D.N.Y. 2010) ...........................................10, 13, 15

Smith v. Ayers,
    977 F.2d 946 (5th Cir. 1992) ...................................................................17

South v. Baker,
    C.A. No. 7294-VCL, 2012 WL 4372538 (Del. Ch. Sept. 25, 2012) .................17

Spiegel v. Buntrock,
    571 A.2d 767 (Del. 1990) ...........................................................3, 4, 7, 8

St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply,
    317 F. Supp. 2d 336 (S.D.N.Y. 2004) ......................................................3

Werbowsky v. Collomb,
    766 A.2d 123 (Md. 2001) .........................................................................4

Zapata Corp. v. Maldonado,
    430 A.2d 779 (Del. 1981) .........................................................................7

The Independent Trustee Defendants, the Trust, and the Fund respectfully submit this Reply to Plaintiff's Brief in Opposition to Defendants' Motions to Dismiss (filed Oct. 9, 2012, ECF No. 60) (hereinafter the "Opposition" or "Opp.").[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition confuses several straightforward issues in an effort to avoid the controlling business judgment rule, which clearly compels dismissal of his case.

The board's careful review of plaintiff's demand in this case easily satisfies any plausible legal standard.  However, this is indisputably a demand *refused* case governed by established *Delaware* law.  The Opposition nonetheless relies almost exclusively on demand *excused* cases and one *Maryland* case that deviates substantially from established Delaware standards.

Recognizing that he cannot raise a reasonable doubt as to whether the board *actually acted* in good faith and with reasonable care, plaintiff also rehashes the Complaint's allegations that the board was too conflicted to consider demand in the first place.  But as this Court has already held, plaintiff waived all such challenges when he made demand, and in any event the Complaint's general allegations based on the structure of the mutual fund industry would be insufficient even in a case in which they could properly be raised.

In another attempt to escape the business judgment rule, plaintiff conflates two different types of board committees: (1) special litigation committees appointed in demand *excused* cases that evaluate whether to terminate derivative suits that shareholders were entitled to institute (because demand was excused in the first instance), and (2) committees like the SDC used in demand *refused* cases such as this, where an independent board delegates the task of

---

[1]    The opening Independent Trustees' Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Verified Derivative Complaint (filed Aug. 24, 2012, ECF No. 58) will be referred to as the "Memorandum" or "Mem."  This Reply uses the same structure, capitalized terms, and abbreviations as the Memorandum.  It will also refer to certain materials attached to the Kornobis Declaration (ECF No. 57) and the Reply Declaration of Douglas Henkin (filed Nov. 5, 2012, ECF No. 63) ("Henkin Reply Decl.").

investigating and making a recommendation with respect to a demand.  Such a delegation is proper with respect to derivative litigation (as well as for other business decisions) and does not alter the application of the business judgment rule.

Plaintiff makes little effort to respond to the Independent Trustee Defendants' showing that, under the correct standard – the business judgment rule's presumption of independence, good faith, and reasonableness – he has not alleged facts with the particularity required by Fed. R. Civ. P. 23.1 to create a reasonable doubt that the board acted appropriately.  Instead, the Opposition merely repeats the Complaint's defective boilerplate allegations regarding the procedure and substance of the board's investigation, most of which the Court has already rejected.

Plaintiff's new breach of contract claim must be dismissed because, as the Opposition acknowledges, it was not included in plaintiff's demand.

Finally, the Opposition barely addresses (and thereby effectively concedes) the Independent Trustee Defendants' arguments that the Complaint fails to state a claim against them and that plaintiff's disregard for the litigation expenses incurred by the Fund compels a finding that he will not fairly and adequately represent shareholders.

Accordingly, the Complaint should be dismissed with prejudice.

## ARGUMENT

## I.  PLAINTIFF HAS NOT OVERCOME THE PRESUMPTIONS OF THE BUSINESS JUDGMENT RULE

The Delaware Supreme Court has repeatedly held that where, as here, a plaintiff makes demand on a board, the board's refusal of that demand is protected by the business judgment rule.  See Mem. 9-10 (discussing relevant authority).  As this Court has already ruled, it is therefore plaintiff's burden to plead "particularized facts," Order at 10, July 12, 2012, ECF No.

49, overcoming the presumption of the business judgment rule. <u>See also</u> Mem. 9-10 & n.7. And

plaintiff's baseless suggestion that courts rarely dismiss complaints in demand refused cases

(Opp. 31) gets the law exactly backwards. As the Second Circuit has noted, "few, if any,

plaintiffs surmount" the pleading requirements in demand refused cases. <u>RCM Sec. Fund, Inc. v.

Stanton</u>, 928 F.2d 1318, 1328 (2d Cir. 1991).[2]

Apparently recognizing that the Complaint comes nowhere close to meeting this exacting

standard, plaintiff proposes that the Court disregard controlling Delaware law and create an

entirely new rule: that defendants should bear the burden of establishing that the board's decision

to refuse demand was "above reproach." <u>See, e.g.</u>, Opp. 4, 32. In support of his proposed new

standard, plaintiff relies primarily on a decision construing Maryland law – <u>Boland v. Boland</u>, 31

A.3d 529 (Md. 2011) – and a handful of Delaware "demand excused" cases. Opp. 31-34. But

neither is a valid basis for ignoring controlling Delaware law governing demand refused cases

like this one.

Of course, because the Delaware courts have authoritatively and repeatedly articulated

the relevant principles of controlling Delaware law, it would be error to look to Maryland law for

any reason.[3] Moreover, notwithstanding plaintiff's convoluted arguments, <u>see, e.g.</u>, Opp. 4-5,

29-30 & n.25, <u>Boland</u> is directly contrary to Delaware law in this context. Under Delaware law,

in a demand required case such as this, the "presumption" of the business judgment rule – that

"the directors of a corporation acted on an informed basis, in good faith and in the honest belief

---

[2]     <u>See also</u> <u>Spiegel v. Buntrock</u>, 571 A.2d 767, 777 (Del. 1990) ("[I]f the requirements of the traditional business judgment rule are met . . . a board of directors' motion to dismiss an action filed by a shareholder, whose demand has been rejected, must be granted."); <u>Scattered Corp. v. Chi. Stock Exch.</u>, 701 A.2d 70, 71 (Del. 1997), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746 A.2d 244, 253 (Del. 2000).

[3]     Even assuming arguendo that <u>Boland</u> intended to follow Delaware law (which it clearly did not), "a federal court must apply [state] law as determined by the highest court of that state." <u>St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply</u>, 317 F. Supp. 2d 336, 339 (S.D.N.Y. 2004), <u>aff'd</u>, 409 F.3d 73 (2d Cir. 2005). Because Delaware's courts have spoken as to what Delaware law says, a Maryland court's views about those issues are irrelevant.

that the action taken was in the best interests of the company" – is fully applicable. Spiegel, 571 A.2d at 774 (citations omitted).[4]  As a result, "[t]he burden is on the party challenging the decision to establish facts rebutting this presumption." Id. (citation and internal quotation and other marks omitted).  In direct conflict with Delaware law, Boland (a demand required case, 31 A.3d at 541 n.12) held that, under Maryland law, "directors are entitled to *no* presumption" of independence and good faith, and instead bear the burden of proof on these issues. Boland, 31 A.3d at 561 (emphasis added). See also id. at 556, 557, 563, 567.[5]

The Delaware Supreme Court also has made clear that the more "searching" standard applied in demand excused cases such as those on which plaintiff relies is inapplicable in demand required actions such as this. See Beam v. Stewart, 845 A.2d 1040, 1054-55 (Del. 2004) (explaining that the "'Caesar's wife' – 'above reproach'" standard applies in demand *excused* cases).[6]  That is because, in demand required cases, the board is "presumed to be independent" whereas in demand excused cases, a special litigation committee may "seek dismissal of a

---

[4]      Plaintiff inexplicably suggests that Spiegel was a "demand futility" case, Opp. 32, even though it clearly was a demand refused case. Spiegel, 571 A.2d at 775-76 ("[S]tockholders who, like Spiegel, make a demand which is refused, subject the board's decision to judicial review according to the traditional business judgment rule." (citations omitted)). Contrary to another of plaintiff's baseless assertions, Opp. 32, Spiegel is not the "only authority" applying the business judgment rule in demand refused cases. See Mem. 9 n.6 (additional cases).

[5]      Unlike Maryland, which imposes a near-universal demand requirement under which shareholders must make demand even in circumstances where the board is conflicted, Boland, 31 A.3d at 550 n.25 (citing Werbowsky v. Collomb, 766 A.2d 123, 135 (Md. 2001)), a Delaware corporate shareholder who believes demand is futile may file a complaint alleging demand futility in a broader array of circumstances. Grimes v. Donald, 673 A.2d 1207, 1218 (Del. 1996) ("Delaware law does not require demand in every case because Delaware does have the mechanism of demand excusal . . . ." (footnotes omitted)), overruled on other grounds by Brehm, 746 A.2d at 253. Thus, notwithstanding plaintiff's erroneous suggestion, Opp. 5, Delaware shareholders do not face a "Catch-22."

[6]      Beam distinguished by name two of the Delaware cases on which plaintiff relies – In re Oracle Corp. Deriv. Litig., 824 A.2d 917, 923 (Del. Ch. 2003), and Lewis v. Fuqua, 502 A.2d 962, 964 (Del. Ch. 1985). See Beam, 845 A.2d at 1054-55. A third case cited by plaintiff, In re Par Pharm., Inc. Deriv. Litig., 750 F. Supp. 641 (S.D.N.Y. 1990), also is easily distinguishable. Among other differences, the corporation was organized under New Jersey (not Delaware) law, id. at 646 n.11, the court had before it a complaint brought by plaintiffs who had not made a demand, id. at 644 n.3, the court followed authority indicating that (in contrast to Delaware law) merely naming the directors as defendants was sufficient to excuse demand, id. at 646, and the litigation committee failed to hire independent outside counsel, id. at 647.

derivative suit brought against their director-colleagues in a setting where" (unlike in demand-made cases such as this) "presuit demand is already excused." <u>Beam</u>, 845 A.2d at 1055.

Accordingly, the relevant inquiry is whether plaintiff has overcome the business judgment rule with particularized allegations meeting the requirements of Fed. R. Civ. P. 23. He clearly has not.

**A.      Plaintiff's Allegations Regarding the Board's Supposed Conflicts Are Irrelevant**

Like the Complaint, the Opposition devotes little attention to how the board actually conducted its review of plaintiff's demand and instead expends considerable ink arguing that the board was too conflicted to consider demand in the first place. <u>See</u> Opp. 35-42.

In doing so, plaintiff disregards this Court's ruling that, by making demand, plaintiff "conceded the independence of the board" and that, as a result, "the court's only inquiry is into the board's good faith and the reasonableness of the investigation." Order at 10, ECF No. 49 (citations and internal quotation marks omitted).

The Opposition's arguments regarding the board's supposed conflicts thus amount to nothing more than a tardy motion for reconsideration. <u>See</u> L.R. 6.3 (14-day limit for motions to reconsider). Apart from its untimeliness, plaintiff's request for reconsideration is utterly baseless because plaintiff has cited no change in controlling authority. Nor could he. Notwithstanding plaintiff's attempts to distort or ignore the relevant authorities, <u>see, e.g.</u>, Opp. 36, this Court's ruling correctly reflected a long line of Delaware cases that bar a shareholder from challenging the independence of the board *ex ante* (<u>i.e.</u>, based on conditions existing at the time demand is made). Accordingly, the scope of a review in demand refused case is limited to whether a

plaintiff can overcome the business judgment rule based on particularized factual allegations about how the board conducted its review of plaintiff's demand.[7]

There is no question that most of plaintiff's allegations – including those regarding the general structure of mutual fund families, the board's alleged exposure to liability, and the supposed conflicts the board has with the other funds it oversees – arise from events predating the demand.  In fact, they were also contained in virtually the identical form in the premature complaint plaintiff filed prior to making demand.[8]  Therefore, because "[t]he only relevant question is whether the directors acted in an informed manner and with due care, in a good faith belief that their action was in the best interest of the corporation," Levine v. Smith, 591 A.2d 194, 198 (Del. 1991), overruled on other grounds by Brehm, 746 A.2d at 253, plaintiff's assertions are irrelevant as a matter of law.

**B.    Plaintiff's Allegations Regarding the Process by Which the Board Conducted Its Review of Plaintiff's Demand Do Not Overcome the Presumption of the Business Judgment Rule**

The Opposition also does nothing to salvage the few misguided allegations in the Complaint that relate to the board's evaluation of plaintiff's demand.

---

[7]      See Mem. 10-11 & n.8 (discussing relevant authorities).  See also Grimes, 673 A.2d at 1219 (inquiry is whether the board "*acted* independently" in evaluating the demand); Mt. Moriah Cemetery v. Moritz, Civ. A. No. 11431, 1991 WL 50149, at *3 (Del. Ch. Apr. 4, 1991).  Accord Copeland v. Lane, No. 5:11-cv-1058, 2012 WL 4845636, at *5-6 (N.D. Cal. Oct. 10, 2012) (because under Scattered Corp., 701 A.2d at 71, "a plaintiff may show that demand was wrongfully refused by pointing to events occurring *after* the demand which demonstrate a lack of independence, *but not events occurring before the demand*," allegations regarding board's involvement in wrongdoing "were waived when [plaintiff] made his Demands" (emphasis added)).  Plaintiff's citation to Louisiana Municipal Police Employees' Retirement System v. Pyott, 46 A.3d 313 (Del. Ch. 2012), Opp. 36, is unavailing. Pyott commented that it "appear[ed] incorrect" that preclusion principles would "bar subsequent efforts to plead wrongful refusal."  46 A.3d at 333 n.12.  The Independent Trustee Defendants do not contend that Delaware law precludes pleading wrongful refusal; they do contend that (as the Delaware Supreme Court has repeatedly held) making demand precludes plaintiff from relying on allegations regarding supposed board conflicts that existed at the time plaintiff made demand.

[8]      See Complaint at ¶¶ 93-121, Gamoran II, ECF No. 1.

1.     **The Board's Decision to Delegate Certain Tasks Is Protected by the Business Judgment Rule**

As the Independent Trustee Defendants anticipated, Mem. 11-13, the Opposition again attempts to avoid the business judgment rule by faulting the board for not giving the SDC full and final decision-making authority.  Opp. 33.

But as the Independent Trustee Defendants have previously explained, Mem. 12-13, this is merely another example of plaintiff conflating demand excused and demand required cases.  In demand excused cases (i.e., where the board is deemed interested or otherwise incapable of responding to the demand), a board can appoint a committee of independent board members (a *special litigation committee*) to determine whether to seek to dismiss or continue a properly instituted shareholder derivative lawsuit.  See Zapata Corp. v. Maldonado, 430 A.2d 779, 788 (Del. 1981).

This case is different because plaintiff conclusively conceded the board's disinterest and capacity to respond to his demand.  See Spiegel, 571 A.2d at 777.  In cases like this one, the board can delegate to a committee the role of overseeing the investigation of the demand and recommending how to proceed, just as it can delegate any of its ordinary corporate powers.  See Mem. 12 & n.9 (citing cases).  Braddock v. Zimmerman, 906 A.2d 776 (Del. 2006), which plaintiff misunderstands, Opp. 34, explained that an independent board can decide for itself how best to respond to demand, including moving to dismiss the lawsuit *or* appointing a committee to determine what action to take.  Braddock, 906 A.2d at 785-86.  See also Copeland v. Lane, No. 5:11-cv-1058, 2012 WL 4845636, at *7 (N.D. Cal. Oct. 10, 2012) (procedure of establishing a

committee to investigate the facts and to make a recommendation to the board regarding whether to commence litigation "is appropriate").[9]

In demand refused cases, "[t]he same standard of judicial review" – the business judgment rule – applies regardless of any delegation. Spiegel, 571 A.2d at 778 ("The issues are solely the good faith and the reasonableness of the committee's investigation."). See also Mt. Moriah, 1991 WL 50149, at *3 ("The same review, to determine whether there was a valid exercise of business judgment, is undertaken when a board delegates its authority to respond to a demand to a special committee." (citations omitted)). The Delaware law cases plaintiff cites for a different standard were demand *excused* cases, in which the plaintiff has (by definition) not conceded the board's disinterest and capacity to respond to his demand.[10]

The Opposition also fails to bolster the Complaint's assertions that the board was insufficiently involved. See Opp. 45. Plaintiff concedes that "Defendants are entitled to delegate *some* responsibility to counsel." Opp. 45. However, without elaboration or citation of authority, plaintiff opines that there are certain "minimum responsibilities of personal involvement in the investigation" by the board. Opp. 45. Yet, the Opposition fails to address the undisputed facts that the SDC Members held seven meetings with the SDC's counsel at which they discussed the results of the legal research, document review, and witness interviews; the SDC chair was in frequent contact with counsel; and the SDC engaged in thorough consideration and discussion before making its recommendation (as did the board in considering the

---

[9]     Plaintiff's contention that the SDC should have been comprised of non-directors, Opp. 42, is baseless. See, e.g., Halpert Enters., Inc. v. Harrison, No. 07-1144, 2008 WL 4585466 (2d Cir. Oct. 15, 2008) (board's audit committee conducted investigation).

[10]     Plaintiff incorrectly cites Abbey v. Computer & Communications Technology Corp., 457 A.2d 368 (Del. Ch. 1983), for the proposition that the board "was required to delegate final decision-making authority" to the SDC. Opp. at 35.  As the Independent Trustee Defendants have demonstrated (and to no relevant response), Abbey was a unique demand excused case. Mem. 12 n.9. See also Copeland, 2012 WL 4845636, at *7 n.1 (distinguishing Abbey). In re Oracle Corp., 824 A.2d at 923, and Fuqua, 502 A.2d at 964, were discussed above at n.6.

recommendation). See Kornobis Decl. Ex. A at 3-5. The board's significant involvement more than satisfies any "minimal responsibilities" that might exist. See also Copeland, 2012 WL 4845636, at *9 (rejecting similar allegations "that the Independent Committee delegated fact-gathering and analysis to [counsel]").

### 2.    The Board Was Not Obligated to Communicate with Plaintiff More Frequently or to Allow Him to Control Access to the Investigation

Plaintiff apparently believes that this Court erred in holding that the board is "not required to continuously inform plaintiff of developments in the investigation," Order at 11, ECF No. 49, and need not meet with a shareholder plaintiff concerning a demand, id. (citing Boeing Co. v. Shrontz, Civ. A. No. 11273, 1994 WL 30542, at *2 (Del. Ch. Jan. 19, 1994)). See Opp. 43-44. According to plaintiff, the Boeing decision cited by the Court is inconsistent with two more recent Delaware cases (Beam, 845 A.2d at 1054-55, and In re Oracle, 824 A.2d at 923), which supposedly "require a degree of scrutiny of an SLC's refusal greater than what was assumed by the Court in Boeing." Opp. 44.[11]

Once again, however, plaintiff's argument is an untimely and baseless request for reconsideration. As already noted, the Delaware Supreme Court made clear in Beam that the analysis in Oracle applies *only* in demand excused cases. See Beam, 845 A.2d at 1055.[12]

---

[11]    As demonstrated in the Memorandum, there is no indication that meeting with plaintiff in this case would have served any useful purpose given his perfunctory response to the board's request for information. See Mem. 14. Plaintiff has not responded to this at all.

[12]    The "availability of discovery into various issues, including independence" in demand excused cases – presumably the type of "transparency" plaintiff seeks, Opp. 43 – is "*unlike* the presuit demand context" of this case. Beam, 845 A.2d at 1055 (emphasis added). See also Mem. 14 n.12 (discussing additional Delaware law cases rejecting demands for additional access to or participation in the board's investigation of shareholder demands); Mem. 15 & n.13 (discussing additional Delaware case law rejecting shareholders' contentions that they were entitled to discovery or similar information). Accord Copeland, 2012 WL 4845636, at *6 (rejecting similar allegations that, in reviewing a shareholder demand, a board "did not include Plaintiff in its investigation . . . [and] refused to provide Plaintiff with certain information").

Plaintiff also asserts that the board did not provide him with "the basis for the Board's refusal . . . *after* refusal." Opp. 43. This baffling statement ignores the undisputed fact that the board furnished plaintiff a Demand Refused Letter providing a thorough summary of the board's process and reasoning. Kornobis Decl. Ex. A. The board's conscientious response far exceeded the requirements of Delaware law. Compare Levine, 591 A.2d at 214-15 & n.9 (affirming dismissal of "wrongful refusal" complaint in light of one paragraph demand refused letter); Grimes, 673 A.2d at 1212, 1219-20 (same disposition based on brief demand refused letter); Scattered Corp., 701 A.2d at 71, 77 (similar).[13]

### 3.   The Board Was Not Obligated to Furnish Plaintiff Copies of the Tolling Agreements

Although a plaintiff's tardiness does not excuse the demand requirement,[14] to ensure that it could investigate in a deliberate fashion, the board took the precautionary step of directing that tolling agreements be executed. See Mem. 4.[15] As the Court has recognized, that underscores the board's good faith. Order at 12 & n.5, ECF No. 49.[16]

Plaintiff still has not cited a single authority supporting his contention that he is entitled to review the tolling agreements. Opp. 47-49. Nor can he. The Delaware Supreme Court and

---

[13]     Plaintiff additionally implies that, because this case involves an investment company, something other than ordinary state law demand principles should apply. Opp. 44. But the Supreme Court has twice rejected that argument. Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90 (1991); Burks v. Lasker, 441 U.S. 471 (1979). And this Court rejected substantially the same argument in holding that state law demand requirements apply to the federal RICO claims in this case. Order at 7-9, ECF No. 49.

[14]     See Seidl v. Am. Century Cos., 713 F. Supp. 2d 249, 259 n.14 (S.D.N.Y. 2010), aff'd, 427 Fed. Appx. 35 (2d Cir. 2011).

[15]     Plaintiff's suggestion (at Opp. 48) that defendants represented to Judge Sand that they would execute a particular form of tolling agreement satisfactory to him is groundless. The Independent Trustee Defendants' Reply Brief in Gamoran II stated that "even before plaintiff sent his demand letter, the Trust's board initiated steps to preserve its ability to conduct an appropriate investigation in due course. Defendants named in the Complaint have been asked to execute an appropriate tolling agreement. Almost all have agreed to do so, but the documentation has not been finalized." Gamoran II Reply Brief at 3, ECF Dckt. No. 39. As defendants have previously stated and as noted above, such an agreement was finalized.

[16]     There is no need to address plaintiff's argument that the relevant tolling agreements necessarily make his latest complaint timely. See Opp. 49.

courts in this district have consistently held that discovery is not available to a plaintiff to assist

in complying with Rule 23.1. See Mem. 15 & n.13 (citing authorities). And this Court has

already rejected plaintiff's argument that defendants were obliged to produce the relevant

agreements to him. Order at 12 n.5, ECF No. 49. Moreover, plaintiff has not suggested how

furnishing him the relevant agreements would have facilitated the board's investigation.

> ### C.      Plaintiff Does Not Raise Any Reason to Doubt That the Substance of the Board's Conclusion Meets the Standards of the Business Judgment Rule

Plaintiff's continued attacks on the substance of the board's conclusions are meritless.

As the Independent Trustee Defendants previously demonstrated, the Demand Refused

Letter makes clear that the board appropriately relied on the facts gathered in the SDC

investigation and on business considerations in refusing plaintiff's demand. See Mem. 15-16.

The Opposition persists in distorting the SDC's findings, but these arguments are entitled to no

weight.[17] See Levine, 591 A.2d at 214 (rejecting allegations that are "contradicted by the

Board's letter of reply rejecting [the shareholder's] demand").

Again relying on Maryland law, plaintiff asserts that the Court should engage in de novo

review of the legal analysis relied upon in the Demand Refused Letter. Opp. 46-47. This is both

wrong as a matter of law and irrelevant.

Under Delaware law, the entirety of the board's decision is accorded the protections of

the business judgment rule, and absent extraordinarily limited circumstances not present here, a

---

[17]      The Opposition asserts that, "prior to making the investments, Defendants were aware of issues concerning the legality of NETeller and 888 but discounted the 'risk' that the laws would be successfully enforced." Opp. 46. To the contrary, the Demand Refused Letter states among other things that "the portfolio manager and the analyst responsible for the investment decisions both believed that the businesses of 888 and NETeller were legal under existing U.S. law." Kornobis Decl. Ex. A at 3. A recent interpretation of U.S. law by the Department of Justice fully supports this conclusion. See Henkin Reply Decl. Ex. A. The Opposition also repeats the allegation that the SDC concluded that "asset managers may properly weigh the risks associated with seeking to profit from criminal activity." Opp. 47. As the Independent Trustee Defendants have already demonstrated, see Mem. 16, the SDC actually concluded that the evidence did not support the conclusion that those making the decision to invest knew or should have known that such investments were a violation of 18 U.S.C. § 1955.

Court may not "substitute its judgment for that of [the] board." Levine, 591 A.2d at 207.
Where, as here, the board hired unquestionably qualified and independent legal counsel and
otherwise engaged in a thorough process, at least absent a clearly irrational decision, the inquiry
ends.[18]

In any event, plaintiff has not pointed to a single error in any legal analysis set forth in
the Demand Refused Letter. Indeed, the Opposition contains nothing to rebut the Independent
Trustee Defendants' conclusion that subjective knowledge is relevant to at least some of the legal
claims asserted in the Complaint. See Mem. 16-17 (citing Hartsel v. Vanguard Grp., Civ. A. No.
5394, 2011 WL 2421003, at *24-26 (Del. Ch. June 15, 2011), aff'd, 38 A.3d 1254 (Del. 2012)).

## II.    PLAINTIFF HAS FAILED TO ALLEGE THAT THE BOARD LACKS INDEPENDENCE

Setting aside the irrelevance of such allegations, the Opposition merely confirms that
plaintiff has failed to plead particularized facts raising a reasonable doubt that, when plaintiff
made demand, the board was disinterested and independent.

### A.    Plaintiff Has Not Alleged Particularized Facts Showing That the Independent Trustees and SDC Members Were Interested

Plaintiff does not dispute that over 75 percent of the board members are and at all
relevant times were "independent trustees" under the ICA, and are thus "deemed to be
independent and disinterested for *all purposes*" as a matter of law under Del. Code Ann. tit. 12, §
3801(d) (emphasis added). See Mem. 17-18.

Plaintiff contends that applying the Delaware statute as written could lead to absurd
results. According to plaintiff, § 3801(d) would allow a board to "steal from the Fund without

---

[18]    See id. (board's decision will be upheld if it "can be attributed to any rational business purpose") (citation and internal quotation marks omitted); In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 73 (Del. 2006). See also Grimes, 673 A.2d at 1212, 1220 (applying business judgment rule to demand refusal letter setting forth legal analysis).

any fear of liability because any action by the shareholders to recover the stolen assets would require a demand, and any refusal of that demand would be unreviewable." Opp. 40.

There is no need or basis to consider such a far-fetched hypothetical in this case. Plaintiff has offered nothing more than boilerplate assertions that could be made in almost any mutual fund derivative action and are paradigmatic allegations that § 3801(d) was designed to preclude. Hartsel and other case law hold that, at least in this context, § 3801(d) means what it says and, therefore, trustees included within its terms are not conflicted and can properly consider demand. See Mem. 17-18 & n.18 (discussing relevant authority).

Indeed, the allegations plaintiff repeats in the Opposition are patently insufficient even without regard to § 3801(d). See Mem. 18-19. Specifically, the Opposition asserts that:

- Many of the trustees are defendants in the lawsuit, Opp. 35, 37.

The Delaware Supreme Court held nearly thirty years ago that allegations that directors would have to sue themselves "raise[] no legally cognizable issue under Delaware corporate law." Aronson v. Lewis, 473 A.2d 805, 818 (Del. 1984), overruled on other grounds by Brehm, 746 A.2d at 253. See also Mem. 19 n.19.[19]

- The trustees serve as board members of multiple Funds in the same fund family. Opp. 37-39.

Numerous cases – including Hartsel, which was affirmed by the Delaware Supreme Court, and Seidl, which was affirmed by the Second Circuit, have rejected such allegations and recognized that, if deemed sufficient, they "would essentially nullify the demand requirement in situations where the corporation is an investment firm with multiple related funds." Seidl, 713 F. Supp. 2d

---

[19]    In a meritless bootstrapping argument, plaintiff observes that many of the Independent Trustee Defendants' authorities discussing allegations of ex ante board conflicts are cases alleging demand futility rather than wrongful refusal of demand. See Opp. 42 n.29. As discussed above in Section I.A., however, such allegations are cognizable only in a case alleging demand futility and are not even properly considered in a demand refused case. The Independent Trustee Defendants discussed such allegations for the sake of completeness, and plaintiff should not be heard to complain that defendants have not cited enough demand refused cases addressing contentions that the Delaware Supreme Court has long held are legally irrelevant.

at 261-62.  See also Hartsel, 2011 WL 2421003, at *22; Mem. 18-19 & n.19 (citing additional authorities).

- The directors may be subject to unspecified "personal or social relationships" or "informal business influences and incentives" that could "***potentially*** affect[]" the directors' relationships with one another.  Opp. 40-41 (emphasis added) (citing Boland, 31 A.3d at 558, 564).

The Delaware Supreme Court has unequivocally rejected such allegations and made clear that the reasoning of the decision on which plaintiff relies (In re Oracle Corp., 824 A.2d 917), Opp. 41, applies only in demand excused cases.  See Beam, 845 A.2d at 1050-52 (rejecting allegations that "presuppose[] that the professional and social relationships that naturally develop among members of a board impede independent decisionmaking"; such allegations are "not enough to negate independence"); see also id. at 1054-55 (Oracle reflects that a more intensive review may be warranted "in a setting where presuit demand is already excused").[20]

**B.      Plaintiff Has Not Shown a Substantial Likelihood of Trustee Liability**

Plaintiff offers next to nothing to attempt to rebut the Independent Trustee Defendants' showing that his allegations regarding the Independent Trustee Defendants' supposed potential civil and criminal liability do not create an independence issue.  See Mem. 20-23.  Plaintiff contends that Hartsel is a misinterpretation of federal law that this Court should ignore.  Opp. 24-25 n.20.  That is plainly incorrect.  While Hartsel's observations regarding 18 U.S.C. § 1955 are clearly persuasive, its holdings on state law independence and other issues were based on Delaware law, have been affirmed by the Delaware Supreme Court, and (in light of this Court's holding that state law demand requirements apply to federal RICO claims, Order at 7-9, ECF No. 49) are authoritative and controlling as to all claims here.

---

[20]      Plaintiff also ignores that the board members were nominated by the independent trustees and elected by the Fund's shareholders.  Mem. 18.  Instead, he repeats the allegation that the board members were appointed by the Investment Advisor Defendants, Opp. 41-42, for which there is no good faith basis.

Plaintiff also fails entirely to address <u>Seidl</u>'s rejection of independence allegations virtually identical to those in the Complaint. <u>See</u> Mem. 20.

## III. PLAINTIFF'S NEW CLAIM SHOULD BE DISMISSED FOR FAILURE TO MAKE PRESUIT DEMAND

Plaintiff concedes that his demand did not include a breach of contract claim, but asserts that demand on that theory was unnecessary because his new claim "is based on the same facts upon which the other claims are based." Opp. 17.

To the contrary, Delaware law is clear that a shareholder may *not* "seek[ ] board consideration of only some aspects of a transaction or put[ ] forward only selected theories for board consideration, while reserving other theories for judicial consideration." <u>Grimes</u>, 673 A.2d at 1219 (citation and internal quotation marks omitted).

## IV. PLAINTIFF ALSO FAILS TO STATE A CLAIM AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS

The Opposition also makes little effort to address the Independent Trustee Defendants' alternative argument that the Complaint fails to state a claim against them. <u>See</u> Mem. 20-23.

Plaintiff apparently concedes (as he must) that the Independent Trustee Defendants did not make or direct the investments at issue. <u>See</u> Mem. 21 & n.21.

Plaintiff nonetheless attempts to create the misleading impression that the Independent Trustee Defendants knew about the challenged investments when they were made. Citing the Demand Refused Letter, the Opposition asserts that the Independent Trustee Defendants "admit . . . that they knew about what was being invested" and that "at least one report discussed by Trustees had identified NETeller and 888 as among the top ten worst performers" in the Fund's portfolio. Opp. 16. Plaintiff's insinuation is baseless. The Demand Refused Letter explained that the board "monitored the overall performance of the fund" and "regularly discussed investment performance," but the materials the board reviewed only identified 888 and NETeller

as bottom performers for the Fund *after* the investments had been totally liquidated.  Kornobis

Decl. Ex. A at 4.  The letter explicitly states that the SDC found that the Trustees were *not* aware

of the investments in the companies "at the time they were made or at the time the investments

were liquidated." Id.

Further, even assuming counterfactually that plaintiff had properly alleged that the

Independent Trustee Defendants knew about and/or approved the challenged investments at the

time, the Opposition does nothing to refute Independent Trustee Defendants' arguments and

authorities demonstrating that they still could not be liable for two additional independent

reasons: (1) the Complaint offers no non-conclusory allegation that the Independent Trustee

Defendants consciously disregarded their responsibilities, Mem. 21-22, and (2) the Complaint

does not allege that the Independent Trustee Defendants knew that the challenged investments

were illegal.  Mem. 22-23.

Plaintiff's arguments as to whether 888 and NETeller themselves broke the law or that

the government prosecuted some companies and their executives, Opp. 6-7, ignore that the key

issue for Delaware law claims against the Independent Trustee Defendants is whether the board

knew that it was not discharging its duties by allowing the Fund to own shares in the companies.

While plaintiff clearly disagrees with Hartsel, see Opp. 24 n.20, it is beyond serious dispute that

Hartsel authoritatively determined that the Independent Trustee Defendants cannot be liable as a

matter of state law because liability for mere passive ownership of stock listed on the London

Stock Exchange was "anything but clear and unambiguous."  2011 WL 2421003, at *25-26.

## V.  PLAINTIFF'S CONDUCT OF THE LITIGATION SHOWS HE CANNOT FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE FUND'S SHAREHOLDERS

In response to the Independent Trustee Defendants' argument and authorities

demonstrating that plaintiff is not a proper representative of the interests of the shareholders as

required by Fed. R. Civ. P. 23.1, Mem. 23-24, plaintiff asserts that he has been "zealous" in pursuing his claims, which he asserts are "fully investigated," "completely accurate," and were the product of a "proper investigation."  Opp. 50.

Plaintiff's legally irrelevant wrongful refusal allegations and his patently inadequate Caremark claims against the Independent Trustee Defendants belie this contention.  Cf. South v. Baker, C.A. No. 7294-VCL, 2012 WL 4372538, at *16-17 (Del. Ch. Sept. 25, 2012) (a plaintiff who files a hastily drawn Caremark claim "has acted disloyally [to the corporation] and is not an adequate fiduciary for the corporation").

More fundamentally, the Opposition does nothing to rebut the fact that, over the past three-and-a-half years, through four complaints, an inexplicably timed demand, and multiple motions to dismiss, plaintiff has caused the Fund and its other shareholders to incur significant burden and expense, the vast majority of which was utterly pointless and would have been avoided had plaintiff followed the clear requirements of Delaware law from the beginning.  See Mem. 23-24 (summarizing how plaintiff has unnecessarily multiplied the proceedings).

Plaintiff's imposition of unnecessary costs on the Fund by his inexplicable flouting of the clear requirements of Delaware law shows an utter disregard for the interest of the other investors whom he would purport to represent in any further proceedings.  It is clear, therefore, that plaintiff will not "fairly and adequately represent the interests of shareholders," as required by Fed. R. Civ. P. 23.1.  See Smith v. Ayers, 977 F.2d 946, 948-49 (5th Cir. 1992).

## CONCLUSION

The Complaint should be dismissed with prejudice.


Dated: November 5, 2012
       New York, New York

Respectfully submitted,

K&L GATES LLP

By:    s/ Nicholas G. Terris
Jeffrey B. Maletta (*pro hac vice*)
Nicholas G. Terris (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice*)
1601 K Street, NW
Washington, DC 20006-1600
E-mail:  jeffrey.maletta@klgates.com
         nicholas.terris@klgates.com
         ted.kornobis@klgates.com
Phone:  (202) 778-9000
Fax:     (202) 778-9100

Joanna A. Diakos (JD-7269)
599 Lexington Avenue
New York, NY 10022-6030
E-mail:  joanna.diakos@klgates.com
Phone:  (212) 536-3900
Fax:     (212) 536-3901

*Attorneys for Defendants John Cannon, Faith Colish,*
*C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf,*
*Edward L. O'Brien, William E. Rulon, Cornelius T. Ryan,*
*Tom D. Seip, Candace L. Straight, Peter P. Trapp and*
*Nominal Defendant Neuberger Berman Equity Funds*