UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------x
BENJAMIN M. GAMORAN, derivatively on behalf of
the nominal defendant with respect to its series
mutual fund, the Neuberger Berman International
Fund,

             Plaintiff,

-against-

NEUBERGER BERMAN, LLC, NEUBERGER
BERMAN MANAGEMENT LLC, BENJAMIN
SEGAL, PETER E. SUNDMAN,JACK L. RIVKIN,
JOHN CANNON, FAITH COLISH,MARTHA C.
GOSS, C. ANNE HARVEY, ROBERT A. KAVESH,
HOWARD A. MILEAF, EDWARD I. O'BRIEN,
WILLIAM E. RULON, CORNELIUS T. RYAN,
TOM D. SEIP, CANDACE L. STRAIGHT,
AND PETER P. TRAPP,

             Defendants,

- and -

NEUBERGER BERMAN EQUITY FUNDS
d/b/a NEUBERGER
BERMAN INTERNATIONAL FUND,

             Nominal Defendant.
------------------------------------------------------------------------------------x

11 Civ. 07957 (TPG)

OPINION

   Plaintiff, a shareholder in, brings this derivative action on behalf of Neuberger Berman Equity Funds (the "Fund"). The action is against institutional defendants,

1

Neuberger Berman, LLC ("NB"), Neuberger Berman Management LLC ("NBM"), and individual fiduciaries who managed the Fund under RICO, 18 U.S.C. § 1964 et. seq.

The amended complaint in this action asserts six claims. Count One alleges breach of fiduciary duty. Count Two alleges negligence. Count Three alleges waste. Count Four alleges breach of contract against the Investment Advisor defendants only. Count Five alleges a violation of RICO, 18 U.S.C. § 1963(c). Count Six alleges a violation of RICO 18 U.S.C. § 1962(d).

The defendants, collectively, have moved to dismiss the amended complaint with prejudice, arguing that plaintiff has failed to state claims with respect to every Count alleged.

Defendants' motions to dismiss are granted without prejudice.[1]

## HISTORY OF THE CASE

Plaintiff's first attempt to bring suit, which asserted both derivative and class claims, was voluntarily dismissed in May 2009. See Gamoran v. Neuberger Berman Mgmt. LLC,

[1] Plaintiff's counsel has a rather dubious history of filing similar complaints based on the same basic theory in both federal and state courts around the country. Those actions, although involving different parties, were all equally unavailing. McBrearty v. Vanguard Grp., Inc., No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009), aff'd, 353 F. App'x 640 (2d Cir. Nov. 23, 2009), cert. denied, 130 S. Ct. 3411(2010) (dismissing the claims in the other related case on proximate causation grounds under RICO); see Seidl v. Am. Century Cos., 713 F. Supp. 2d 249 (S.D.N.Y. 2010), aff'd, 427 F. App'x 35 (2d Cir.), cert. denied, 132 S. Ct. 846 (2011). Hartsel v. Vanguard Grp., Inc., C.A. No. 5394, 2011 Del. Ch. LEXIS 89, at *109 (Del. Ch. June 15, 2011) aff'd, 38 A.3d 1254 (Del.), cert. denied, 80 U.S.L.W. 3708 (2012); see Gomes v. Am. Century Cos., No. 10-00083-SOW (W.D. Mo., Feb. 16, 2012); see Wodka v. Causeway Capital Mgmt, 9 Civ. 2625 (C.D. Cal. Oct. 8, 2009), aff'd, 433 F. App'x 563 (9th Cir.), cert. denied, 132 S. Ct. 769 (2011); see Wodka v. Causeway Capital Mgmt. LLC, No. BC463623 (Cal. Super. Ct., filed June 15, 2012).

No. 08 Civ. 10807 (DLC) (S.D.N.Y. 2009). On July 16, 2010, plaintiff brought his second suit, Gamoran II, this time in New York State court. Compl. ¶ 116. Plaintiff made a demand on the board mid-suit during Gamoran II, and recognizing that a mid-suit demand conceded that demand was not futile under Delaware law, the Court dismissed Gamoran II on May 11, 2011 over plaintiff's objection. See Order, Gamoran II, ECF No. 41.

In response to plaintiff's demand, the board appointed a Special Demand Committee ("SDC"), which convened beginning in July of 2011 to start the investigation after selection of independent counsel. Order at 5, July 12, 2012, ECF No. 49. On August 24, 2011, plaintiff filed his first complaint in the present case in the United States District Court for the District of Delaware. Defendants, having appointed the SDC, responded that the suit was premature because the board was reviewing plaintiff's demand. In light of these facts, the board requested that plaintiff withdraw his lawsuit pending the conclusion of the board's review of his demand – plaintiff refused to do so on September 19, 2011. See Terris Decl. Ex. G.

On November 4, 2011, the Delaware District Court granted the Investment Advisor defendants' motion to transfer.[2] The case was subsequently transferred to this Court pursuant to defendants' motion. See Order, Nov. 4, 2011, ECF No. 20.

On December 8, 2011, defendants moved to dismiss the third case. Shortly thereafter, on March 16, 2012, the Board sent plaintiff's counsel a letter responding to

---

[2] The court granted the motion to transfer venue and noted that plaintiff's "practice of filing suit in a particular district because the plaintiff believes that district is most likely to provide a favorable judgment is the epitome of forum shopping." See Ex. H, at 2, n.2.

plaintiff's demand. The letter explained that the Board had formed an SDC and that the SDC had investigated, reviewed, and analyzed the allegations and circumstances that were the subject of plaintiff's demand. Henkin Decl. Exh. I at 1, 3. In making this decision, the SDC considered the merits of the suit, the likely harm to the fund that would result from such a suit, and the suit's net financial impact on the fund. AC ¶ 126; Kornobis Decl. Ex. A. The SDC then concluded that the evidence did not support claims for breach of fiduciary duty, negligence, or waste and also did not support civil RICO claims. Id.

On June 12, 2012, the Court dismissed the third case, holding that "plaintiff did not comply with Delaware's demand requirement and Fed. R. Civ. P. 23.1," but granted plaintiff leave to file an amended complaint. See Henkin Decl. Exh. J at 12. On July 16, 2012, plaintiff filed the Amended Complaint in this action.

## THE COMPLAINT

### THE ILLEGAL GAMBLING OPERATIONS

This is plaintiff's fourth suit grounded in the same theory: that the fund was injured because defendants invested in London Stock Exchange-traded shares of two companies, NETeller and 888. AC ¶¶ 26-41. These internet gambling operations earned most of their revenues from gamblers in the U.S. in violation of U.S. anti-gambling laws. Id. 888 is located in Gibraltar, and NETeller is located in the Isle of Man. AC ¶¶ 27, 37. Seeking investment capital to expand their illegal operations, both entities listed their shares on the

London Stock Exchange. AC ¶¶ 28-37. They did not list their shares on any U.S. exchange. AC ¶ 41.

Plaintiff alleges that defendants caused the Fund to take ownership stakes worth approximately $25.4 million in NETeller and $18.5 million in 888 in violation of 18 U.S.C. § 1955, which, among other things, prohibits a person or entity from owning all or part of an "illegal gambling business." AC ¶¶ 1-53, 55-58. In 2006 the United States Department of Justice initiated a crackdown, which led to arrests and prosecution of NETeller's founders. They pleaded guilty to gambling offenses, including the Gambling Act, and agreed to forfeit $100 million in criminal proceeds. In addition, NETeller agreed to forfeit $136 million in criminal proceeds and admitted that its principal business violated U.S. federal law. AC ¶ 40.

Plaintiff alleges that the value of the illegal gambling businesses plummeted after law enforcement choked off their primary source of revenue. AC ¶¶ 1, 91-95. Thus, he contends that the stock that defendants purchased on behalf of the fund lost all of the value attributable to the illegal revenue. AC ¶¶ 106-12. In addition, plaintiff alleges that by knowingly causing the Fund to "own" a "part" of an "illegal gambling business," defendants caused the fund to violate the Gambling Act; and – because they aided and abetted the fund's violation of federal law and conspired to do so – the defendants are individually liable as aiders and abettors. Id.

Plaintiff further claims that by causing the Fund to violate the Gambling Act repeatedly, defendants conducted the affairs of the Fund through a "pattern of racketeering activity" in violation of RICO. See 18 U.S.C. §§ 1961(1)(B), 1962(c). AC ¶¶ 149-164. The complaint additionally states common law claims for breach of fiduciary duty, negligence, and waste. Id. And finally, plaintiff contends that advisors breached a managing agreement by causing the fund to own shares in illegal gambling businesses contrary to numerous federal and state criminal law and the common law legal principle that it is wrongful to seek to profit from the wrongdoing of another. AC ¶ 166.

Although plaintiff concedes that he made a demand on the board and that a Special Demand Committee was appointed to investigate his claims, he maintains that the board did not base its decision not to prosecute the claims "on any legitimate business judgment, but on incorrect legal assumptions and erroneous legal principles." Id. ¶ 136. Plaintiff also argues that the board made "the impermissible legal conclusion that asset managers may weigh the risks associated with seeking to profit from criminal activity as if that were a legitimate business decision." Id. ¶ 136. And finally, plaintiff contends that the SDC based its recommendation on two "purely legal conclusions": (1) "whether Defendants are required to have subjective knowledge of criminal statutes," and (2) whether a claim of waste is viable if the Fund received "'consideration' for its purchases in the receipt of stock in the illegal gambling businesses." Id. ¶ 136.

## DISCUSSION

MOTION TO DISMISS

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir.2006).

A court considering a Rule 12(b)(6) motion applies a flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir.2008). To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). With respect to preclusive effect on a party's claims, it is well settled in this Circuit that dismissal with prejudice is a harsh remedy to be utilized only in extreme situations. Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972).

Derivative lawsuits must also meet "a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)." Fink v. Weill, 2005 U.S. Dist. LEXIS 20659, at *9 (S.D.N.Y.2005), (citing Fed.R.Civ.P. 23.1). In such cases, "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable

7

authority … and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1.

Although Rule 23.1 outlines the procedural rules with which a derivative action in federal court must comply, state law provides the substantive law governing a Board's refusal of a demand. See Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, 903 F.Supp. 452, 455 (S.D.N.Y. 1994). Here, because defendants are incorporated in Delaware, the parties agree that Delaware substantive law governs this derivative action.

18 U.S.C. § 1955'S AND STATE LAW'S APPLICATION TO STOCK OWNERSHIP

In support of his RICO claim, as well as his other claims, plaintiff vehemently posits that 18 U.S.C. § 1955 use of the term "owns" includes purchasing or owning publicly traded stock in a foreign market.[3] He also alleges that both Article 225 of New York Penal Law and 12 Del. C. § 3302 apply in the same vein. However, plaintiff has failed to cite any case, or indeed any convincing authority, in support of these arguments. In fact, several courts have held otherwise. See McBrearty v. Vanguard Group, Inc., No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. April 2, 2009), aff'd, 353 Fed. App'x 640 (2d Cir. 2009); Seidl v. Am. Century Co., 713 F. Supp. 2d 249 (S.D.N.Y. 2010), aff'd, 427 F. App'x 35 (2d Cir. 2011), cert. denied, No. 11-339 (2011).

---

[3] This statute states, "[w]hoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years or both." 18 U.S.C. § 1955(a). Section 1955(b) goes on to state "[i]llegal gambling business" is defined as a gambling business which "(i) is a violation of the law of a State or political subdivision in which it is conducted; (ii) involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business; and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." Id. § 1955(b).

Indeed, the same alleged conduct was dealt with in Delaware Chancery Court. In dismissing a similar action, the court noted:

> The history of the application of § 1955 shows that Plaintiffs' interpretation of it is anything but clear and unambiguous. Despite having been enacted more than forty years ago and the fact that U.S. investors have been able to passively invest as stockholders in offshore gambling enterprises since the mid 2000s, the Complaint contains no allegation that any law enforcement authority or court has interpreted § 1955 to apply to passive public stockholders. Nor have Plaintiffs directed the Court to any instances where government regulatory or law enforcement agencies have brought charges against passive stockholders under § 1955.

<u>Hartsel v. Vanguard Group, Inc.</u>, CIV.A. 5394-VCP, 2011 WL 2421003 (Del. Ch. June 15, 2011) <u>aff'd</u>, 38 A.3d 1254 (Del. 2012) <u>cert. denied,</u> 133 S. Ct. 32 (2012).

For the same reasons, this court finds this predicate theory without merit and dismisses plaintiff's RICO claims.

<u>PLAINTIFF'S DEMAND AND THE BUSINESS JUDGMENT RULE</u>

In addition to his RICO claims, plaintiff also alleges various causes of action based upon breach of fiduciary duty, waste, and negligence. Under Delaware law, where a demand has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond. <u>Spiegel v. Buntrock</u>, 571 A.2d 767, 777 (Del. 1990). Put another way, by making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility. <u>Id</u>. at 775-776. A shareholder who makes a demand can no longer argue that demand is excused. <u>Id</u>. The ultimate effect of a demand is to place control of the derivative litigation in the

hands of the board of directors. Zapata Corp. v. Maldonado, 430 A.2d 779, 784-786 (Del. 1981). Consequently, stockholders who make a demand which is refused, subject the board's decision to judicial review according to the traditional business judgment rule. Zapata Corp. v. Maldonado, 430 A.2d at 784 n. 10.; In re Merrill Lynch & Co., Inc., Sec., Derivative & Erisa Litig., 773 F. Supp. 2d 330, 345 (S.D.N.Y. 2011); See, e.g., Levine v. Smith, 591 A.2d 194, 209 (Del.1991).

The business judgment rule presumes that the board made its decision "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Spiegel v. Buntrock, 571 A.2d 767, 774 (Del.1990). To demonstrate that the board's refusal of a demand was wrongful, "the shareholder plaintiff is required to allege with particularity legally sufficient reasons to call into question the validity of the Board of Directors' exercise of business judgment." Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz Al Saud, 903 F.Supp. 452, 457 (S.D.N.Y.1994), aff'd, 61 F.3d 8 (2d Cir. 1995). When a board refuses a demand, the only issues to be examined are "the good faith and reasonableness of its investigation." Levner v. Saud, 903 F. Supp. 452, 457 (S.D.N.Y. 1994), aff'd sub nom., Levner v. Prince Alwaleed, 61 F.3d 8 (2d Cir. 1995); RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir.1991).

While it is possible to allege such allegations, few, if any, plaintiffs surmount this obstacle. Id. See also FLI Deep Marine LLC v. McKim, C.A. No. 4138-VCN, 2009 WL 1204363, at *3, 2009 Del.Ch. LEXIS 56, at *8 (Del. Ch. 2009). Moreover, the final substantive judgment whether a particular lawsuit should be maintained requires a

consideration of many factors, including those which are by nature "ethical, commercial, promotional ... fiscal as well as legal." Zapata Corp., 430 A.2d at 788.

And finally, Delaware law does not "permit a plaintiff to overcome the business judgment rule simply by asserting that the substance of a board of director's decision was wrong." Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig., 773 F. Supp. 2d 330, 346-47 (S.D.N.Y. 2011); Kamen v. Kemper Fin. Servs., 500 U.S. 90, 105 (1991).

Here, plaintiff made a demand on the board in this action. Compl. ¶117. Thus, he cannot successfully argue that demand was excused and, perhaps more importantly, he cannot maintain that the board was interested, was conflicted, or otherwise lacked the independence to conduct a valid investigation of his claims. Any such allegations in the complaint are therefore inapposite for purposes of resolving this motion.

Additionally, this court has already stated that the board "was not required to continuously inform plaintiff of developments in the investigation," Order at 11, ECF No. 49, and that a board need not meet with a shareholder plaintiff concerning a demand. Id. Therefore, plaintiff was not entitled to control the board or the committee's investigation; this was the prerogative of the special litigation committee. Plaintiff's allegations do not implicate the reasonableness of the board's investigation and fail to demonstrate that the board's refusal was made in bad faith. In sum, none of plaintiff's allegations rise to the level of specificity required to overcome the strong deference owed to a board under the business judgment rule.

Thus, in addition to plaintiff's RICO claims, plaintiff's breach of fiduciary duty, waste, and negligence claims are therefore dismissed as well.

PLAINTIFF'S BREACH OF CONTRACT CLAIM

In his latest derivative action, plaintiff also asserts a claim grounded in breach of contract. Because the making of a pre-suit demand concedes that demand is required, the concession should apply "to all or any part of the transaction, or series of connected transactions, out of which the action [demand] arose." Restatement (Second) of Judgments § 24 (1980); see Foltz v. Pullman, Inc., Del.Super., 319 A.2d 38, 40 (1974); Grimes v. Donald, 673 A.2d 1207, 1219-20 (1996). To the extent that plaintiff failed to include this breach of contract claim in his demand letter to the board, the court dismisses it in this action. In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig., 773 F. Supp. 2d 330 (S.D.N.Y. 2011).

DISMISSAL WITH PREJUDICE

Federal Rule of Civil Procedure 15(a) states a "court should freely give leave [to amend a pleading] when justice so requires." However, "[t]he decision to grant leave to amend is within the sound discretion of the trial court." Bay Harbour Mgmt. LLC v. Carothers, 474 F.Supp.2d 501, 502 (S.D.N.Y. 2007). Courts also have the power to dismiss without leave to amend or re-plead in "extraordinary circumstances, such as where ... the substance of the claim pleaded is frivolous on its face...." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988).

Here, the court notes that lead counsel asserted essentially the same legal "illegality" theory in support of claims in previous actions filed in various regions of the country in both state and federal courts. However, it is not entirely clear whether or not this claim could someday prove to be valid.

The court therefore exercises its discretion and dismisses the complaint without prejudice.

## CONCLUSION

Defendants' motions to dismiss are granted. Plaintiff's amended complaint is therefore dismissed in its entirety without prejudice.

This opinion will resolve docket item numbers 53 and 56.

SO ORDERED.

Dated: New York, New York
       March 29, 2013

Thomas P. Griesa, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-29-13